# Exhibit A

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009

U.S. Citizenship and Immigration Services

August 18, 2026

PA-2026-09

# Policy Alert

SUBJECT: Public Charge Ground of Inadmissibility

## Purpose

U.S. Citizenship and Immigration Services (USCIS) is issuing policy guidance in the USCIS Policy Manual to address the public charge ground of inadmissibility under section 212(a)(4) of the Immigration and Nationality Act (INA). This revised guidance stems from the rescission of the Public Charge Ground of Inadmissibility ("2022 Final Rule").[1]

## Background

Under INA 212(a)(4), any alien applying for a visa, admission, or adjustment of status (unless exempt) who is likely at any time to become a public charge is inadmissible. The public charge ground of inadmissibility and this policy guidance fulfill Congress' longstanding national policy on immigration and welfare that aliens inside the United States are self-sufficient and do not depend on public benefits to meet their needs.

This guidance, contained in Volume 8 of the Policy Manual, is effective on September 18, 2026, and applies to all applications for adjustment of status (unless exempt) postmarked or electronically submitted on or after that date.

The guidance contained in the Policy Manual is controlling and supersedes any related prior guidance, including the 1999 Interim Field Guidance and any related guidance addressing public charge inadmissibility.[2]

## Policy Highlights

---

[1] See 87 FR 55472 (Sept. 9, 2022) (final rule). The 2022 Final Rule was rescinded by the Public Charge Ground of Inadmissibility, 91 FR 45324 (Jul. 20, 2026) (final rule). DHS issued the 2026 Final Rule following notice and comment rulemaking.

[2] See Field Guidance on Deportability and Inadmissibility on Public Charge Grounds, 64 FR 28689 (May 26, 1999) (notice). Due to a printing error, the Federal Register version of the field guidance appears to be dated "March 26, 1999" even though the guidance was actually signed May 20, 1999, became effective May 21, 1999, and was published in the Federal Register on May 26, 1999. Note that adjustment of status applications postmarked or electronically submitted on or after December 23, 2022 but before September 18, 2026, are adjudicated under the 2022 regulations and related policy manual guidance. For adjustment of status applications postmarked or electronically submitted prior to December 23, 2022, follow the 1999 Interim Field Guidance.

- Removes references to regulatory terms and concepts associated with the rescinded 2022 Final Rule.

- Provides updated guidance for making public charge inadmissibility determinations under INA 212(a)(4).

- Reiterates the categories of aliens who are exempt from, or may obtain a waiver of, the public charge inadmissibility ground.

- Provides scenarios to illustrate the practical application of the totality of the circumstances analysis used in the public charge inadmissibility determination.

- Explains the consideration of mandatory statutory factors and other relevant information, such as current or past receipt of means-tested public benefits, including which means-tested public benefits received before September 18, 2026, will be considered and which means-tested public benefits received on or after September 18, 2026, will be considered, consistent with the 2026 Final Rule.

- Reiterates that no one factor, other than the lack of a sufficient Affidavit of Support Under Section 213A of the INA (Form I-864 or Form I-864EZ), if required, can be the sole basis for determining whether an alien is likely at any time to become a public charge.

- Describes the public charge bond process for an alien who applied for adjustment of status, who has been found inadmissible only under the public charge ground, and who has been invited to post a public charge bond.

- Provides officers with guidance to determine appropriate bond amounts when inviting aliens to post a public charge bond.

- Provides guidance on maintenance, breach, and cancellation of public charge bonds.

**Summary of Changes**

Affected Section: Volume 8 > Part G, Public Charge Ground of Inadmissibility

- Revises Part G in its entirety.

USCIS may also make other minor technical, stylistic, and conforming changes consistent with this update.

**Citation**

Volume 8: Admissibility, Part G, Public Charge Ground of Inadmissibility [8 USCIS-PM G].

## ***Additional Considerations***

**Administrative Procedure Act (APA)**

As indicated above, this revised guidance stems from the rescission of the 2022 Final Rule and provides guidance to help officers make public charge inadmissibility determinations that are consistent with the statute and Congressional intent. The previous guidance reflected the regulatory framework established by the 2022 Final Rule. USCIS does not believe that the regulated public has significant reliance interests related to the previous iteration of the public charge ground of inadmissibility guidance that are separate from the reliance interests DHS already addressed at length in the 2026 Final Rule[3] and that are related to the rescinded regulatory framework contained in the 2022 Final Rule. However, even if such reliance interests exist, DHS believes that its interest in removing references to rescinded regulatory concepts and providing officers with information and examples to help them faithfully and consistently make public charge inadmissibility determinations in their discretion outweigh any reliance interests the regulated public may have.

[3] See 91 FR 45324, 45344 through 45346 (Jul. 20, 2026).

**This policy is effective on September 18, 2026, and will be incorporated into the Policy Manual accordingly.**

USCIS Policy Manual, Volume 8: Admissibility
Part G – Public Charge Ground of Inadmissibility

## Chapter 1. Purpose and Background

### A. Purpose

Under section 212(a)(4) of the Immigration and Nationality Act (INA), an alien who is applying for a visa, admission, or adjustment of status and who is likely at any time to become a public charge, is inadmissible,[1] unless exempt from this ground of inadmissibility. DHS has the authority to waive this ground of inadmissibility for certain applicants for admission[2] and, in limited circumstances, also has the authority to waive this ground of inadmissibility for certain applicants for adjustment of status.[3]

### B. Background

1. Public Charge Ground of Inadmissibility General Overview

The INA provides that an alien applying for a visa, admission, or adjustment of status is inadmissible if in the opinion of the consular officer, immigration officer, or immigration judge at the time of application for a visa, admission, or adjustment of status, the alien is likely at any time to become a public charge.[4]

The public charge ground of inadmissibility, therefore, applies to any alien applying for a visa to come to the United States temporarily or permanently, for admission at a port of entry, or for adjustment of status to that of a lawful permanent resident (LPR).[5] Congress has exempted by statute certain applicants for a visa, admission, or adjustment of status from the public charge ground of inadmissibility.[6]

The INA does not define public charge. It does, however, specify that consular officers, immigration officers, and immigration judges must, at a minimum, consider certain factors when determining whether an alien is likely at any time to become a public charge.[7]

---

[1] See INA 212(a)(4)(A).
[2] See INA 212(d)(3)(A).
[3] See INA 245(j). See 8 CFR 245.11.
[4] See INA 212(a)(4).
[5] See INA 212(a)(4).
[6] See Chapter 3, Applicability, Section C, Exemptions [8 USCIS-PM G.3(C)].
[7] See INA 212(a)(4)(B).

2. National Policy on Immigration and Welfare Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996

In 1996 and close in time to the enactment of current INA section 212(a)(4), Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), which is commonly known as the 1996 welfare reform law. PRWORA set national policy on immigration and welfare, acknowledging that self-sufficiency has been a basic principle of U.S. immigration law since its earliest statutes and that aliens inside the United States should not depend on public resources to meet their needs, but rather, should rely on their own capabilities and the resources of their families, sponsors, and private organizations.[8] Additionally, under PRWORA, Congress made clear that the availability of public benefits should not constitute an incentive for immigration to the United States.[9] Moreover, PRWORA significantly restricted an alien's eligibility for federal, state, local, and tribal public benefits.[10]

3. History of Public Charge Inadmissibility Statutory and Regulatory Changes

Self-sufficiency has been a basic principle of United States immigration law since its earliest immigration laws.[11] In recognition of this principle, Congress has provided, since 1882, a public charge ground of inadmissibility to address this lack of self-sufficiency when aliens apply for visas, admission, or adjustment of status.[12]

*Illegal Immigration Reform and Immigrant Responsibility Act of 1996*

In 1996 Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).[13] IIRIRA amended INA section 212(a)(4), which introduced the mandatory statutory factors and created the enforceable Affidavit of Support Under Section 213A of the INA (Form I-864).[14]

---

[8] See Section 400 of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, (August 22, 1996) (codified at 8 U.S.C. 1601).
[9] See 8 U.S.C. 1601(2)(B).
[10] See 8 U.S.C. 1601-1646, as amended.
[11] See Section 400 of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, (August 22, 1996) (codified at 8 U.S.C. 1601).
[12] Immigration Act of 1882, 22 Stat. 214 (Aug. 3, 1882) (excluding "any person unable to take care of himself or herself without becoming a public charge."). Immigration Act of March 3, 1891 (26 Stat. 1084) ("any alien who becomes a public charge within one year after his arrival in the United States from causes existing prior to his landing therein shall be deemed to have come in violation of law and shall be returned as aforesaid.").
[13] See Division C of Pub. L. 104-208, 110 Stat. 3009 (September 30, 1996).
[14] See Division C of Pub. L. 104-208, 110 Stat. 3009 (September 30, 1996). Congress added requirements for certain immigrant categories by creating INA 213A, making a sponsor's affidavit of support submitted on behalf of an alien legally enforceable under IIRIRA. See Division C, Title V of Pub. L. 104-208, 110 Stat. 3009, 3009-670 (September 30, 1996).

More specifically, IIRIRA codified the following minimum factors that must be considered when making public charge inadmissibility determinations: age; health; family status; assets, resources, and financial status; and education and skills.[15]

Additionally, with IIRIRA, Congress made the legally enforceable Form I-864 a requirement for most family-sponsored and certain employment-based immigrants,[16] and indicated that it may be considered as a factor in a public charge inadmissibility determination.[17]

*1999 Interim Field Guidance*

On May 26, 1999, the legacy Immigration and Naturalization Service (INS) issued interim guidance, titled "Field Guidance on Deportability and Inadmissibility on Public Charge Grounds" (1999 Interim Field Guidance).[18] This guidance identified how the agency would determine if an alien is likely at any time to become a public charge[19] for admission or adjustment of status purposes, and when an alien would be deportable[20] as a public charge.[21]

INS incorporated the policies contained in the 1999 Interim Field Guidance in a proposed rule published on May 26, 1999.[22] However, INS never finalized the proposed rule. INS, and later DHS, continued to apply the public charge ground consistent with the 1999 Interim Field Guidance for two decades.

Under the 1999 Interim Field Guidance and the 1999 proposed rule, "public charge" for purposes of a public charge inadmissibility determination was defined as an alien who is likely to become primarily dependent on the government for subsistence, as demonstrated by either:

- Receipt of public cash assistance for income maintenance; or
- Institutionalization for long-term care at government expense.[23]

*Regulatory Changes in 2019*

---

[15] See INA 212(a)(4)(B). See Section 531 of Division C of Pub. L. 104-208, 110 Stat. 3009-546, 3009-674 (September 30, 1996) (amending INA 212(a)(4)).
[16] See INA 212(a)(4)(C), INA 212(a)(4)(D), and INA 213A.
[17] See INA 212(a)(4)(B)(ii). See Chapter 6, Affidavit of Support Under Section 213A of the INA [8 USCIS-PM G.6].
[18] See 64 FR 28689 (May 26, 1999). Due to a printing error, the Federal Register version of the field guidance appears to be dated "March 26, 1999" even though the guidance was actually signed May 20, 1999, became effective May 21, 1999, and was published in the Federal Register on May 26, 1999.
[19] See INA 212(a)(4).
[20] See INA 237(a)(5).
[21] See 64 FR 28689 (May 26, 1999).
[22] See 64 FR 28676 (May 26, 1999).
[23] See 64 FR 28689 (May 26, 1999). See 64 FR 28676 (May 26, 1999).

On August 14, 2019, DHS issued a final rule regarding the public charge ground of inadmissibility, titled "Inadmissibility on Public Charge Grounds" (2019 Final Rule).[24] The 2019 Final Rule provided new and expanded definitions for certain terms and provided a multi-factor framework along with associated evidentiary requirements.

The 2019 Final Rule also added provisions that rendered certain nonimmigrants ineligible for extension of stay or change of status if they received specific public benefits for a certain period. Additionally, it revised DHS regulations governing the Secretary's discretion to accept a public charge bond for those seeking adjustment of status.

The 2019 Final Rule was set to take effect on October 15, 2019. Before it did, numerous plaintiffs filed suits challenging the 2019 Final Rule in five district courts, across four circuits.[25] The 2019 Final Rule was ultimately implemented on February 24, 2020. However, following a series of preliminary injunctions and stays or reversals of those injunctions, a partial final judgment vacating the 2019 Final Rule went into effect nationwide on March 9, 2022.[26] DHS subsequently formally removed the 2019 Final Rule from the Code of Federal Regulations (CFR).[27]

After the 2019 Final Rule was vacated and removed from the CFR, DHS returned to making public charge inadmissibility determinations in accordance with the statute and the 1999 Interim Field Guidance.[28]

*Regulatory Changes in 2022*

On August 23, 2021, DHS published an Advance Notice of Proposed Rulemaking (ANPRM) to seek broad public feedback on the public charge ground of inadmissibility to inform its development of a future regulatory proposal.[29] DHS reviewed the comments and considered them in developing a Notice of Proposed Rulemaking (NPRM).[30]

---

[24] See 84 FR 41292 (Aug. 14, 2019), as amended by 84 FR 52357 (Oct. 2, 2019).
[25] See *CASA de Maryland, Inc., et al. v. Trump*, 19-cv-2715 (D. Md.). See *City and County of San Francisco, et al. v. DHS, et al.*, 19-cv-04717 (N.D.Ca.). See *City of Gaithersburg, et al. v. Trump, et al.*, 19-cv-02851 (D. Md.). See *Cook County et al. v. McAleenan et al.*, 19-cv-06334 (N.D. Ill.). See *La Clinica De La Raza, et al. v. Trump, et al.*, 19-cv-4980 (N.D. Ca.). See *Make the Road New York, et al. v. Cuccinelli, et al.*, 19-cv-07993 (S.D.N.Y.). See *New York, et al. v. DHS, et al.*, 19-cv-07777 (S.D.N.Y.). See *State of California, et al. v. DHS, et al.*, 19-cv-04975 (N.D. Cal.). See *State of Washington, et al. v. DHS, et al.*, 19-cv-05210 (E.D. Wa.).
[26] See *Cook County v. Wolf*, 498 F.Supp.3d 999 (N.D. Ill. 2020).
[27] See 86 FR 14221 (Mar. 15, 2021).
[28] See 64 FR 28689 (May 26, 1999).
[29] See 86 FR 47025 (Aug. 23, 2021) (advance notice of proposed rulemaking).
[30] See 87 FR 10570, 10597 (Feb. 24, 2022) (proposed rule).

On February 24, 2022, DHS published an NPRM.[31] Following consideration of public comments received in response to the NPRM, DHS published a final rule titled, "Public Charge Ground of Inadmissibility," on September 9, 2022 (2022 Final Rule).[32]

The 2022 Final Rule implemented a different policy than the 2019 Final Rule. Under the 2022 Final Rule and similar to the 1999 Interim Field Guidance that was in place before the 2019 Final Rule, aliens were considered likely at any time to become a public charge if they were likely at any time to become primarily dependent on the government for subsistence, as demonstrated by either the receipt of public cash assistance for income maintenance or long-term institutionalization at government expense.

The 2022 and 2019 Final Rules only addressed the public charge ground of inadmissibility and did not address the public charge ground of deportability, which was addressed in the 1999 Interim Field Guidance and 1999 NPRM.

*Regulatory Changes in 2026*

On November 19, 2025, DHS published an NPRM.[33] Following review and consideration of public comments received in response to the NPRM, DHS published a final rule titled, "Public Charge Ground of Inadmissibility," on July 20, 2026 (2026 Final Rule).[34] The 2026 Final Rule rescinded the 2022 Final Rule as it pertained to public charge inadmissibility determinations and revised the breach and cancellation of public charge bonds regulations.

### C. Implementation and Scope

This guidance is intended to faithfully implement INA 212(a)(4) in a manner that is consistent with Congress' statement of the immigration policy of the United States in 8 U.S.C. 1601(2)(A) and precedent decisions. This guidance is intended to ensure that aliens seeking adjustment of status who are subject to the public charge ground of inadmissibility are self-sufficient. Such aliens should not depend on means-tested public benefits to meet their needs but rather rely on their own capabilities, as well as the resources of private organizations, family members, and sponsors.[35] Officers make prospective public charge inadmissibility determinations on a case-by-case basis in the totality of the alien's circumstances.[36]

---

[31] See 87 FR 10570 (Feb. 24, 2022) (proposed rule).
[32] See 87 FR 55472 (Sept. 9, 2022) (final rule).
[33] See 90 FR 52168 (Nov. 19, 2025) (proposed rule).
[34] See 91 FR 45324 (Jul. 20, 2026) (final rule).
[35] See INA 213A.
[36] See 8 U.S.C. 1601. See *Matter of Vindman*, 16 I&N Dec. 131, 132 (BIA 1977) ("In summation, it is felt that everything in the statutes, the legislative comments, and prior decisions point to one conclusion, that Congress intends that an applicant for a visa be excluded *who is without sufficient funds to support himself*, who has no one under any obligation to support him, and whose chances of *becoming self-supporting* decrease as time passes.") (emphasis added). *Matter of A-*, 19 I&N Dec. 867, 869 (BIA 1988) ("The traditional test applied by the Service to determine

This guidance is intended to inform, but not prescribe, the outcome of USCIS officers' individual public charge inadmissibility determinations made in their discretion.

This guidance is effective on September 18, 2026, and applies to Applications to Register Permanent Residence or Adjust Status (Form I-485) that are postmarked or electronically submitted on or after September 18, 2026. Applications postmarked or electronically submitted before September 18, 2026, will be adjudicated consistent with the statute, regulations, and guidance in place at the time they were filed or electronically submitted.

Officers must adjudicate Forms I-485 postmarked on or after December 23, 2022, but before September 18, 2026, consistent with the 2022 Final Rule. 87 FR 55472 (Sept. 9, 2022). Officers must adjudicate Forms I-485 postmarked before December 23, 2022, consistent with the 1999 Interim Field Guidance. 64 FR 28689 (May 26, 1999).

When applying this guidance, with respect to means-tested public benefits the alien received before September 18, 2026, USCIS officers only consider the alien's receipt of public cash assistance for income maintenance and long-term institutionalization at government expense.[37] With respect to means-tested public benefits the alien received on or after September 18, 2026, USCIS officers consider the alien's receipt of any and all such benefits.[38]

The discussion of public charge bonds in Part G is limited to public charge bonds administered and managed by USCIS, including the management of those submitted by immigrant visa applicants with the Department of State (DOS).[39]

## D. Guiding Principles

USCIS' public charge inadmissibility policy is guided by the following longstanding principles.

*Dependence on Means-Tested Public Benefits to Meet Needs*

USCIS believes that Congress intended to address an alien's dependence on any means-tested public benefits to meet his or her needs when it enacted the public charge ground of

---

whether an alien is likely to become a public charge is 'a prediction based on the totality of the alien's circumstances' as presented in the individual case . . . Even though the test is prospective, the Service has considered evidence of receipt of prior public assistance as a factor in making the public charge determination. Other factors that have been considered are the alien's age, capacity to earn a living, health, family situation, work history, affidavits of support, and other relevant factors.").

[37] See 91 FR 45324 (Jul. 20, 2026) (final rule).

[38] See 91 FR 45324 (Jul. 20, 2026) (final rule). For more information about how USCIS officers consider the alien's receipt of public benefits, see Chapter 7, Consideration of Any Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits [8 USCIS-PM G.7].

[39] For more information, see Chapter 11, Public Charge Bonds [8 USCIS-PM G.11].

inadmissibility as it has existed since the IIRIRA. The INA does not define "public charge" or "likely at any time to become a public charge."[40] Likewise, USCIS has not defined "likely at any time to become a public charge."[41]

Although Congress was clearly focused on an alien's dependence on means-tested public benefits, neither the statute nor case law prescribe the degree to which an alien must receive means-tested public benefits to be considered likely at any time to become a public charge.[42] Given that neither the statute nor relevant precedent decisions prescribe a primary dependence standard or consideration of only a narrow and specific list of public benefits for public charge inadmissibility determinations, USCIS believes that placing limits on the types of benefits and the time frame of receipt of such benefits is not the best implementation of the public charge inadmissibility statute given Congress' clear statement that "aliens…not depend on public resources to meet their needs."[43] Therefore, USCIS believes that it is appropriate to allow for consideration of the receipt of any means-tested public benefit irrespective of the time frame when determining whether an alien is likely at any time to become a public charge, as this receipt may be indicative of the alien's dependence on the government to meet their needs.[44]

*Prospective Determination in the Totality of the Circumstances*

---

[40] See INA 212(a)(4).

[41] See *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) (overruling *Chevron* deference to agency interpretations of ambiguous statutes and acknowledging that courts rather than agencies are in the position to determine the best interpretation of an ambiguous statute. The case acknowledges that in some circumstances, an agency interpretation of a statute may nonetheless have the power to persuade the court consistent with the standard enunciated in *Skidmore v. Swift & Co*., 323 U.S. 134 (1944), especially to the extent that the agency views are within its area of expertise. In addition, the Court recognized situations in which a statute's meaning may be that an agency is authorized to exercise a degree of discretion, or a statute empowers an agency to "fill up the details" of a statutory scheme.)

[42] See *Matter of Harutunian*, 14 I&N Dec. 583, 589 (Reg'l Comm'r 1974) ("Congress intends that an applicant for a visa be excluded who is without sufficient funds to support himself, who has no one under any obligation to support him and who, being older, has an increasing chance of *becoming dependent*, disabled and sick.") (emphasis added).

[43] See 8 U.S.C. 1601(2)(A).

[44] See *Matter of Harutunian*, 14 I&N Dec. 583, 589 (Reg'l Comm'r 1974) ("Congress intends that an applicant for a visa be excluded who is without sufficient funds to support himself, who has no one under any obligation to support him and who, being older, has an increasing chance of becoming dependent, disabled and sick."). See *Matter of A-*, 19 I&N Dec. 867, 869 (BIA 1988) (acknowledging consideration of evidence of receipt of any prior public assistance as a factor in making the public charge inadmissibility determination); *Matter of Vindman*, 16 I&N Dec. 131, 132 (BIA 1977) (finding that aliens who are receiving SSI and public funds from the New York Department of Social Services "fall clearly within the confines of section 212(a)(15) of the Act and are excludable as public charges."). Note that Congress implicitly recognized that past receipt of any public benefit can be considered in determining the alien's likelihood of becoming a public charge when it prohibited consideration of the receipt of any public benefit that is authorized under 8 U.S.C. 1641(c) for certain battered aliens. See INA 212(s), 8 U.S.C. 1182(s). For more information about how USCIS officers consider the alien's receipt of public benefits, see Chapter 7, Consideration of Any Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits [8 USCIS-PM G.7].

An officer's decision as to whether an alien is, in the officer's opinion, likely at any time to become a public charge is an inherently prospective evaluation made in the totality of the circumstances at the time of the alien's application for admission or adjustment of status.[45] No one factor, other than the lack of a sufficient Form I-864, where required, is outcome determinative. Note that past or current receipt of means-tested public benefits may not be indicative of future receipt.[46] Such receipt is considered in conjunction with the other factors present in the alien's case in the totality of the circumstances.

*An Alien's Willingness and Ability to Work*

In applying the public charge ground of inadmissibility, the courts have long focused on whether an alien has the ability to earn a living or meet his or her basic needs through employment. These decisions suggest that an alien who is of working age and who is in good physical and mental condition is capable of earning a living or working to meet his or her basic needs, even if the alien receives certain means-tested benefits. Such an alien would not generally be found inadmissible under the public charge ground.[47] Even where an alien has a low income, if the alien is healthy, willing, and able to work, he or she is likely to be self-sufficient and therefore, generally not likely at any time to become a public charge.[48]

---

[45] See *Matter of A-*, 19 I&N Dec. 867, 869 (BIA 1988) ("The traditional test applied by the Service to determine whether an alien is likely to become a public charge is 'a prediction based on the totality of the alien's circumstances' as presented in the individual case . . . .  Even though the test is prospective, the Service has considered evidence of receipt of prior public assistance as a factor in making the public charge determination. Other factors that have been considered are the alien's age, capacity to earn a living, health, family situation, work history, affidavits of support, and other relevant factors.").

[46] See *Matter of Perez*, 15 I&N Dec. 136, 137 (BIA 1974) ("The determination of whether an alien is likely to become a public charge . . . is a prediction based upon the totality of the alien's circumstances at the time he or she applies for an immigrant visa or admission to the United States. The fact that an alien has been on welfare does not, by itself, establish that he or she is likely to become a public charge.").

[47] See *Matter of A-*, 19 I&N Dec. 867, 869 (Comm'r 1988) (33-year-old employed mother of three not likely to become a public charge notwithstanding having previously received public benefits. The BIA considered other relevant factors, including that a mother's temporary absence from the workforce to care for her children is not by itself sufficient basis to find the mother likely to become a public charge. There may be circumstances beyond the control of the alien which temporarily prevent an alien from joining the workforce. For example, as the applicant states in her appeal, she lives in an area where jobs are scarce and she had been unable to find a job.). See *Matter of Harutunian*, 14 I&N Dec. 583, 588 (Reg'l Comm'r 1974) (Although all factors should be considered in their totality, administrative authorities have also held that "the alien's physical and mental condition, as it affects ability to earn a living, is of major significance."). See *Matter of C-*, 3 I&N Dec. 96, 97 (BIA 1947) (finding that the alien was not likely to become a public charge because "he is in good health and is able and willing to go to work.").

[48] See *Matter of C-*, 3 I&N Dec. 96, 97 (BIA 1947) (finding that the alien was not likely to become a public charge because "he is in good health and is able and willing to go to work."). See *Matter of Martinez-Lopez*, 10 I&N Dec. 409, 421 (BIA 1962; Att'y Gen. 1962) (considering whether the alien had an employment offer in making a public charge inadmissibility determination and determining that a young alien with low financial means and no job offer who nonetheless had work experience and was willing to work was not excludable.) See *Matter of Perez*, 15 I&N Dec. 136, 137 (BIA 1974) (considering the alien's capability of finding employment and prospective employment opportunities in making public charge determination). See also *Matter of A-*, 19 I&N Dec. 867, 869 (Comm'r 1988) (considering past employment and job prospects in the public charge determinations); *Matter of Vindman*, 16 I&N

However, aliens who are incapable of earning a livelihood may be more likely to become public charges.[49] For example, an alien who is older, unable to work, and has limited financial resources may be more likely at any time to become a public charge.[50] Similarly, an alien who has a disability or a medical condition that requires extensive medical treatment or care, is unable to work, and has limited financial resources may also be more likely at any time to become a public charge.[51] In both instances, however, the alien's inability to earn a living is not outcome determinative, but rather, is considered along with all relevant factors present in the alien's case.

*Consideration of an Alien's Support from a Sponsor*

Congress has made an alien's reliance on the resources of his or her family members, sponsors, and private organizations in addition to his or her own capabilities the cornerstone of the national policy on immigration and welfare. In 1996, Congress made a sponsor's affidavit of support a binding legal contract, which remains the case today.[52] Under the statute, if an alien has submitted a sufficient Form I-864, USCIS may consider that affidavit as part of the public charge inadmissibility determination.[53] Based on the language in PRWORA, USCIS believes that Congress was focused on ensuring that aliens have adequate support as a way to avoid burdening the public benefits system.[54] This concern suggests that Congress intended for officers to have discretion to consider more than the presence of a sufficient Form I-864, where such is required. Indeed, where the Form I-864 meets the minimum requirements, officers may also consider whether the sponsor is actually willing to provide financial assistance to the alien, the number of additional aliens that the sponsor is obligated to support, and whether the sponsor has faithfully fulfilled his or her past or present financial obligations to other sponsored aliens.

## E. Legal Authorities

---

Dec. 131 (Reg'l Comm'r 1977). See *Matter of T-*, 3 I&N Dec. 641, 644 (BIA 1949) ("We find that the female appellant is quite capable of earning her own livelihood independent of her husband and that the minor male appellant has had considerable training in the tailoring industry which presents a wide field for employment in this country.")

[49] See *Matter of Vindman*, 16 I&N Dec. 131 (Reg'l Comm'r 1977) (finding aliens who are older and had never worked in the United States and were receiving SSI inadmissible). See *Matter of T-*, 3 I&N Dec. 641, 644 (BIA 1949) ("In order to sustain the [public charge inadmissibility] ground…there must be substantial evidence that these aliens are likely to be supported at the expense of the public because of poverty or some physical handicap.")

[50] See *Matter of Vindman*, 16 I&N Dec. 131 (Reg'l Comm'r 1977) (finding aliens who are older and had never worked in the United States and were receiving SSI inadmissible).

[51] See *Matter of Harutunian*, 14 I&N Dec. 583, 588 (Reg'l Comm'r 1974) (Although all factors should be considered in their totality, administrative authorities have also held that "the alien's physical and mental condition, as it affects ability to earn a living, is of major significance.").

[52] See INA 213A. See INA 212(a)(4)(C) and (D).

[53] See INA 212(a)(4)(B).

[54] See 8 U.S.C. 1601(4) and (5).

- INA 212(a)(4); 8 CFR 212 – Public charge inadmissibility
- INA 213A; 8 CFR 213a – Requirements for sponsor's affidavit of support
- INA 213; 8 CFR 213.1 – Admission of aliens on giving bond or undertaking; return upon permanent departure; admission under bond or cash deposit
- 8 CFR 103.6 – Immigration bonds
- INA 245; 8 CFR 245 – Adjustment of status of nonimmigrant to that of person admitted for permanent residence
- 31 U.S.C. 9304-9308 – Surety corporations

## Chapter 2. Key Concepts

The following descriptions and explanations of key concepts are vital to making public charge inadmissibility determinations under INA 212(a)(4)(A).

### A. Likely at Any Time to Become a Public Charge

The INA does not define the phrase "likely at any time to become a public charge" or the term "public charge."[55] As discussed in Chapter 1 of this Part, there is no judicially established or uniformly consistent historical understanding of the term public charge. For purposes of this guidance, USCIS generally considers an alien likely at any time to become a public charge if the alien is likely to become dependent on the government to meet his or her basic needs, for example shelter, food, or healthcare,[56] typically demonstrated through dependence on means-tested public benefits.

For purposes of a public charge inadmissibility determination under INA 212(a)(4), officers must determine whether an alien is likely *at any time* to become a public charge, that is, likely at any time to depend on means-tested public benefits. Officers do this by considering the mandatory statutory factors, any current and/or past receipt of means-tested public benefits, and any other information and evidence relevant to the determination in the totality of the alien's circumstances.

This guidance addresses the prospective nature of public charge inadmissibility determinations in Chapter 4 and the elements of the totality of the circumstances analysis in Chapters 5 through 7.

---

[55] See INA 212(a)(4)(A).
[56] See 8 U.S.C. 1601(2)(A).

**B. Means-Tested Public Benefits**

There is no statutory or regulatory definition of means-tested public benefits for the purpose of public charge inadmissibility determinations under INA 212(a)(4)(A).[57] When applying this guidance and the public charge ground of inadmissibility, officers should consider the following when determining if a particular program is a means-tested public benefit:

- A benefit is generally considered to be means-tested if eligibility for the benefit is determined based on the applicant's income or assets falling below a certain threshold;

- A benefit is generally a "public" benefit if the payments or assistance are provided by an agency of the government or by appropriated funds of the government;

- Examples of public benefits that could potentially be means-tested public benefits relevant to a public charge inadmissibility determination include but are not limited to cash assistance, public or assisted housing, financial aid for postsecondary education, food assistance, government-funded health coverage, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit; and

- Earned benefits such as Social Security and Medicare are not means-tested public benefits. Unemployment insurance benefits are similarly not means-tested public benefits.

**C. Receipt (of Means-Tested Public Benefits)**

Receipt (of means-tested public benefits) only occurs when the alien is listed as a beneficiary of the benefit.

USCIS does not attribute to the alien the receipt of means-tested public benefits if the benefit is received by the applicant's relatives, including children, or received by the applicant solely on behalf of third parties (for example, where the alien is a legal guardian or custodian of another). Officers should also not attribute to the alien the fact that the alien applied for a means-tested public benefit on behalf of another.

While not constituting "receipt," the alien's own application for, or certification or approval to receive, a benefit in the future may be considered in the totality of the alien's circumstances along with any evidence that the alien withdrew his or her application or notified the benefit

[57] DHS has established, by regulation, a definition for "means-tested public benefit" for purposes of the Affidavit of Support Under Section 213A of the INA (Form I-864). See 8 CFR 213a.1. This definition is distinct from, and should not be confused with, "means-tested public benefits" in the context of public charge inadmissibility determinations, for which no regulatory definition has been established.

granting agency that he or she wished to disenroll from a benefit he or she was receiving or was approved or certified to receive in the future. Additionally, if an alien's children or any other relative or household member the alien is legally obligated to support receives means-tested public benefits based on the alien's income or assets falling below a certain level, then officers should consider the alien's income or assets falling below the threshold as part of the assets, resources, and financial status factor.[58]

**D. Dependence on Means-Tested Public Benefits**

Central to the national immigration policy set forth in PRWORA is that aliens within the United States not depend on public resources to meet their needs. In codifying this immigration policy close in time to the enactment of the current iteration of INA 212(a)(4), USCIS believes that Congress intended these two statutes to address aliens' dependence on means-tested public benefits to meet their needs.

Neither PRWORA, INA 212(a)(4), nor case law prescribe the degree to which an alien must receive public benefits to be considered dependent on them and therefore a public charge. Given that neither the statute nor relevant precedent decisions prescribe a primary dependence standard or consideration of only a narrow and specific list of public benefits for public charge inadmissibility determinations, USCIS believes that it is appropriate for officers to consider an alien's dependence on any means-tested public benefits to meet his or her basic needs when determining whether an alien is likely at any time to become a public charge. Therefore, through this policy and consistent with Congress' clear statement that "aliens…not depend on public resources to meet their needs,"[59] USCIS officers will consider the alien's potential dependence on means-tested public benefits when making public charge inadmissibility determinations.

**E. Government**

The term "government," for the purpose of implementing the public charge ground of inadmissibility, is generally understood to refer to any federal, state, tribal, territorial, or local government entity or entities of the United States.

**F. Household**

The concept of an alien's household is relevant to several aspects of public charge inadmissibility determinations, including the alien's family status and assets, resources, and financial status. For the purpose of a public charge inadmissibility determination, it is

---

[58] See Chapter 5, Statutory Minimum Factors, Section D, Assets, Resources, and Financial Status [8 USCIS-PM G.5(D)].
[59] See 8 U.S.C. 1601(2)(A).

reasonable for officers to consider the following individuals as members of an alien's household:

- The alien;
- The alien's spouse, if physically residing with the alien;
- The alien's parents, if physically residing with the alien;
- The alien's unmarried siblings under 21 years of age, if physically residing with the alien;
- The alien's children,[60] if physically residing with the alien;
- Any other individuals who are listed as dependents on the alien's federal income tax return;[61] and
- Any other individuals who list the alien as a dependent on their federal income tax return.

**Chapter 3. <u>Applicability</u>**

The public charge ground of inadmissibility at section 212(a)(4) of the Immigration and Nationality Act (INA) applies to an alien who is applying for a visa, admission, or adjustment of status.[62] An alien applying for a visa, admission, or adjustment of status must establish that he or she is not inadmissible under any ground of inadmissibility including the public charge ground.[63] If an alien is exempt from the public charge ground of inadmissibility, this ground of inadmissibility does not apply to the alien.[64]

As indicated above, this guidance is limited to USCIS public charge inadmissibility determinations conducted in the context of adjudicating the Application to Register Permanent Residence or Adjust Status (Form I-485). This guidance does not apply to applicants for admission at ports of entry, which are adjudicated by U.S. Customs and Border Protection (CBP), or aliens applying for immigrant and nonimmigrant visas before the Department of State (DOS). It also does not apply to the adjudication of adjustment of status applications by the Executive Office of Immigration Review (EOIR) of the Department of Justice (DOJ).

---

[60] As defined in INA 101(b)(1).
[61] Including a spouse or child as defined in INA 101(b)(1) not physically residing with the alien.
[62] See INA 212(a)(4)(A).
[63] See INA 291 and INA 212(a)(4).
[64] See Section C, Exemptions [8 USCIS-PM G.3(C)].

**A. Applicants for Admission**

The public charge ground of inadmissibility[65] generally applies to applicants for admission[66] as an immigrant[67] or a nonimmigrant unless the applicant is specifically exempted by statute or regulations.[68] CBP inspects applicants for admission to the United States. When an applicant for admission demonstrates that he or she is admissible, the applicant may be permitted to enter the United States as an immigrant or nonimmigrant.[69]

1. Nonimmigrants

Under INA 212(a)(4), any alien who is applying for a visa or for admission to the United States as a nonimmigrant is inadmissible if he or she is likely at any time to become a public charge. An alien applies directly to a U.S. consulate or embassy abroad for a nonimmigrant visa to travel to the United States temporarily for a limited purpose, such as to visit for business or tourism.[70] DOS consular officers assess whether the alien is inadmissible and therefore ineligible for a visa, including under the public charge ground of inadmissibility, as applicable.[71] Eligible aliens may also apply for admission as a nonimmigrant without a visa under, for example, the Visa Waiver Program (VWP).[72]

Once DOS issues the nonimmigrant visa, or the prospective traveler has obtained any required pre-travel authorization from CBP, the alien generally may travel to the United States using that visa or travel authorization, if applicable, and apply for admission at a port of entry. CBP then determines whether the applicant for admission is inadmissible under any ground, including public charge.[73]

2. Immigrants

An alien who is abroad and is the beneficiary of an approved immigrant visa petition may apply to DOS for an immigrant visa to allow him or her to travel to the United States and seek

---

[65] See INA 212(a)(4).
[66] See INA 101(a)(4) and INA 101(a)(13)(A).
[67] An alien, who is a lawful permanent resident (LPR), who travels abroad and seeks to enter the United States again is generally not seeking admission under the Immigration and Nationality Act (INA). See INA 101(a)(13)(C).
[68] For more information, see Section C, Exemptions [8 USCIS-PM G.3(C)].
[69] See INA 235. See 8 CFR 235.
[70] Certain nonimmigrant classifications are subject to petition requirements, and in such cases USCIS generally must approve a petition before the nonimmigrant applies for a visa. See INA 214. In addition, certain aliens are not subject to a visa requirement in order to seek admission as a nonimmigrant. See INA 217. See 8 CFR 212.1.
[71] See INA 221 and INA 222. See 8 CFR 204.
[72] Examples of other ways in which eligible aliens may apply for admission as a nonimmigrant without a visa include but are not limited to the Guam-CNMI VWP (see 8 CFR 212.1(q)) as well as certain nationals of Canada, Bermuda, the Bahamas, the British Virgin Islands, and Mexico in certain situations (see 8 CFR 212.1(a)-(c)).
[73] The public charge ground of inadmissibility does not apply to nonimmigrants seeking extension of stay or change of status in the United States.

admission to the United States as an immigrant.[74] As part of the immigrant visa process, DOS determines whether the applicant is eligible for the visa, which includes a determination of whether the alien has demonstrated that he or she is not inadmissible under any of the applicable grounds in INA 212(a).

Once DOS issues the immigrant visa, the alien may travel to the United States and seek admission as an immigrant at a port of entry. CBP determines whether the applicant for admission as an immigrant is inadmissible under any ground, including public charge.

3. Certain Lawful Permanent Residents Returning to the United States

Note that certain lawful permanent residents (LPRs) generally are not considered to be applicants for admission when they present themselves for inspection at a port of entry after a trip abroad and therefore are not subject to inadmissibility determinations. However, in certain limited circumstances, an LPR is considered an applicant for admission and, therefore, subject to an inadmissibility determination upon the LPR's return to the United States.[75] This inadmissibility determination includes whether the alien is inadmissible under the public charge ground.

## B. Aliens Applying for Adjustment of Status

The public charge ground of inadmissibility applies to all aliens applying for adjustment of status unless they are specifically exempt from the public charge ground of inadmissibility.[76]

The tables below indicate which aliens applying for adjustment of status are subject to the public charge ground of inadmissibility:[77]

---

[74] See INA 221 and INA 222. See 8 CFR 204.

[75] See INA 101(a)(13)(C). See Volume 7, Adjustment of Status, Part B, 245(a) Adjustment, Chapter 2, Eligibility Requirements, Section A, "Inspected and Admitted" or "Inspected and Paroled," Subsection 2, Admission [7 USCIS-PM B.2(A)(2)]. An LPR who travels abroad does not undergo another public charge inadmissibility determination upon return to the United States unless CBP determines that the returning LPR is an applicant for admission based on one of the criteria set forth in INA 101(a)(13)(C) (for example, CBP determines that the alien has been absent from the United States for more than 180 days).

[76] See INA 212(a)(4).

[77] The tables provided include footnotes indicating the immigrant classes of admission as well as the associated codes that appear on applicants' USCIS-issued documents and in USCIS systems. For additional information about the applicability of the public charge ground of inadmissibility, and in particular whether a Form I-864 is required based on the immigration classification under which an alien is applying for adjustment of status, see the Appendices [8 USCIS-PM G, Appendices Tab] and Chapter 6, Affidavit of Support Under Section 213A of the INA [8 USCIS-PM G.6].

| Family-Based Adjustment of Status Applicants Subject to the Public Charge Ground of Inadmissibility |
|---|
| Spouses, children, and parents of U.S. citizens[78] |
| Unmarried sons and daughters of U.S. citizens and their children[79] |
| Spouses, children, and unmarried sons and daughters of LPRs[80] |
| Married sons and daughters of U.S. citizens and their spouses and children[81] |
| Brothers and sisters of U.S. citizens[82] |
| Fiancé(e)s of U.S. citizens[83] |

[78] Immediate relatives, including the following categories: IR-6 Spouses; IR-7 Children; CR-7 Children, conditional; IH-8 Children adopted abroad under the Hague Adoption Convention; IH-9 Children coming to the United States to be adopted under the Hague Adoption Convention; IR-8 Orphans adopted abroad; IR-9 Orphans coming to the United States to be adopted; IR-0 Parents of adult U.S. citizens. Children adopted abroad generally do not apply for adjustment of status.

[79] Family-sponsored 1st preference applicants, including the following categories: A-16 Unmarried Amerasian sons/daughters of U.S. citizens; F-16 Unmarried sons/daughters of U.S. citizens; A-17 Children of A-11 or A-16; F-17 Children of F-11 or F-16; B-17 Children of B-11 or B-16.

[80] Family-sponsored 2nd preference applicants, including the following categories: F-26 Spouses of alien residents, subject to country limits; C-26 Spouses of alien residents, subject to country limits, conditional; FX-6 Spouses of alien residents, exempt from country limits; CX-6 Spouses of alien residents, exempt from country limits, conditional; F-27 Children of alien residents, subject to country limits; C-28 Children of C-26 or C-27, subject to country limits, conditional; B-28 Children of B-26 or B-27, subject to country limits; F-28 Children of F-26 or F-27, subject to country limits; C-20 Children of C-29, subject to country limits, conditional; B-20 Children of B-29, subject to country limits; F-20 Children of F-29, subject to country limits; C-27 Children of alien residents, subject to country limits, conditional; FX-7 Children of alien residents, exempt from country limits; CX-8 Children of CX7, exempt from country limits, conditional; FX-8 Children of FX-7 or FX-8, exempt from country limits; CX-7 Children of alien residents, exempt from country limits, conditional; F-29 Unmarried sons/daughters of alien residents, subject to country limits; C-29 Unmarried children of alien residents, subject to country limits, conditional.

[81] Family-sponsored 3rd preference applicants, including the following categories: A-36 Married Amerasian sons/daughters of U.S. citizens; F-36 Married sons/daughters of U.S. citizens; C-36 Married sons/daughters of U.S. citizens, conditional; A-37 Spouses of A-31 or A-36; F-37 Spouses of married sons/daughters of U.S. citizens; C-37 Spouses of married sons/daughters of U.S. citizens, conditional; B-37 Spouses of B-31 or B-36; A-38 Children of A-31 or A-36, subject to country limits; F-38 Children of married sons/daughters of U.S. citizens; C-38 Children of C-31 or C-36, subject to country limits, conditional; B-38 Children of B-31 or B-36, subject to country limits.

[82] Family-sponsored 4th preference applicants, including the following categories: F-46 Brothers/sisters of U.S. citizens, adjustments; F-47 Spouses of brothers/sisters of U.S. citizens, adjustments; F-48 Children of brothers/sisters of U.S. citizens, adjustments.

[83] Applicants admitted as a K-1 or K-2 nonimmigrant, including the following categories: CF-1 Spouses, entered as fiancé(e), adjustments conditional; IF-1 Spouses, entered as fiancé(e), adjustments.

| **Family-Based Adjustment of Status Applicants Subject to the Public Charge Ground of Inadmissibility** |
|---|
| Amerasians based on preference category, born on or after December 31, 1950, and before October 22, 1982[84] |
| Spouses, widows, or widowers of U.S. citizens[85] |

| **Employment-Based Adjustment of Status Applicants Subject to the Public Charge Ground of Inadmissibility** |
|---|
| Priority workers[86] |
| Professionals with advanced degrees or aliens of exceptional ability[87] |
| Skilled workers, professionals, and other workers[88] |
| Investors[89] |

[84] Includes the following categories: Immediate Relative AR-6 Children, Amerasian, First Preference: A-16 Unmarried Amerasian sons/daughters of U.S. citizens; Third Preference A-36 Married Amerasian sons/daughters of U.S. citizens. See INA 204(f). Note that although this program does not have a specific sunset date, it is likely that all potential applicants have already applied.
[85] Includes the following categories: IW-6 Widows or widowers of U.S. citizens; IW-7 Children of IW-6.
[86] Employment-sponsored 1st preference applicants, including the following categories: E-16 Immigrants with extraordinary ability; E-17 Outstanding professors or researchers; E-18 Certain Multinational executives or managers; E-19 Spouses of E-11, E-12, E-13, E-16, E-17, or E18; E-10 Children of E-11, E-12, E-13, E-16, E-17, or E-18.
[87] Employment-sponsored 2nd preference applicants, including the following categories: E-26 Professionals holding advanced degrees; ES-6 Soviet scientists; E-27 Spouses of E-21 or E-26; E-28 Children of E-21 or E-26.
[88] Employment-sponsored 3rd preference applicants, including the following categories: EX-6 Schedule - A worker; EX-7 Spouses of EX-6; EX-8 Children of EX-6; E-36 Skilled workers; E-37 Professionals with baccalaureate degrees; E-39 Spouses of E-36 or E-37; E-30 Children of E36 or E-37; EW-8 Other workers; EW-0 Children of EW-8; EW-9 Spouses of EW-8; EC-6 Chinese Student Protection Act (CSPA) principals; EC-7 Spouses of EC-6; EC-8 Children of EC-6.
[89] Employment-sponsored 5th preference applicants, including the following categories: C-56 Employment creation, not in targeted area, adjustments, conditional; E-56 Employment creation; I-56 Employment creation, targeted area, pilot program, adjustments, conditional; T-56 Employment creation, targeted area, conditional; R-56 Investor pilot program, not targeted, conditional; NU-6 Investor, non-regional center, unreserved; RU-6 Investor, regional center, unreserved; NR-6 Investor, non-regional center, set aside, rural; NH-6 Investor, non-regional center, set aside, high unemployment; RR-6 Investor, regional center, set aside, rural; RH-1 Investor, regional center, set aside, high unemployment; RI-6 Investor, regional center, set aside, infrastructure; C-57 Spouses of C-51 or C-56, conditional; E-57 Spouses of E-51 or E-56; I-57 Spouses of I-51 or I-56, conditional; T-57 Spouses of T-51 or T-56, conditional; R-57 Spouses of R-51 or R-56, conditional; NU-7 Spouses of NU-1 or NU-6; RU-7 Spouses of RU-1 or RU-6; NR-7 Spouses of NR-1 or NR-6; NH-7 Spouses of NH-1 or NH-6; RR-7 Spouses of RR-1 or RR-6; RH-7 Spouses of RH-1 or RH-6; RI-7 Spouses of RI-1 or RI-6; C-58 Children of C-51 or C-56, conditional; E-58 Children of E-51 or E-56; I-58

| **Special Immigrant Adjustment of Status Applicants Subject to the Public Charge Ground of Inadmissibility** |
|---|
| Religious workers[90] |
| Certain employees or former employees of the U.S. government abroad[91] |
| Panama Canal Zone employees[92] |
| Foreign medical school graduates[93] |
| Retired employees of international organizations[94] |
| U.S. armed forces personnel[95] |
| International broadcasters[96] |

Children of I-51 or I-56, conditional; T-58 Children of T-51 or T-56, conditional; R-58 Children of R-51 or R-56, conditional; NU-8 Children of NU-1 or NU-6; RU-8 Children of RU-1 or RU-6; NR-8 Children of NR-1 or NR-6; NH-8 Children of NH-1 or NH-6; RR-8 Children of RR-1 or RR-6; RH-8 Children of RH-1 or RH-6; RI-8 Children of RI-1 or RI-6.

[90] Includes the following categories: SD-6 Ministers; SD-7 Spouses of SD-6; SD-8 Children of SD-6; SR-6 Religious workers; SR-7 Spouses of SR-6; SR-8 Children of SR-6.

[91] Includes the following categories: SE-6 Employees of U.S. government abroad, adjustments; SE-7 Spouses of SE-6; SE-8 Children of SE-6.

[92] Includes the following categories: SF-6 Former employees of the Panama Canal Company or Canal Zone Government; SF-7 Spouses or children of SF-6; SG-6 Former U.S. government employees in the Panama Canal Zone; SG-7 Spouses or children of SG-6; SH-6 Former employees of the Panama Canal Company or Canal Zone government, employed on April 1, 1979; SH-7 Spouses or children of SH-6. Note that although this program does not have a specific sunset date, it is likely that all potential applicants have already applied.

[93] Includes the following categories: SJ-6 Foreign medical school graduate who was licensed to practice in the United States on Jan. 9, 1978; SJ-7 Spouses or children of SJ-6. Note that although this program does not have a specific sunset date, it is likely that all potential applicants have already applied.

[94] Includes the following categories: SK-6 Retired employees of international organizations; SK-7 Spouses of SK-1 or SK-6; SK-8 Certain unmarried children of SK-6; SK-9 Certain surviving spouses of deceased international organization employees.

[95] Also known as the Six and Six Program, includes the following categories: SM-6 U.S. armed forces personnel, service (12 years) after 10/1/91; SM-9 U.S. armed forces personnel, service (12 years) by 10/91; SM-7 Spouses of SM-1 or SM-6; SM-0 Spouses or children of SM-4 or SM-9; SM-8 Children of SM-1 or SM-6.

[96] Includes the following categories: BC-6 Broadcast (IBCG of BBG) employees; BC-7 Spouses of BC-1 or BC-6; BC-8 Children of BC-6.

| Other Adjustment of Status Applicants Subject to the Public Charge Ground of Inadmissibility |
|---|
| Diplomats or high-ranking officials unable to return home (Section 13 of the Act of September 11, 1957) |
| Diversity visa immigrants[97] |
| Certain entrants before Jan. 1, 1982[98] |
| S (Alien witness or informant)[99] |

### C. Exemptions

The public charge ground of inadmissibility does not apply, based on statutory or regulatory authority, to the following applicants for visas, admission, and adjustment of status (or other immigration benefit requests that require admissibility):

- Asylees[100] and refugees;[101]
- Amerasian immigrants at admission;[102]
- Afghan and Iraqi interpreters or Afghan and Iraqi nationals employed by or on behalf of the U.S. government;[103]
- Cuban and Haitian entrants at adjustment of status under section 202 of the Immigration

[97] Includes the following categories: DV-1 Diversity immigrant; DV-2 Spouses of DV-1; DV-3 Children of DV-1.
[98] Includes the following categories: W-16 Previously granted temporary resident status (legalization) who entered United States without inspection before Jan. 1, 1982; W-26 Previously granted temporary resident status (legalization) who entered United States as a nonimmigrant and overstayed visa before Jan. 1, 1982.
[99] S nonimmigrants applying for adjustment of status may apply for a waiver of the public charge ground of inadmissibility using Inter-Agency Alien Witness and Informant Record (Form I-854). See Chapter 9, Waivers of Inadmissibility Based on Public Charge Ground [8 USCIS-PM G.9].
[100] See INA 208. See 8 CFR 209.2.
[101] See INA 207 and INA 209. See 8 CFR 209.1.
[102] See Sections 101(e) and 584 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 1988, Pub. L. 100-202, 101 Stat. 1329-183 (December 22, 1987), as amended.
[103] See Section 1059(a)(2) of the National Defense Authorization Act for Fiscal Year 2006, Pub. L. 109-163, 119 Stat. 3136, 3444 (January 6, 2006), as amended, and Section 602(b), Title VI of the Omnibus Appropriations Act, 2009, Pub. L. 111-8, (March 11, 2009), as amended, and Section 1244(g) of the National Defense Authorization Act for Fiscal Year 2008, Pub. L. 110-181, 122 Stat. 3, 396 (January 28, 2008), as amended.

Reform and Control Act of 1986;[104]

- Applicants seeking adjustment under the Cuban Adjustment Act;[105]
- Nicaraguans and other Central Americans who are adjusting status to LPR;[106]
- Haitians who are adjusting status to LPR under the Haitian Refugee Immigration Fairness Act of 1998;[107]
- Lautenberg parolees;[108]
- Special immigrant juveniles;[109]
- Applicants for registry;[110]
- Applicants seeking temporary protected status (TPS);[111]
- Certain nonimmigrant ambassadors, ministers, diplomats, and other foreign government officials, and their families;[112]
- Victims of human trafficking (T nonimmigrants);[113]

---

[104] See Section 202 of the Immigration Reform and Control Act of 1986 (IRCA), Pub. L. 99-603, 100 Stat. 3359, 3404 (November 6, 1986), as amended.
[105] See Cuban Adjustment Act, Pub. L. 89-732 (November 2, 1966), as amended.
[106] See Sections 202(a) and 203 of the Nicaraguan Adjustment and Central American Relief Act, Pub. L. 105-100, 111 Stat. 2160, 2193 (November 19, 1997), as amended.
[107] See Section 902 of the Haitian Refugee Immigration Fairness Act of 1998, Pub. L. 105-277, 112 Stat. 2681, 2681-538 (October 21, 1998), as amended.
[108] See Section 599E of the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 1990, Pub. L. 101-167, 103 Stat. 1195, 1263 (November 21, 1989), as amended.
[109] See INA 245(h).
[110] Registry is a section of immigration law that enables certain aliens who have been present in the United States since January 1, 1972, the ability to apply for lawful permanent residence even if currently in the United States unlawfully. See INA 249. See 8 CFR 249.
[111] See 8 CFR 244.3. INA 244(c)(2)(ii) authorizes DHS to waive any INA 212(a) ground, except for those that Congress specifically noted could not be waived.
[112] See INA 101(a)(15)(A)(i), INA 101(a)(15)(A)(ii), and INA 102. See 22 CFR 41.21(d). See INA 101(a)(15)(G)(i), INA 101(a)(15)(G)(ii), INA 101(a)(15)(G)(iii), and INA 101(a)(15)(G)(iv).
[113] See INA 245(l). If the applicant is adjusting based on an employment-based petition where the petition is filed by either a qualifying relative or an entity in which such relative has a significant ownership interest (5 percent or more), and the applicant, at both the time of filing and adjudication of the Application to Register Permanent Residence or Adjust Status (Form I-485), is still in valid T nonimmigrant status, the applicant is not subject to INA 212(a)(4) but is still required to file an Affidavit of Support Under Section 213A of the INA (Form I-864). See 8 CFR 213a.2(b)(2).

- Victims of qualifying criminal activity (U nonimmigrants);[114]
- Self-petitioners under the Violence Against Women Act (VAWA);[115]
- Certain battered aliens who are "qualified aliens" under PRWORA;[116]
- Applicants adjusting status who qualify for a benefit as surviving spouses, children, or parents of military members;[117]
- American Indians born in Canada who are not U.S. citizens;[118]
- Certain members of the Texas Band of Kickapoo Indians of the Kickapoo Tribe of Oklahoma;[119]
- Nationals of Vietnam, Cambodia, and Laos applying under the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 2001;[120]
- Polish and Hungarian Parolees;[121]
- Certain Syrian nationals;[122]
- Applicants adjusting under the Liberian Refugee Immigration Fairness (LRIF) law;[123] and

---

[114] See INA 101(a)(15)(U) and INA 212(a)(4)(E)(ii). See Section 804 of the Violence Against Women Reauthorization Act of 2013, Pub. L. 113-4, 127 Stat. 54, 111 (March 7, 2013). If the applicant is adjusting based on an employment-based petition where the petition is filed by either a qualifying relative or an entity in which such relative has a significant ownership interest (5 percent or more), and the applicant, at both the time of filing and adjudication of the Form I-485, is still in valid U nonimmigrant status, the applicant is not subject to INA 212(a)(4) but is still required to file Form I-864. See 8 CFR 213a.2(b)(2).
[115] See INA 212(a)(4)(E)(i).
[116] See INA 212(a)(4)(E)(iii). See Section 804 of the Violence Against Women Reauthorization Act of 2013, Pub. L. 113-4, 127 Stat. 54, 111 (March 7, 2013). See Section 431(c) of Pub. L. 104-193, 110 Stat. 2105, 2274 (August 22, 1996). See 8 U.S.C. 1641(c).
[117] See Section 1703 of the National Defense Authorization Act, Pub. L. 108-136, 117 Stat. 1392 (November 24, 2003) (posthumous benefits to surviving spouses, children, and parents).
[118] See INA 289.
[119] See Pub. L. 97-429 (January 8, 1983).
[120] See Section 586 of Pub. L. 106-429, 114 Stat. 1900, 1900A-57 (November 6, 2000) under 8 CFR 245.21.
[121] Includes certain Polish and Hungarian parolees who were paroled into the United States from November 1, 1989 to December 31, 1991. See Section 646(b) of IIRIRA, Division C of Pub. L. 104-208, 110 Stat. 3009-546, 3009-709 (September 30, 1996).
[122] See Pub. L. 106-378 (October 27, 2000).
[123] See Section 7611 of the National Defense Authorization Act for Fiscal Year 2020, Pub. L. 116-92, 113 Stat. 1198, 2309 (December 20, 2019) (Liberian Refugee Immigration Fairness), later extended by Section 901 of Division O, Title IX of the Consolidated Appropriations Act of 2021, Pub. L. 116-260, 134 Stat. 1182, 2155 (December 27, 2020) (Adjustment of Status for Liberian Nationals Extension).

- Any other categories of aliens exempt from the public charge ground of inadmissibility under any other law.

**D. Categories of Aliens Exempt from the Public Charge Ground of Inadmissibility Who Must Still Submit Form I-864**

Under INA 212(a)(4)(D), certain aliens applying to adjust status in an employment-based category are required to submit an Affidavit of Support Under Section 213A of the INA (Form I-864). This includes aliens whose employment-based petition was filed by a relative of the alien[124] or by an entity in which the alien's relative has a significant ownership interest.[125]

Congress did not include an exemption from this requirement for aliens applying to adjust status in the employment-based categories, even for certain categories of aliens who are otherwise exempt from the public charge ground of inadmissibility.[126]

Therefore, if an alien in one of the following categories applies for adjustment of status based on an employment-based petition that requires a Form I-864, the alien must submit a Form I-864 executed by his or her petitioning relative (or the relative with significant ownership interest in the petitioning entity):

- Aliens who have a pending application that sets a prima facie case for eligibility for T nonimmigrant status;

- Aliens who have been granted T nonimmigrant status and are in valid T nonimmigrant status at the time the adjustment of status application is properly filed with USCIS and at the time the adjustment of status is adjudicated;

- Petitioners for U nonimmigrant status;

- Aliens who have been granted U nonimmigrant status and are in valid U nonimmigrant status at the time the adjustment of status application is properly filed with USCIS and at the time the adjustment of status is adjudicated;

- Self-petitioners under the Violence Against Women Act (VAWA); and

---

[124] Relatives include spouse, parents, children, adult sons or daughters, brothers, and sisters. See 8 CFR 213a.1. An affidavit of support under this section is not required, however, if the relative is a brother or sister of the intending immigrant, unless the brother or sister is a citizen. See 8 CFR 213a.2(a)(2)(i)(C).
[125] Significant ownership interest means an ownership interest of 5 percent or more in a for-profit entity that filed an immigrant visa petition to accord a prospective employee an immigrant status under INA 203(b). See 8 CFR 213a.1.
[126] See INA 212(a)(4)(E).

- Certain aliens who have been battered or subjected to extreme cruelty by a family member in the United States.[127]

## Chapter 4. Prospective Determination Based on the Totality of the Circumstances

The public charge inadmissibility determination is a prospective determination based on the totality of an alien's circumstances.[128] The public charge inadmissibility determination is inherently subjective and discretionary in nature given the express wording of section 212(a)(4)(A) of the Immigration and Nationality Act (INA), which states that the public charge inadmissibility determination is "in the opinion of" DHS.[129]

In making a public charge inadmissibility determination in the context of an adjustment of status application, USCIS reviews all relevant evidence and information in the alien's record.[130] This evidence includes, but is not limited to, the alien's Application to Register Permanent Residence or Adjust Status (Form I-485), Report of Immigration Medical Examination and Vaccination Record (Form I-693), if required, or any other report of medical examination in the record,[131] any other forms and evidence contained in the alien's record, and statements by the alien during an interview, if applicable. USCIS considers all information and evidence in the record that is relevant to assessing an alien's likelihood at any time of becoming a public charge in the totality of the circumstances.

For all aliens applying for adjustment of status who are subject to the public charge ground of inadmissibility,[132] the officer will consider the statutory minimum factors: the alien's age;[133]

---

[127] See INA 212(a)(4)(E)(iii). The list of "qualified aliens" included in this exemption is described in 8 U.S.C. 1641(c).
[128] See INA 212(a)(4). See *Matter of A-*, 19 I&N Dec. 867, 869 (BIA 1988) ("The traditional test applied by the Service to determine whether an alien is likely to become a public charge is 'a prediction based on the totality of the alien's circumstances' as presented in the individual case . . . the test is prospective . . . .").
[129] See *Matter of Harutunian*, 14 I&N Dec. 583, 588 (Reg. Comm. 1974) ("[T]he determination of whether an alien falls into that category [as likely to become a public charge] rests within the discretion of the consular officers or the Commissioner . . . Congress inserted the words 'in the opinion of' (the consul or the Attorney General) with the manifest intention of putting borderline adverse determinations beyond the reach of judicial review." (citation omitted)). See *Matter of Martinez-Lopez*, 10 I&N Dec. 409, 421 (A.G. 1964) ("[U]nder the statutory language the question for visa purposes seems to depend entirely on the consular officer's subjective opinion.").
[130] See *Matter of Vindman*, 16 I&N Dec. 131, 132 (BIA 1977) ("The elements constituting likelihood of an alien becoming a public charge are varied. They are not defined by statute, but rather are determined administratively upon consideration of all the factors bearing on the alien's ability or potential ability to be self-supporting.").
[131] Note that some aliens applying for adjustment of status who are subject to the public charge ground of inadmissibility may not be required to submit a Form I-693. Instead, they may use the Form DS-7794 or Form DS-2054, and related worksheets, completed by a panel physician abroad. In such cases, officers should review the information contained on those medical forms as part of the public charge inadmissibility determination.
[132] See INA 212(a)(4).
[133] See Chapter 5, Statutory Minimum Factors, Section A, Age [8 USCIS-PM G.5(A)].

health;[134] family status;[135] assets, resources, and financial status;[136] and education and skills.[137] The officer may consider a sufficient Affidavit of Support Under Section 213A of the INA (Form I-864) (when required)[138] and any other factor in the alien's case that is relevant to determining whether the alien is likely at any time to become a public charge.[139] Among other factors that an officer should consider, any current or past receipt of means-tested public benefits[140] by the alien will almost always be highly relevant to assessing an alien's likelihood at any time of becoming a public charge.[141] An alien's application for means-tested public benefits as well as his or her approval or certification to receive means-tested public benefits will generally also be relevant and should be considered.[142]

There is no "bright-line" test in making a public charge inadmissibility determination. As noted previously, no one factor considered by an officer is outcome determinative except for the lack of a sufficient Form I-864 when one is required. The officer must determine whether the alien's individual facts and circumstances, assessed in their totality, suggest that the alien is more likely than not to become a public charge.[143]

## Chapter 5. Statutory Minimum Factors

Under section 212(a)(4)(B) of the Immigration and Nationality Act (INA), officers are required to consider specific minimum factors in determining whether an alien applying to adjust status to that of lawful permanent resident is likely at any time to become a public charge. These statutory minimum factors include the alien's:

- Age;
- Health;

---

[134] See Chapter 5, Statutory Minimum Factors, Section B, Health [8 USCIS-PM G.5(B)].
[135] See Chapter 5, Statutory Minimum Factors, Section C, Family Status [8 USCIS-PM G.5(C)].
[136] See Chapter 5, Statutory Minimum Factors, Section D, Assets, Resources, and Financial Status [8 USCIS-PM G.5(D)].
[137] See Chapter 5, Statutory Minimum Factors, Section E, Education and Skills [8 USCIS-PM G.5(E)].
[138] See Chapter 6, Affidavit of Support Under Section 213A of the INA [8 USCIS-PM G.6].
[139] See *Matter of Vindman*, 16 I&N Dec. 131, 132 (BIA 1977) ("The elements constituting likelihood of an alien becoming a public charge are varied. They are not defined by statute, but rather are determined administratively upon consideration of *all the factors bearing on the alien's ability or potential ability to be self-supporting*.") (emphasis added).
[140] See Chapter 2, Key Concepts, Section B, Means-Tested Public Benefits [8 USCIS-PM G.2(B)].
[141] See Chapter 7, Consideration of Any Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits [8 USCIS-PM G.7].
[142] See Chapter 7, Consideration of Any Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits [8 USCIS-PM G.7].
[143] DHS interprets the term ''likely'' to mean ''more likely than not''.

- Family status;
- Assets, resources, and financial status; and
- Education and skills.[144]

This chapter discusses the statutory minimum factors. Subsequent chapters discuss the Affidavit of Support Under Section 213A of the INA (Form I-864) and consideration of any current and/or past receipt of means-tested public benefits.[145]

**A. Age**

An officer must consider an alien's age in a public charge inadmissibility determination.[146] The alien provides his or her date of birth on the Form I-485.

USCIS considers the alien's age in relation to its potential impact on the other factors, for example, the health and assets, resources, and financial status factors.[147] For example, in the case of an alien who is a child and who, due to his or her age, is unable to earn a living through employment, the assets, resources, and financial status of his or her parents or guardians, who are part of the alien's household, would be of particular importance in the public charge inadmissibility determination. However, as noted previously, an alien's age alone is not outcome determinative.

Also, individuals depart the workforce at different ages. An officer should scrutinize an alien's plans for current and future employment in the United States. If an alien has already retired, is nearing retirement, or otherwise indicates no employment plans or only short-term employment plans based on the alien's age, an assessment of retirement plans, accounts, benefits, and household assets and resources takes on a more critical role in the public charge inadmissibility determination.

**B. Health**

An officer must consider an alien's health in a public charge inadmissibility determination.[148]

---

[144] See INA 212(a)(4)(B)(i).
[145] See Chapter 6, Affidavit of Support Under Section 213A of the INA [8 USCIS-PM G.6]. See Chapter 7, Consideration of Any Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits [8 USCIS-PM G.7].
[146] See INA 212(a)(4)(B)(i).
[147] For more information about the totality of the circumstances determination, see Chapter 4, Prospective Determination Based on the Totality of the Circumstances [8 USCIS-PM G.4]. For more information about the totality of circumstances specifically relating to children, see Chapter 10, Adjudicating Public Charge Inadmissibility for Adjustment of Status Applications, Section A, Evidence in the Record [8 USCIS-PM G.10(A)]. See Chapter 8, Other Relevant Factors [8 USCIS-PM G.8].
[148] See INA 212(a)(4)(B)(i).

1. Report of Immigration Medical Examination and Vaccination Record

In considering an alien's health in a public charge inadmissibility determination, an officer must not make health diagnoses and should generally defer to the immigration medical examination report completed and signed by a civil surgeon or a panel physician. A civil surgeon records the results of the immigration medical examination on the Report of Immigration Medical Examination and Vaccination Record (Form I-693). A panel physician records the results of the immigration medical examination on the following Department of State forms: Medical Examination for Immigrant or Refugee Applicant (1991 TB Technical Instructions) (Form DS-2053), the Medical Examination for Immigrant or Refugee Applicant (2007 TB Technical Instructions) (Form DS-2054), or the Electronic Medical Examination for Visa Applicant (DS-7794), and related worksheets.[149]

Civil surgeons and panel physicians are instructed to comply with the Centers for Disease Control and Prevention's (CDC) Technical Instructions.[150] As noted in the Technical Instructions, the purpose of the immigration medical examination is to determine whether the alien has:

- A physical or mental disorder (including a communicable disease of public health significance or drug abuse/addiction) that renders him or her ineligible for admission or adjustment of status (Class A condition); or

- A physical or mental disorder that represents a departure from normal health or well-being that is significant enough to possibly interfere with the person's ability to care for him- or herself, to attend school or work, or that may require extensive medical treatment or institutionalization in the future (Class B condition).[151]

The civil surgeon or panel physician, therefore, should account for any diagnoses of Class A[152] or Class B medical conditions.[153] As noted above, Class A medical conditions are medical conditions listed in INA 212(a)(1)(A) that render an alien inadmissible and ineligible for a visa or adjustment of status under the health-related grounds.

---

[149] As of October 1, 2013, panel physicians only use DS-2054 or DS-7794, the DS-2053 is no longer in use. Applicants for adjustment of status generally submit Form I-693; however, immigrants applying for adjustment of status as a refugee, a derivative of an asylee, or a K or V nonimmigrant visa holder, as well as some Afghan nationals who entered the United States as part of Operation Allies Welcome and have already had a medical examination overseas, may submit a medical examination performed by a panel physician.
[150] See Technical Instructions for Civil Surgeons (May 15, 2024) and Technical Instructions for Panel Physicians (May 15, 2024).
[151] See "Scope of the Examination" in Technical Instructions for Civil Surgeons (May 15, 2024) and Technical Instructions for Panel Physicians (May 15, 2024).
[152] See 42 CFR 34.2(d).
[153] See 42 CFR 34.4(b)(2) and 42 CFR 34.4(c)(2). For more information about Class A and Class B conditions, see Volume 8, Admissibility, Part B, Health-Related Grounds of Inadmissibility [8 USCIS-PM B].

Class B medical conditions, on the other hand, do not render the alien inadmissible. However, such conditions may possibly impact the alien's ability to work, to provide for himself or herself, or require or will likely require extensive medical care or institutional care. As a result, such conditions may be relevant to assessing the alien's likelihood at any time of becoming a public charge. In the case of Class B medical conditions, civil surgeons and panel physicians are required to determine and report:

- The nature and extent of the abnormality;
- The degree to which the alien is incapable of normal physical activity;
- The extent to which the condition is remediable; and
- The likelihood that the alien will require extensive medical care or institutionalization because of the condition.[154]

An officer should consider the alien's health, as reflected on the civil surgeon or panel physician's report, and how the alien's health impacts other factors in the totality of circumstances. For example, even if the alien's medical condition prevents the alien from working or requires extensive medical care or institutional care, an alien may still be able to demonstrate sufficient household income, assets, and resources to cover the alien's projected basic needs and medical costs. The alien could also present evidence that he or she is covered under a health insurance policy (that is not a means-tested public benefit) that is sufficient to address the alien's medical costs when considered in combination with the alien's household income, assets, and resources.

When considering the alien's health, an officer may also consider medical reports and information the alien has submitted with previous applications or requests that are part of the alien's administrative record.[155]

USCIS may request additional information regarding an applicant's health if the information provided in the report of immigration medical examination is incomplete.

2. Relationship Between Health and Disability

An officer's consideration of an alien's health under INA 212(a)(4)(B)(i) may also include consideration of any disabilities, as defined by Section 504 of the Rehabilitation Act. An alien's

---

[154] See 42 CFR 34.4(c) and "Other Physical or Mental Abnormality, Disease or Disability - Required Evaluation Components" in Technical Instructions for Civil Surgeons (May 15, 2024).
[155] While USCIS is generally not a covered entity bound by the Health Insurance Portability and Accountability Act (HIPAA), USCIS complies with the Privacy Act of 1974 in safeguarding information in the applicable system of records. Such information is generally confidential and is used primarily for immigration purposes. See 45 CFR 160.103. See also 5 U.S.C. 552.

disability or disabilities may be identified in the alien's report of immigration medical examination. An alien's disability alone is not a sufficient basis to determine that the alien is likely at any time to become a public charge, and an officer may not find an alien inadmissible on the public charge ground solely based on an applicant's disability.

Many disabilities do not prevent an alien from working and do not require extensive medical care or institutional care. Research, including multiple studies published by the U.S. Department of Health and Human Services, indicates that the majority of people with disabilities do not use institutional care.[156]

Therefore, an officer should not presume that an alien having a disability alone means that the alien is in poor health or is likely at any time to become a public charge. Likewise, USCIS does not presume that the alien's disability in and of itself negatively impacts any of the other statutory minimum factors, but rather USCIS considers the disability in the totality of the circumstances.

**C. Family Status**

USCIS must consider an alien's family status in a public charge inadmissibility determination.[157] An alien's family status is understood to include consideration of the alien's household size. Officers may consider the following individuals as part of an alien's household for purposes of a public charge inadmissibility determination:

- The alien;
- The alien's spouse, if physically residing with the alien;
- The alien's parents, if physically residing with the alien;
- The alien's unmarried siblings under 21 years of age, if physically residing with the alien;
- The alien's children,[158] if physically residing with the alien;

---

[156] See Population Estimates of Disability and Long-Term Care, HHS Office of the Assistant Secretary for Planning and Evaluation (Jan 31, 1995), available at https://aspe.hhs.gov/reports/population-estimates-disability-long-term-care-0. See also 30 Years of Community Living, HHS Administration for Community Living (2021), available at https://acl.gov/sites/default/files/Aging%20and%20Disability%20in%20America/30%20Years%207-13-21.pdf. See also von Reichert, Christiane, Disability and the household context: Findings for the United States from the public Use Microdata Sample of the American Community Survey, Frontiers in Research Sciences (Aug. 12, 2022), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC9397927/.
[157] See INA 212(a)(4)(B)(i).
[158] As defined in INA 101(b)(1).

- Any other individuals who are listed as dependents on the alien's federal income tax return;[159] and

- Any other individuals who list the alien as a dependent on their federal income tax return.

As seen in this list, an alien's household may include certain individuals living with the alien (who may or may not contribute financially to the household) as well as certain relatives and close relations who may contribute financially to the alien's household while not residing with the alien. Financial contributions from these non-cohabitating household members are included in the consideration of the alien's assets, resources, and financial status factor, as described below.

**D. Assets, Resources, and Financial Status**

USCIS must consider an alien's assets, resources, and financial status in a public charge inadmissibility determination.[160] In considering an alien's assets, resources, and financial status, USCIS examines the alien's household's income, assets, and liabilities.

*Income*

Aliens indicate their household's annual income, which may include income provided to the household from sources who are not members of the household, such as alimony or child support. A household's annual income may also include any cash payments that have been earned, such as Title II Social Security benefits, government pension benefits, unemployment insurance payments, and veterans' benefits. Considering that the purpose of a public charge inadmissibility determination is to determine the alien's likelihood of at any time becoming a public charge, the source of an alien's income is a highly relevant consideration. Specifically, if an alien's income comes exclusively or partially from means-tested public benefits, such income cannot be considered positively in the totality of the circumstances. Therefore, officers should exclude from positive consideration any income from means-tested public benefits. Similarly, officers will exclude from consideration any income from illegal activities or sources such as proceeds from illegal gambling or drug sales.

USCIS does not limit the consideration of income only to income that appears on federal income tax forms and considers all evidence of income from lawful sources. Examples of income that may not appear on income tax forms include child support and alimony. Some households may also have regular income, such as Social Security income, that does not reach the

[159] Including a spouse or child as defined in INA 101(b)(1) not physically residing with the alien.
[160] See INA 212(a)(4)(B)(i).

minimum required threshold for filing federal income taxes.[161] USCIS also considers any evidence an alien submits pertaining to expected future income.

USCIS does not attribute the receipt of means-tested public benefits by an alien's household members to the alien. However, because USCIS considers an alien's household income as part of this factor, there are certain circumstances in which USCIS may consider the receipt of means-tested public benefits by members of the alien's household when considering the alien's assets, resources, and financial status. The receipt of means-tested public benefits by members of the alien's household is only relevant to the public charge inadmissibility determination if:

- The means-tested public benefits received by the alien's household member are the alien's source of financial support; or

- The alien is legally obligated to support the household member who is receiving the means-tested public benefits.

In both of these cases, the receipt by the household member is relevant to the public charge inadmissibility determination for the alien solely because it is potentially indicative of the alien's assets, resources, or financial status. Such information may be consistent with or undermine information or evidence provided by the alien in connection with his or her application for adjustment of status. Note, however, that USCIS does not collect information about the receipt of means-tested public benefits by household members on Form I-485.

In some instances, the alien's household income may include income that has resulted from unauthorized employment. Whether an alien or a member of the alien's household engaged in unlawful employment, and any immigration consequences flowing from such unauthorized employment, is a separate determination from the public charge inadmissibility determination.[162] Therefore, income derived from unlawful employment is not excluded from the household's income calculation unless the income is derived from illegal activities or sources, such as illegal gambling or drug sales.

*Assets and Liabilities*

When considering the applicant's financial status, USCIS also considers the assets and resources of the alien's household, for example, investments or home equity, excluding any assets from illegal activities or sources, such as proceeds from illegal gambling or drug sales. USCIS also considers the alien's household's liabilities, both secured and unsecured, such as loans,

---

[161] See the Internal Revenue Service's (IRS) Who Should File a Tax Return webpage for more information on the minimum taxable income threshold.
[162] See INA 245(c)(2) and INA 245(c)(8). For more information about the unauthorized employment determination, see Volume 7, Adjustment of Status, Part B, 245(a) Adjustment, Chapter 6, Unauthorized Employment (INA 245(c)(2) and INA 245(c)(8)) [7 USCIS-PM B.6].

alimony, and child support payments. By taking into account liabilities of an alien's household, USCIS is able to examine the alien's overall financial status in the totality of the circumstances.

USCIS considers financial obligations and debts alongside assets and resources to avoid artificially inflating the calculation of an alien's financial status, as these obligations and debts would decrease the resources that are actually accessible to the alien. However, if an alien has financial obligations and debts, this does not necessarily indicate that the alien is inadmissible under the public charge ground, and USCIS considers this factor in the totality of the circumstances.

**E. Education and Skills**

USCIS must consider an alien's education and skills in a public charge inadmissibility determination.[163] In considering an alien's education and skills, USCIS may consider any degrees, certifications, licenses, educational certificates, and skills the alien obtained through work experience or educational programs.

Skills obtained through work experience (including volunteer and unpaid opportunities) include but are not limited to the alien's workforce skills, training, licenses for specific occupations or professions, language skills (including English proficiency), and certificates documenting mastery or apprenticeships in skilled trades or professions. Educational certificates are issued by an educational institution (or a training provider) and certify that an occupation specific program of study was completed.

While some aliens may establish their education and skills through evidence of completed degrees, the statutory education and skills factor does not specify that only formal education is acceptable. USCIS may consider other evidence of attained knowledge and skills, including those skills earned through certifications and licensure, as well as skills obtained through on-the-job training or overall work experience. This consideration allows USCIS to acknowledge those aliens who hold occupations that do not require official licenses or certifications but whose occupations impart skills that otherwise affect the alien's overall employability.

**Chapter 6. Affidavit of Support Under Section 213A of the INA**

**A. Background**

The concept of individuals inside the United States agreeing to support intending immigrants has a long history in U.S. immigration. Immigration officers generally considered (among other factors in the totality of the circumstances) whether an alien had family members or friends in the United States who could help support the alien when making public charge exclusion

---

[163] See INA 212(a)(4)(B)(i).

determinations in the early 20th century.[164] This continued to be an important factor for officers considering an alien's request for entry into the United States.[165]

Building on that practice, beginning in 1930, each intending immigrant applying for an immigrant visa was generally required to provide evidence of his or her financial status or affidavits of support from sponsoring residents of the United States.[166] As an example, an individual completing the affidavit of support swore, using the 1947 version of the Affidavit of Support (Form I-134), that he or she was "willing and able to receive, maintain, and support the prospective immigrants," and was "ready and willing to deposit a bond, if necessary, with the United States immigration authorities to guarantee that such prospective immigrants will not become public charges during their stay in the United States." Such affidavits carried heavy weight in public charge determinations by the U.S. Department of State (DOS). As the Senate Judiciary Committee wrote in 1950, "[a]n affidavit executed by a responsible party in this country usually is satisfactory evidence that the alien is not likely to become a public charge."[167]

In 1952, Congress for the first time established a procedure for certain aliens physically present in the United States to adjust to lawful permanent resident (LPR) status without having to travel abroad and undergo consular processing with DOS.[168] Among other requirements for adjustment of status, the alien must have been "admissible to the United States." As a result, the U.S. Department of Justice (DOJ) began to apply the public charge ground of inadmissibility in the adjustment of status context. Consistent with consular processing and exclusion determinations at ports of entry, in making decisions concerning eligibility for adjustment of status, DOJ considered whether there were persons "in the United States willing and able to assure that [an adjustment of status applicant] will not need public support."[169]

However, courts found that the affidavits of support used throughout most of the 20th century were not legally enforceable and did not permit government agencies to seek reimbursement from sponsors when the sponsored aliens received public benefits.[170] The Senate Judiciary Committee, in 1950, wrote that the affidavit of support, "at most, appears to be merely a moral obligation upon the affiant, and the Government apparently could not recover [government

[164] See, for example, *Gegiow v. Uhl*, 239 U.S. 3 (1915) (noting that immigration officers considered, among other factors, that the aliens had "no one legally obligated here to assist them.").
[165] See *United States v. Reimer*, 83 F.2d 166 (2d Cir. 1936), in which the unwillingness of a family member to support the alien, and the willingness of a friend to support the alien, were considered.
[166] See Gordon, Charles, Aliens and Public Assistance, *Immigration and Naturalization Service Monthly Review*, March 1949.
[167] See S. Rep. 81-1515, p. 347 (1950).
[168] See Pub. L. 82-414, sec. 245(a), 66 Stat. 163, 217.
[169] See *Matter of Harutunian*, 14 I&N Dec. 583 (Reg. Comm. 1974).
[170] See *San Diego County v. Viloria*, 276 Cal. App. 2d 350, 80 Cal. Rptr. 869 (Ct. App. 1969). See *State ex rel. Atty. Gen. v. Binder*, 356 Mich. 73, 96 N.W.2d 140 (1959). See *Dep't of Mental Hygiene of State of Cal. v. Renel*, 10 Misc. 2d 402, 173 N.Y.S.2d 231 (App. Term), aff'd, 6 A.D.2d 782, 175 N.Y.S.2d 556 (1958), aff'd, 6 N.Y.2d 791, 159 N.E.2d 678 (1959).

expenses related to the sponsored alien] on the strength of the document since there is no contractual obligation involved."[171]

Congress recognized that the lack of an enforceable affidavit of support limited its utility both for public charge inadmissibility determinations and for ensuring that, as Congress stated in 1996, that "aliens within the Nation's borders not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations."[172] In recognition of the important role that support from families and sponsors plays in preventing aliens from depending on public resources, Congress created the requirement for a legally enforceable affidavit of support to reduce the potential for an intending immigrant to become a public charge in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).[173] When required, the alien must submit an Affidavit of Support Under Section 213A of the INA (Form I-864 or Form I-864EZ)[174] completed by a sponsor.

Form I-864[175] is a legally enforceable contract that a U.S. citizen, U.S. national, or LPR signs to accept financial responsibility for an alien, usually a relative, who is coming to the United States to live permanently. Form I-864[176] is legally binding and requires a sponsor to maintain the alien at an annual income of no less than 125 percent of the Federal Poverty Guidelines (FPG).[177] The U.S. citizen, U.S. national, or LPR who signs the Form I-864 becomes the alien's sponsor once the alien becomes an LPR.

For Form I-864 to be sufficient, a sponsor generally must demonstrate that he or she is able to maintain the sponsored alien at an annual income of not less than 125 percent of the FPG.[178] The presence of a sufficient Form I-864 does not eliminate the need to consider all of the factors of a public charge inadmissibility determination, and USCIS only considers it as one factor in the totality of the circumstances. However, the statute requires a finding of inadmissibility on the public charge ground if the alien is required to submit a sufficient Form I-864 and fails to do so.[179]

---

[171] See S. Rep. 81-1515, p. 347 (1950).
[172] See 8 U.S.C. 1601.
[173] See Title V, Subtitle C of Pub. L. 104-208, 110 Stat. 3009, 3009-675 (September 30, 1996).
[174] A sponsor may use Form I-864EZ if the sponsor is the Petition for Alien Relative (Form I-130) petitioner, there is only one beneficiary on the Form I-130 petition, and the income the sponsor is using to qualify is based entirely on the sponsor's salary or pension and is shown on one or more Forms W-2 provided by the sponsor's employer(s) or former employer(s). Hereinafter, any references to the Form I-864 also include the Form I-864EZ.
[175] Filed on Form I-864 or Form I-864EZ.
[176] As required under INA 212(a)(4) and INA 213A.
[177] See INA 213A. See 8 CFR 213a.
[178] See INA 213A. A sponsor who is on active duty (other than active duty for training) in the U.S. armed forces and who is petitioning for a spouse or child only has to demonstrate the means to maintain an annual income equal to at least 100 percent of the FPG. See 8 CFR 213a.2(c)(2).
[179] See INA 212(a)(4)(D).

**B. Applicants Required to Submit Form I-864**

The Immigration and Nationality Act (INA) outlines which aliens are required to submit a Form I-864.[180] Most aliens intending to immigrate or to adjust status as immediate relatives or the family-sponsored preference categories, and in certain employment-based categories after December 19, 1997, are required to submit Form I-864 signed by a sponsor.[181]

Aliens required to submit a Form I-864, and who are not otherwise exempt, are inadmissible on the public charge ground if they do not submit a sufficient Form I-864.[182]

1. Immediate Relatives and Family-Sponsored Preference Immigrants

In general, most aliens applying for an immigrant visa or adjustment of status based on a family relationship are required to submit Form I-864. The following table outlines categories of applicants by immigrant category who must submit Form I-864 unless otherwise exempt:

| **Immediate Relatives and Family-Sponsored Preference Immigrants** | |
|---|---|
| Immediate Relatives of U.S. Citizens | U.S. citizens' parents, spouses, and unmarried children under the age of 21, including most orphans and Hague Convention adoptees[183] |
| First Preference | Unmarried sons and daughters of U.S. citizens who are 21 years of age or older, including their unmarried children[184] |
| Second Preference | Spouses, children, and unmarried sons and daughters of LPRs, including their unmarried children[185] |
| Third Preference | Married sons and married daughters of U.S. citizens, including their spouses and unmarried children[186] |
| Fourth Preference | Brothers and sisters of adult U.S. citizens, including their spouses and unmarried minor children[187] |

[180] See INA 212(a)(4) and INA 213A. A sponsor may use Form I-864EZ if the sponsor is the Form I-130 petitioner, there is only one beneficiary on the Form I-130 petition, and the income the sponsor is using to qualify is based entirely on the sponsor's salary or pension and is shown on one or more Forms W-2 provided by the sponsor's employer(s) or former employer(s).
[181] See INA 212(a)(4) and INA 213A.
[182] See INA 212(a)(4).
[183] See INA 201(b)(2). Certain orphans that become U.S. citizens at time of adjustment of status under INA 320 are exempt from filing Form I-864.
[184] See INA 203(a)(1).
[185] See INA 203(a)(2).
[186] See INA 203(a)(3).
[187] See INA 203(a)(4).

All of these aliens are required to submit Form I-864, unless exempt from the requirement.

2. Certain Employment-Based Immigrants

In general, most aliens applying for an employment-based immigrant visa or adjustment of status are not required to file Form I-864.[188] Aliens seeking LPR status based on an employment-based petition are required to file Form I-864 if:

- The petitioner is a relative of the applicant;[189] or
- The petitioner is an entity[190] in which the applicant's relative has a significant ownership interest.[191]

These aliens are required to file Form I-864 unless an exception applies.

3. K Nonimmigrants

Principal K nonimmigrants[192] seeking adjustment of status must submit Form I-864.[193] This requirement also applies to an alien who seeks adjustment after having been admitted as the child of a principal K nonimmigrant.

Any applicant for adjustment of status based on a K nonimmigrant visa must submit a Form I-864 at the time of adjustment of status. Termination of the marriage between the K-1 beneficiary and the petitioner does not end the K-1 nonimmigrant's eligibility for adjustment.[194]

A former spouse can still be the sponsor who submits the Form I-864 for a K-1 and a K-2 nonimmigrant to adjust status. However, if the former spouse does not submit the Form I-864,

---

[188] Even though an affidavit of support is not required, an officer still makes a public charge inadmissibility determination when assessing the applicant's admissibility, unless the applicant is exempt from the public charge ground of inadmissibility.
[189] For employment-based cases, an affidavit of support is required only if the intending immigrant will work for a relative who is eligible to file a Form I-130 petition, on behalf of the intending immigrant. For purposes of the affidavit of support, a relative is defined as a U.S. citizen or LPR who is the intending immigrant's spouse, parent, child, adult son or daughter; or a U.S. citizen who is the intending immigrant's brother or sister. See 8 CFR 213a.1.
[190] An entity includes any petitioning for-profit entity such as a business or corporation.
[191] Owning 5 percent or more of an entity constitutes a significant ownership interest. See 8 CFR 213a.1.
[192] This includes a relative who is either a K-1 fiancé(e), a K-3 spouse, or a K-2 or K-4 child of fiancé(e) or spouse. See 8 CFR 213a.2(a)(2)(i)(A).
[193] See 8 CFR 213a.2(a)(2)(i)(A). K nonimmigrants include the fiancé(e)s of U.S. citizens and their accompanying children, spouse of a U.S. citizen and their accompanying minor children, and step-children of U.S. citizens. A child has to be under 21 years of age. See INA 101(b).
[194] See *Matter of Sesay*, 25 I&N Dec. 431 (BIA 2011).

or timely withdraws one already submitted, the K-1 and K-2 nonimmigrants are inadmissible based on the public charge ground unless an exception applies.[195]

4. Accompanying Spouse or Child

A spouse or child is considered to be accompanying a principal applicant if:

- The spouse or child applies for an immigrant visa or adjustment of status at the same time as the principal applicant; or
- The spouse or child applies for an immigrant visa or adjustment of status within 6 months after the date the principal applicant acquires LPR status.

If the principal applicant is required to have a Form I-864, then any accompanying spouse or child must also be included on that affidavit of support. To meet the requirement, the accompanying spouse or child must submit a photocopy of the principal applicant's Form I-864. A photocopy of the principal's supporting documentation,[196] however, is not required.

5. Following-to-Join Spouse or Child

When a spouse or a child of a principal applicant applies for an immigrant visa or adjustment of status 6 months or more after the principal applicant, the spouse or child is considered to be following-to-join the principal.

If the principal applicant is required to have a Form I-864, then the following-to-join spouse or child must also have a Form I-864. Each following-to-join spouse or child requires a Form I-864, independent of the principal applicant's Form I-864, at the time of adjustment of status or consular processing.[197]

6. T and U Nonimmigrants, VAWA Self-Petitioners, and Certain "Qualified Aliens" Subject to Affidavit of Support Under Section 213A of the INA Requirements

In general, INA 212(a)(4)(E) provides that the following provisions do not apply to "qualified alien" victims:

---

[195] See *Matter of Song*, 27 I&N Dec. 488, 492 (BIA 2018) (noting that the two exceptions to the requirement that the petitioner execute Form I-864 are when the applicant is or was married to an abusive spouse as set forth in INA 204(a)(1)(A)(iii) and INA 204(a)(1)(A)(iv), or when the petitioner died before the adjustment application was adjudicated and the applicant has a qualifying relative execute a Form I-864 as set forth in INA 213A).
[196] Supporting documentation such as federal income tax returns or transcripts, W-2, and employment verification.
[197] See 8 CFR 213a.2(g).

- Public charge inadmissibility, in general;[198]
- Minimum factors to be considered in the public charge inadmissibility determination;[199] and
- Inadmissibility for lack of sufficient affidavit of support for family-based immigrants.[200]

A "qualified alien" victim[201] includes:

- A Violence Against Women Act (VAWA) self-petitioner;
- An alien who is an applicant for, or is granted, U nonimmigrant status;[202] or
- A "qualified alien" as described in the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA),[203] such as an alien who has a pending application establishing prima facie eligibility for T nonimmigrant status or has been granted T nonimmigrant status.

When Congress created the current version of INA 212(a)(4)(E), it did not exempt qualified "alien victims" from the requirements under INA 212(a)(4)(D). INA 212(a)(4)(D) makes an alien inadmissible on public charge in employment-based cases,[204] unless the alien has a properly executed Form I-864 from the alien's relative if:[205]

- The alien's relative filed the employment-based petition; or
- The alien's relative has a significant ownership interest (of 5 percent or more) in the business or entity that filed the employment-based petition.

If the qualified "alien victim" files for adjustment of status under an employment-based category and his or her petitioning employer meets the above circumstances but does not submit a sufficient Form I-864,[206] then the alien is inadmissible on the public charge ground.

## C. Applicants Not Required to Submit Form I-864

---

[198] See INA 212(a)(4)(A).
[199] See INA 212(a)(4)(B).
[200] See INA 212(a)(4)(C).
[201] As outlined in INA 212(a)(4)(E).
[202] See INA 101(a)(15)(U).
[203] See Sections 431(b) and 431(c) of PRWORA, Pub. L. 104-193, 110 Stat. 2105, 2274 (August 22, 1996), as amended.
[204] See INA 203(b).
[205] Under INA 213A. See 8 CFR 213a.
[206] As required under INA 212(a)(4)(D) and INA 212(a)(4)(E) and as described in INA 213(a) and 8 CFR 213a.

Certain aliens are not statutorily required to submit a Form I-864. Other aliens, although generally required to file a Form I-864, may be exempt from this requirement. Being exempt from the Form I-864 requirement is different from being exempt from the public charge inadmissibility ground.

An officer still makes an inadmissibility determination for an alien who is exempt from the Form I-864 filing requirement unless the alien is also exempt from the public charge ground of inadmissibility.[207]

1. Applicants Exempt from Filing Form I-864

Some categories of adjustment of status applicants are exempt from the Form I-864 requirement but must request an exemption from the Form I-864 requirement when filing their Application to Register Permanent Residence or Adjust Status (Form I-485) to establish that a Form I-864 is not required.[208]

These categories include children of U.S. citizens who will automatically become U.S. citizens under the Child Citizenship Act of 2000 (CCA)[209] upon their admission to the United States, self-petitioning widows and widowers of U.S. citizens, and self-petitioning battered spouses and children. Aliens who have earned (or can be credited with) 40 quarters (credits) of coverage under the Social Security Act may also request an exemption from the Form I-864 requirement to establish that a Form I-864 is not required.[210]

*Certain Children of U.S. Citizens*

Under the CCA, children born abroad to U.S. citizens may automatically acquire U.S. citizenship if, before their 18th birthday, they are residing in the United States in the legal and physical custody of the U.S. citizen parent pursuant to an admission as an immigrant or adjustment of status to that of an LPR.[211] If qualified for automatic acquisition of citizenship, the child is exempt from the Form I-864 requirement.[212]

The CCA has specific provisions for alien children adopted by U.S. citizens. An alien child adopted by U.S. citizens, such as orphans or Hague Adoptees (IR-3 or IH-3 classifications)

---

[207] See Chapter 3, Applicability, Section C, Exemptions [8 USCIS-PM G.3(C)].
[208] See 8 CFR 213a.2(a)(1)(i)(B). As of December 10, 2024, applicants make a request for an exemption from the Form I-864 requirement using the Application to Register Permanent Residence or Adjust Status (Form I-485).
[209] See the Child Citizenship Act of 2000, Pub. L. 106-395 (October 30, 2000). See INA 320.
[210] See 8 CFR 213a.2(a)(1)(i)(B).
[211] See INA 320. See Volume 12, Citizenship and Naturalization, Part H, Children of U.S. Citizens, Chapter 4, Automatic Acquisition of Citizenship after Birth (INA 320) [12 USCIS-PM H.4].
[212] See INA 320. For more information on children acquiring citizenship under the Child Citizenship Act of 2000, see Volume 12, Citizenship and Naturalization, Part H, Children of U.S. Citizens, Chapter 4, Automatic Acquisition of Citizenship after Birth (INA 320) [12 USCIS-PM H.4].

automatically acquires U.S. citizenship if the child enters the United States before the child's 18th birthday and resides with the U.S. citizen parent.[213] Therefore, these children are exempt from the affidavit of support requirement.

However, this exception does not apply if:

- The child is "coming to be adopted" as an orphan or Hague Adoptee (IR-4 or IH-4 classification);[214] or
- The child is admitted as an immediate relative immigrant as the stepchild of a U.S. citizen.[215]

*Certain Self-Petitioning Immigrants*

The following self-petitioning immigrants are exempt from the Form I-864 requirement:

- An alien who has an approved Petition for Amerasian, Widow(er), or Special Immigrant (Form I-360) as a self-petitioning widow or widower;[216]
- An alien who has an approved Form I-360 as a battered spouse or child;[217] and
- An alien who has an approved Form I-360 as a VAWA self-petitioner.[218]

*Aliens Who Have Earned or Can be Credited with 40 Qualifying Quarters of Work*

An alien who has earned or can be credited with 40 qualifying quarters (credits) of work in the United States under the Social Security Act (SSA) is exempt from the requirement to file a Form I-864.[219] A quarter, as defined by the Social Security Administration, is a period of 3 calendar months ending on March 31, June 30, September 30, or December 31.[220]

An alien can acquire 40 qualifying quarters through any of the following circumstances:

---

[213] See the Child Citizenship Act of 2000, Pub. L. 106-395 (October 30, 2000).
[214] An IR-4 or IH-4 immigrant becomes a citizen under INA 320 only when the adoption is finalized after admission and all eligibility requirements are met. See the Before Your Child Immigrates to the United States webpage.
[215] The stepchild of a U.S. citizen does not acquire citizenship under INA 320. See *Acevedo v. Lynch*, 798 F.3d 1167, 1171 (9th Cir. 2015). See *Matter of Guzman-Gomez*, 24 I&N Dec. 824 (BIA 2009).
[216] See INA 212(a)(4)(C)(i)(I).
[217] See INA 212(a)(4)(C). See INA 212(a)(4)(E)(i). See Section 804 of the Violence Against Women Reauthorization Act of 2013 (VAWA 2013), Pub. L. 113-4, 127 Stat. 54, 111 (March 7, 2013).
[218] See INA 212(a)(4)(C). See INA 212(a)(4)(E)(i). See Section 804 of the Violence Against Women Reauthorization Act of 2013 (VAWA 2013), Pub. L. 113-4, 127 Stat. 54, 111 (March 7, 2013).
[219] Qualifying quarter, as defined under Title II of the Social Security Act, is specifically tied to earnings. For more information, see the Social Security Administration's website.
[220] See 42 U.S.C. 413.

- Any quarter during which the alien works in the United States, as long as the alien received the minimum income established by the Social Security Administration during the entire quarter;[221]
- Being credited with quarters the alien's spouse worked during the marriage;[222]
- Being credited with any quarters during which the alien was under 18 years of age and the alien's parent worked;[223] or
- A combination of the above.[224]

Since 1978, quarters are based on total wages and self-employment income earned during the year, regardless of the months during the year the actual work was performed.[225] An applicant can earn all four credits for the year in less time if the applicant earns the required income.

For example, in 2014, a person must have earned $1,200 in covered earnings to earn one Social Security or Medicare work credit and $4,800 to earn the maximum four credits for the year. A person who earned $4,800 in 2014 earned all four credits for the year regardless of how long that year it took to earn the income.

An officer does not need to calculate the alien's quarters. Aliens who claim they can be credited with sufficient quarters of coverage must submit official Social Security records to support the claim.[226]

2. Adjustment Applications Filed Before December 19, 1997

Any applicant for adjustment of status who filed a Form I-485 before December 19, 1997 is exempt from the requirement to file a Form I-864.[227] The exemption is dependent on the filing date and applies even if USCIS conducts the interview or adjudicates the case after that date.

---

[221] Credits are based on total wages and self-employment income during the year. For more information, see the Social Security Administration's website.
[222] See INA 213A(a)(3)(B). An alien cannot claim credit for any quarter worked by a spouse in which the spouse was receiving federal means-tested public benefits.
[223] See INA 213A(a)(3)(B). An alien cannot claim credit for any quarter worked by a parent in which the parent was receiving federal means-tested public benefits.
[224] However, quarters cannot be counted more than once even if there are multiple circumstances that apply to make a quarter qualifying.
[225] See 20 CFR 404.142.
[226] See 8 CFR 213a.2(a)(2)(ii)(C).
[227] See 8 CFR 213a.2(a)(2)(i) and 8 CFR 213a.2(a)(2)(ii)(B). See Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208 (September 30, 1996).

3. Other Categories of Applicants Not Required to File Form I-864

The following are categories of immigrants who are not required to file a Form I-864 with Form I-485, but who are subject to the public charge ground of inadmissibility:[228]

- Diversity immigrants;[229]
- Employment-based immigrants, unless the visa petition was filed by a relative or an entity in which the applicant's relative has a significant ownership interest, as described above;[230]
- Immigrant investors;[231]
- Diplomats or high-ranking officials unable to return home (Section 13 of the Act of September 11, 1957);[232]
- Certain entrants before January 1, 1982;[233]
- S nonimmigrants;[234]
- Religious workers;[235]
- Certain employees or former employees of the U.S. government abroad;[236]

[228] For some of these categories, although the applicants are subject to public charge under INA 212(a)(4), the employers generally would not be a relative of the alien or a for-profit entity and therefore the requirement for an affidavit of support under INA 212(a)(4)(D) is inapplicable.
[229] A winner of the diversity visa lottery does not need to file a petition with USCIS. Diversity visas are issued under INA 203(c) which do not fall under INA 212(a)(4)(C) or INA 212(a)(4)(D).
[230] See INA 212(a)(4). This exemption also includes Afghan and Iraqi Interpreters who received a special immigrant visa by filing a petition under INA 203(b)(4).
[231] See INA 203(b)(5).
[232] See Section 13 of Pub. L. 85-316 (September 11, 1957), as amended by Pub. L. 97-116 (December 29, 1981). See 8 CFR 245.3.
[233] See INA 245A(b)(1)(C)(i) and INA 245A(a)(4)(A). See INA 245A(d)(2)(B)(iii) for the special rule for determination of public charge for these applicants. Certain aged, blind, or disabled persons as defined in Section 1614(a)(1) of the Social Security Act, codified at 42 U.S.C. 1382c(a)(1), may apply for a waiver of inadmissibility due to public charge. See INA 245A(d)(2)(B)(ii).
[234] S nonimmigrants may file a waiver of the public charge ground of inadmissibility on Inter-Agency Alien Witness and Informant Record (Form I-854). See INA 245(j) and INA 101(a)(15)(S). See 8 CFR 214.2(t)(2) and 8 CFR 1245.11.
[235] Includes the following categories: SD-6 (ministers), SD-7 (spouses of SD-6), SD-8 (children of SD-6), SR-6 (religious workers), SR-7 (spouses of SR-6), and SR-8 (children of SR-6).
[236] See INA 101(a)(27)(D). See 22 CFR 42.32(d)(2). Includes the following categories: SE-6 (employees of U.S. government abroad, adjustments), SE-7 (spouses of SE-6), and SE-8 (children of SE-6). Note that this program does not have a specific sunset date and technically applicants could apply but should have already applied.

- Panama Canal Zone employees;[237]
- Certain physicians;[238]
- G-4 or NATO-6 employees and their family members;[239]
- Certain U.S. armed forces members (also known as the Six and Six program);[240]
- Certain broadcasters;[241] and
- Immigrants applying under the Amerasian Act of 1982.

The following are categories of immigrants not required to file a Form I-864 with Form I-485, and who are not subject to the public charge ground of inadmissibility:

- Refugees and asylees at time of adjustment of status to lawful permanent resident status;[242]
- Immigrants applying under the Amerasian Homecoming Act;[243]

---

[237] See INA 101(a)(27)(E), INA 101(a)(27)(F), and INA 101(a)(27)(G). See 22 CFR 42.32(d)(3). Includes the following categories: SF-6 (former employees of the Panama Canal Company or Canal Zone Government), SF-7 (spouses or children of SF-6), SG-6 (former U.S. government employees in the Panama Canal Zone), SG-7 (spouses or children of SG-6), SH-6 (former employees of the Panama Canal Company or Canal Zone Government, employed on April 1, 1979), and SH-7 (spouses or children of SH-6). Note that this program does not have a specific sunset date and technically applicants could apply but should have already applied.
[238] See INA 101(a)(27)(H) and INA 203(b)(4). Includes the following categories: SJ-6 (foreign medical school graduate who was licensed to practice in the United States on Jan. 9, 1978) and SJ-7 (spouses or children of SJ-6). Note that this program does not have a specific sunset date and technically applicants could apply but should have already applied.
[239] See INA 101(a)(27)(I) and INA 101(a)(27)(L). See 8 CFR 101.5. See 22 CFR 42.32(d)(5). See 22 CFR 41.24 and 22 CFR 41.25. Includes SN-6 (retired NATO-6 civilian employees), SN-7 (spouses of SN-6), SN-9 (certain surviving spouses of deceased NATO-6 civilian employees), and SN-8 (certain unmarried sons and daughters of SN-6).
[240] See INA 101(a)(27)(K). Includes the following categories: SM-6 (U.S. armed forces personnel, service (12 years) after October 1, 1991), SM-9 (U.S. armed forces personnel, service (12 years) by October 1991), SM-7 (spouses of SM-1 or SM-6), SM-0 (spouses or children of SM-4 or SM-9), and SM-8 (children of SM-1 or SM-6).
[241] See INA 101(a)(27)(M). See 8 CFR 204.13. Includes the following categories: BC-6 (broadcast (IBCG of BBG) employees), BC-7 (spouses of BC-1 or BC-6), and BC-8 (children of BC-6).
[242] See INA 209(c).
[243] See Section 584 of Pub. L. 100-202, 101 Stat. 1329, 1329-183 (December 22, 1987).

- Afghan and Iraqi Interpreters, or Afghan and Iraqi nationals employed by or on behalf of the U.S. Government;[244]
- Cuban and Haitian entrants applying for adjustment of status under section 202 of the Immigration Reform and Control Act of 1986;[245]
- Immigrants applying under the Cuban Adjustment Act;[246]
- Nicaraguans and other Central Americans applying under the Nicaraguan Adjustment and Central American Relief Act;[247]
- Haitians applying under the Haitian Refugee Immigration Fairness Act of 1998;[248]
- Lautenberg parolees;[249]
- Special immigrant juveniles;[250]
- Applicants for Registry;[251]
- Victims of human trafficking (T nonimmigrants);[252]

---

[244] See Section 1059(a)(2) of the National Defense Authorization Act for Fiscal Year 2006, Pub. L. 109-163, 119 Stat. 3136, 3444 (January 6, 2006), as amended, and Section 602(b) of the Afghan Allies Protection Act of 2009, Title VI of Pub. L. 111-8, 123 Stat. 524, 807 (March 11, 2009), as amended, and Section 1244(g) of the National Defense Authorization Act for Fiscal Year 2008, as amended, Pub. L. 110-181, 122 Stat. 3, 396 (January 28, 2008).
[245] See Section 202 of the Immigration Reform and Control Act of 1986 (IRCA), Pub. L. 99-603, 100 Stat. 3359, 3404 (November 6, 1986), as amended.
[246] See Cuban Adjustment Act, Pub. L. 89-732 (November 2, 1966), as amended.
[247] See Sections 202(a) and 203 of Pub. L. 105-100, 111 Stat. 2160, 2193 (November 19, 1997), as amended.
[248] See Section 902 of Pub. L. 105-277, 112 Stat. 2681, 2681-538 (October 21, 1998), as amended.
[249] See Section 599E of the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 1990, Pub. L. 101-167, 103 Stat. 1195, 1263 (November 21, 1989), as amended.
[250] See INA 245(h).
[251] Registry is a section of immigration law that enables certain aliens who have been present in the United States since January 1, 1972, the ability to apply for lawful permanent residence even if currently in the United States unlawfully. See INA 249. See 8 CFR 249.
[252] See INA 245(l). If the applicant is adjusting based on an employment-based petition where the petition is filed by either a qualifying relative, or an entity in which such relative has a significant ownership interest (5 percent or more), and the applicant, at both the time of filing and adjudication of the Form I-485, is still in valid T nonimmigrant status, the applicant is not subject to INA 212(a)(4) but is still required to file Form I-864. See 8 CFR 213a.2(b)(2).

- Victims of qualifying criminal activity (U nonimmigrants);[253]
- Haitians adjusting status under the Help Haiti Act of 2010;[254]
- Self-petitioners under the VAWA;[255]
- Certain "qualified aliens" under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA);[256]
- Applicants adjusting status who qualify for a benefit as surviving spouses, children, or parents of military members;[257]
- American Indians born in Canada;[258]
- Nationals of Vietnam, Cambodia, and Laos applying under the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 2001;[259]
- Polish or Hungarian Parolees;[260]
- Applicants adjusting under Liberian Refugee Immigration Fairness (LRIF);[261]

---

[253] See INA 101(a)(15)(U) and INA 212(a)(4)(E)(ii). See Section 804 of the Violence Against Women Reauthorization Act of 2013, Pub. L. 113-4 (March 7, 2013). If the applicant is adjusting based on an employment-based petition where the petition is filed by either a qualifying relative, or an entity in which such relative has a significant ownership interest (5 percent or more), and the applicant, at both the time of filing and adjudication of the Form I-485, is still in valid U nonimmigrant status, the applicant is not subject to INA 212(a)(4) but is still required to file Form I-864. See 8 CFR 213a.2(b)(2).
[254] See Help Haitian Adoptees Immediately to Integrate Act of 2010 (Help HAITI Act), Pub. L. 111-293 (December 9, 2010).
[255] See INA 212(a)(4)(E)(i).
[256] See INA 212(a)(4)(E)(iii). See Section 804 of the Violence Against Women Reauthorization Act of 2013, Pub. L. 113-4 (March 7, 2013). See Section 431(c) of Pub. L. 104-193, 110 Stat. 2105, 2274 (August 22, 1996). See 8 U.S.C. 1641(c).
[257] See Section 1703 of the National Defense Authorization Act, Pub. L. 108-136, 117 Stat. 1392, 1693 (November 24, 2003) (posthumous benefits to surviving spouses, children, and parents).
[258] See INA 289.
[259] See Section 586 of Pub. L. 106-429, 114 Stat. 1900, 1900A-57 (November 6, 2000) under 8 CFR 245.21.
[260] Includes certain Polish and Hungarian parolees who were paroled into the United States from November 1, 1989 to December 31, 1991. See Section 646(b) of IIRIRA, Division C of Pub. L. 104-208, 110 Stat. 3009-546, 3009-709 (September 30, 1996).
[261] See Section 7611 of the National Defense Authorization Act for Fiscal Year 2020, Pub. L. 116-92, 113 Stat. 1198, 2309 (December 20, 2019) (Liberian Refugee Immigration Fairness), later extended by Section 901 of Division O, Title IX of the Consolidated Appropriations Act of 2021, Pub. L. 116-260, 134 Stat. 1182, 2155 (December 27, 2020) (Adjustment of Status for Liberian Nationals Extension).

- Certain Syrian nationals;[262] and

- Any other categories of aliens exempt under any other law from the public charge ground of inadmissibility provisions under INA 212(a)(4).

**D. Consideration of Form I-864 as a Factor in the Totality of the Circumstances Analysis**

Under INA 212(a)(4)(B)(ii), USCIS officers "may also consider any affidavit of support under" INA 213A for the purpose of making public charge inadmissibility determinations. USCIS officers may[263] only consider a sufficient Form I-864, in the totality of the circumstances.[264]

Under the statute, the minimum income the sponsor must demonstrate for a Form I-864 to be deemed sufficient is generally 125 percent of the FPG[265] based on the sponsor's household size.[266] Officers should carefully review the Form I-864 to ensure that the sponsor has included in the household size:

- Any person for whom he or she has claimed on his or her Federal income tax return for the most recent tax year, whether or not such persons are living with him or her;

- All aliens that have already sponsored under any other Form I-864 for whom his or her support obligation has not terminated; and

- Any aliens to be sponsored under the current Form I-864.[267]

If all sponsors provided the statutorily required minimum financial support to the aliens they are obligated to sponsor as required by statute and the legally binding Form I-864, the sponsored aliens would be less likely to turn to the government first for financial support.[268] Additionally, Federal and State deeming provisions should reduce the likelihood that a

---

[262] See Pub. L. 106-378 (October 27, 2000).
[263] USCIS officers should generally consider a sufficient Form I-864. A USCIS officer should only decide, in his or her discretion, to not consider a sufficient Form I-864 with supervisory concurrence. If the officer finds the alien inadmissible under INA 212(a)(4) in such a case, he or she should articulate the reason(s) why he or she decided to not consider the sufficient Form I-864 in a Notice of Intent to Deny (NOID) or denial notice, as applicable.
[264] Aliens required to submit a Form I-864, and who are not otherwise exempt, are inadmissible on the public charge ground if they do not submit a sufficient Form I-864. In such cases, USCIS does not engage in a totality of the circumstances analysis. If an alien submits more than one Form I-864, only those that meet the requirements of INA 213A are relevant to the public charge inadmissibility determination.
[265] See INA 213A. See 8 CFR 213a.
[266] See INA 213A(a)(1)(A). A sponsor who is on active duty (other than active duty for training) in the U.S. armed forces and who is petitioning for a spouse or child only has to demonstrate the means to maintain an annual income equal to at least 100 percent of the FPG. See 8 CFR 213a.2(c)(2).
[267] See 8 CFR 213a.1.
[268] See 8 U.S.C. 1601(5).

sponsored alien would be eligible for a means-tested benefit.[269] That was the intent of Congress in establishing the legally-binding affidavit of support requirement.[270]

However, sponsors have been known to fail to fulfill their obligations due to financial distress or unwillingness to support the alien, as demonstrated by suits filed by sponsored aliens to enforce the statutory requirement that sponsors provide financial support to the sponsored aliens at the level required by statute for the period the obligation is in effect.[271] USCIS also encounters sponsored aliens who have received means-tested public benefits while their sponsors' support obligations are still in effect.[272]

Therefore, when USCIS officers decide in their discretion to consider a sufficient Form I-864 when making a public charge inadmissibility determination, they should give that sufficient Form I-864 weight within the totality of the circumstances analysis based on the likelihood, in their opinion, that the sponsor will actually provide the statutorily-required amount of financial support to the sponsored alien.

In assessing the likelihood that a sponsor will actually provide the statutorily-required amount of financial support to the sponsored alien, officers may consider:

- The sponsor's relationship to the sponsored alien, including whether the sponsor lives with or intends to live with the sponsored alien;
- Whether the sponsor has provided the statutorily-required amount of support to any alien(s) he or she has sponsored in the past or is currently sponsoring;
- The degree to which the sponsor's annual income, assets, and resources exceeds the minimum level required by the statute for him or her to serve as a sponsor;
- Whether the sponsor is currently receiving means-tested public benefits;
- Whether the sponsor has received a fee waiver from USCIS for an immigration benefit request; and

---

[269] See Section 564(f) of IIRIRA, Division C of Pub. L. 104-208, 110 Stat. 3009-546, 3009-684 (September 30, 1996). Under INA 291, the sponsor's income and resources, as well as the income and resources of the sponsor's spouse, is counted as the sponsored immigrant's income for the purposes of determining eligibility for any Federal means-tested public benefits.
[270] See 8 U.S.C. 1601(5).
[271] See *Erler v. Erler*, 824 F.3d 1173 (9th Cir. 2016). See *Belevich v. Thomas*, 17 F.4th 1048 (11th Cir. 2021). See *Wenfang Liu v. Mund*, 686 F.3d 418 (7th Cir. 2012).
[272] USCIS acknowledges that an alien can be eligible for some means-tested public benefits even if the sponsor has fulfilled his or her obligation and maintained the sponsored immigrant at an annual income that is not less than 125 percent of the FPG. This is because many means-tested public benefits have income-based eligibility thresholds higher than 125 percent of the FPG. Sponsors are still required to reimburse the government for the costs of the benefit provided in such cases. See INA 213A(b).

- The sponsor's financial history, including a history of bankruptcy or failure to meet his or her financial responsibilities.

A sufficient Form I-864 does not, alone, result in a finding that an alien is not inadmissible under the public charge ground due to the statute's requirement to consider the statutory minimum factors and officers' consideration of all relevant factors, circumstances, information, and evidence in the record.[273]

## Chapter 7. Consideration of Any Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits

The public charge inadmissibility determination is prospective, based on the officer's opinion as to whether the alien is likely at any time in the future to become a public charge.[274] Under the statute, every public charge inadmissibility determination must include at a minimum the consideration of the alien's age; health; family status; assets, resources, and financial status; and education and skills. The officer may consider a sufficient Affidavit of Support Under Section 213A of the INA (Form I-864) (when required).[275]

Officers should also consider, in the totality of the circumstances, all information and evidence in the record that is relevant to assessing an alien's likelihood at any time of becoming a public charge. Such relevant information and evidence includes any showing that the alien has in the past received or is currently receiving any means-tested public benefits, if such benefits were received on or after September 18, 2026. With respect to means-tested public benefits received before September 18, 2026, officers will only consider public cash assistance for income maintenance and long-term institutionalization at government expense.[276]

Additionally, officers will consider any evidence in the record pertaining to whether the alien has applied for any means-tested public benefits and/or whether the alien has been approved or certified to receive any means-tested public benefits on or after September 18, 2026. Officers will not consider any information in the record that the alien applied for, was certified or approved to receive any means-tested public benefits before September 18, 2026. However, where the officers encounter evidence that the alien has applied for or been approved or certified to receive any means-tested public benefits for a period that extends beyond September 18, 2026, officers would consider the application, certification, and receipt of such benefits in the totality of the circumstances that occurs on or after September 18, 2026, unless the alien provides evidence of disenrollment from such benefits or that he or she withdrew such application or notified the relevant agencies he or she no longer wanted to receive the benefits.

[273] See INA 212(a)(4)(B).
[274] See INA 212(a)(4)(A).
[275] See Chapter 6, Affidavit of Support Under Section 213A of the INA [8 USCIS-PM G.6].
[276] See 91 FR 45324 (Jul. 20, 2026) (final rule).

While the alien's application, approval, or certification to receive any means-tested public benefits does not constitute receipt of such benefits, the fact that an alien has applied for means-tested public benefits or has been determined to be eligible for means-tested public benefits by a benefit granting agency and approved or certified to receive those benefits could indicate the alien's likelihood in the future of needing to receive such benefits. Moreover, the fact that an alien has been approved or certified to receive means-tested public benefits is relevant to assessing an alien's self-sufficiency and overall financial status. Therefore, officers should consider the alien's applications to receive, and approvals and certifications to receive, any means-tested public benefits in determining the alien's likelihood at any time to become a public charge.

In considering an applicant's current and/or past applications, approvals or certifications to receive, and receipt of means-tested public benefits in the totality of the circumstances, officers will consider the amount, duration, and recency of means-tested public benefits the alien actually received.[277] Additionally, officers will consider any evidence the alien presents as to whether that underlying basis for applying for or receiving the benefits would continue, as well as any evidence the alien submits that he or she has disenrolled from the means-tested public benefit program or has requested withdrawal or disenrollment from the means-tested public benefit program.

The amount and frequency of benefits are also relevant where there is evidence that the alien was approved or certified to receive benefits in the future, or has applied to receive such benefits and there is no evidence in the record that the alien has withdrawn such application, or requested to cancel the approval/certification of such benefits, as the amount and frequency of receipt will have a bearing (particularly in the case of approval or certification) on whether the alien will be dependent on means-tested public benefits in the future.

USCIS officers should also consider the nature of the means-tested public benefit along with these other surrounding circumstances when determining what weight to give an alien's current and/or past applications, approvals, or certifications to receive, or receipt of, that benefit.[278] In considering the purpose of the benefit, officers should consider that Congress in enacting PRWORA established that certain Federal public benefits would have exceptions from the immigration-status-related ineligibility provisions of that law (but not from the public charge ground of inadmissibility).

- Section 8 U.S.C. 1611(b) lays out exceptions from the general eligibility limitation for some Federal public benefits;

---

[277] For more information on the totality of the circumstances assessment, see Chapter 4, Prospective Determination Based on the Totality of the Circumstances [8 USCIS-PM G.4].
[278] See 90 FR 52168, 52188 (Nov. 19, 2025). See 91 FR 45324 (Jul. 20, 2026) (final rule).

- Section 8 U.S.C. 1613(c) creates exceptions from that section of law for certain Federal means-tested public benefits; and

- Section 8 U.S.C. 1615(a-b) creates exceptions for the Federal Child Nutrition Programs authorized under the National School Lunch Act and the Child Nutrition Act of 1966.

In addition, under their authority to administer Federal public benefits programs, agencies have also clarified for the public which of the benefits they administer fall within the definition of "Federal public benefit" under 8 U.S.C. 1611(c) for the purposes of the immigration-related eligibility provisions of PRWORA.[279]

To be clear, exceptions for the purpose of PRWORA implementation do not create exceptions for the purpose of the public charge ground of inadmissibility. If an alien applies for, is approved or certified to receive, or receives any means-tested public benefit, officers will consider that in the totality of the circumstances. However, when determining what weight to give that information in the totality of the circumstances, officers should consider the nature of the benefit and why Congress or the benefit-providing agencies determined that they should be provided to all without limitations based on immigration status.

Officers will also consider any evidence the alien presents regarding the underlying basis for the applications, approvals, certification, or receipt of these means-tested public benefits, such as that the alien received the benefits because he or she, while not a refugee, was eligible for resettlement assistance, entitlement programs, and other benefits available to refugees,[280] or that the alien received the means-tested public benefit while present in the United States while in a category that is exempt from the public charge ground of inadmissibility.

For example, if the alien presents evidence that he or she received means-tested public benefits while present in the United States as an asylee, who is exempt from the public charge ground of inadmissibility, the officer will consider that fact in the totality of the circumstances. Similarly, if this alien presents evidence that he or she is no longer an asylee and therefore is no longer eligible for the benefits he or she had previously received while an asylee, USCIS would consider this fact in the totality of the circumstances.

Current and/or past receipt of means-tested public benefits alone, however, is not a sufficient basis to determine that an alien is likely at any time to become a public charge.[281] Additionally, past applications to receive means-tested public benefits and past approvals or certifications to

---

[279] See, for example, 63 FR 41658 (Aug. 4, 1998), 65 FR 70134 (Nov. 21, 2000), Dept. of Education Dear Colleagues Letter Regarding PRWORA (Nov. 19, 1997), and 63 FR 41662 (Aug. 4, 1998).
[280] Refugees as admitted under INA 207. Refugee services as described under INA 412.
[281] See *Matter of Perez*, 15 I&N Dec. 136, 137 (BIA 1974) ("The fact that an alien has been on welfare does not, by itself, establish that he or she is likely to become a public charge."). See *Matter of Martinez-Lopez*, 10 I&N Dec. 409, 421-22 (BIA 1962) ("It has been the subject of extensive judicial interpretation. The general tenor of the holdings is that the statute requires more than a showing of a possibility that the alien will require public support.").

past applications to receive means-tested public benefits and past approvals or certifications to receive means-tested public benefits are not, alone, a sufficient basis to determine that an alien is likely at any time to become a public charge. Similarly, an alien may be found by an officer to be likely at any time to become a public charge even if the alien has never received means-tested public benefits. This is just one piece of information that officers consider in the totality of the circumstances and such receipt, or lack thereof, is insufficient on its own to establish that an alien is or is not inadmissible under section 212(a)(4) of the Immigration and Nationality Act (INA). The public charge inadmissibility determination is always prospective, and officers are to consider the five statutory factors, may consider a sufficient affidavit of support (if required), and all other relevant evidence and information in the record in the totality of the circumstances.

*Means-tested Public Benefits Received by Aliens During or After Pregnancy*

Aliens who are pregnant or were recently pregnant are not exempt from the public charge ground of inadmissibility based on that pregnancy. If an alien receives means-tested public benefits while pregnant or recently pregnant, officers should consider that receipt in the totality of the circumstances.

Notwithstanding, an officer may take into account the temporary nature of the alien's pregnancy when assessing whether the alien is likely at any time to become a public charge. This includes consideration of the potentially temporary nature of postpartum conditions and how these circumstances may have impacted the alien's receipt of means-tested public benefits in the totality of the circumstances.

## Chapter 8. <u>Other Relevant Factors</u>

In addition to the statutory minimum factors discussed in Chapter 5 and the factors discussed in Chapters 6 and 7, officers should also consider, in the totality of the circumstances, any other evidence in the record that is relevant to assessing the alien's likelihood at any time of becoming a public charge.

### A. Consideration of an Alien's Willingness and Ability to Work and Employment

While many aliens may demonstrate their ability to work and earn income to meet their needs through their employment history or offers of future employment and associated salaries or wages, some aliens may have periods of unemployment. An officer may consider an alien's employment history in the context of assessing the alien's education and skills and assets, resources, and financial status. Like other factors and considerations, the fact that an alien is currently unemployed or has experienced a period of unemployment, by itself, is insufficient to conclude that an alien will become a public charge in the future. An officer may find it helpful to examine the arc of the alien's education, training, employment history, and employment prospects to determine whether the alien has the necessary skills to reenter the workforce in

the near term and earn income sufficient to meet his or her basic needs. An officer may request evidence of prospective employment, including job offers with estimated salary or wages.[282]

### B. USCIS Fee Waivers

While USCIS does not collect information about previously received fee waivers on Application to Register Permanent Residence or Adjust Status (Form I-485), an officer may consider the request, receipt, or approval of an immigration benefit fee waiver in the totality of the circumstances.[283] It is possible that some aliens applying for adjustment of status may have previously requested and received a fee waiver for a prior immigration benefit. In such a case, the officer considers this evidence in the totality of circumstances. The officer may account for when the fee waiver was granted, the amount of the fee waiver, and the grounds of eligibility for the fee waiver. If the fee waiver was received more recently, it is likely to be more relevant to the public charge inadmissibility determination.

As a general matter, the most common eligibility criteria for a fee waiver are receipt of a means-tested benefit or household income below 150 percent of the Federal Poverty Guidelines (FPG), both of which would already be evident in the alien's responses to questions on Form I-485. If the alien requested the fee waiver on the basis of financial hardship, then the officer could request additional evidence on the nature and recency of such hardship in the totality of the circumstances.

### C. Fee Exemptions

An officer may not consider a fee exemption as part of the determination of whether an alien is likely to become a public charge. A fee exemption has no bearing on whether an alien would likely become a public charge in the future. Fee exemptions are not synonymous with fee waivers. Fee exemptions are not generally requested by an alien based on an inability to pay. Instead, fee exemptions are approved by USCIS for specific forms or nonimmigrant or immigrant categories based on statutory authority, regulations, or agency policy.

### D. Alien is a Child

The statute does not exempt children from the public charge ground of inadmissibility.[284] When making a public charge inadmissibility determination for aliens who are children, USCIS must

---

[282] See *Matter of Martinez-Lopez*, 10 I&N Dec. 409, 421 (BIA 1962; Att'y Gen. 1962) (Considering whether the alien had an employment offer in making a public charge inadmissibility determination). For more information about the consideration of an alien's totality of the circumstances, see Chapter 4, Prospective Determination Based on the Totality of the Circumstances [8 USCIS-PM G.4].

[283] Officers should only consider such fee waivers in the totality of the circumstances for adjustment of status applications filed on or after February 24, 2020. Prior to that date, the public was not on notice that fee waivers might be considered in a public charge inadmissibility determination.

[284] See INA 212(a)(4)(A).

consider all of the required factors, may consider a sufficient Form I-864, and should consider all other relevant factors and information, including the current and/or past receipt of means-tested public benefits. As with any alien, USCIS considers the recency, amount, and duration of receipt of such benefits, the nature of the benefit, the reason for receipt, and whether that reason is likely to persist, when determining whether an alien child is likely at any time to become a public charge.

In the rare case that an alien child has received or is receiving means-tested public benefits, an officer may consider the financial contributions of a child's household and the circumstances that resulted in the child's receipt of such public benefits and the likelihood that those circumstances would continue in the future. The officer should also take into account whether the benefits received were due to temporary parental unemployment or other temporary circumstances.

**E. Alien is a Primary Caregiver**

Certain aliens may claim that they serve as primary caregivers within their households. Officers should consider an alien who is 18 years of age or older who has significant responsibility for actively caring for and managing the wellbeing of a child or an elderly, ill, or disabled person in the alien's household to be a primary caregiver. Due to these responsibilities, some of these aliens may not be employed outside of the home. They also may lack current or recent employment history due to their unpaid role in their household. When considering whether an alien is serving as a primary caregiver, officers should generally find that only one person in a household can serve as the primary caregiver for an individual. If multiple caregivers share the care of a person in a given household, the officer should consider whether the alien has established that he or she has significant caregiving responsibilities that impact the alien's ability to be employed full-time.

An officer may positively consider household contributions through primary caretaking responsibilities in the totality of the circumstances, because the officer may determine that the alien's primary caretaking responsibilities outweigh any deficiencies related to the alien's education and skills and lack of employment history or current employment.

In determining whether the alien's primary responsibilities are a positive factor in the totality of the circumstances, an officer could consider:

- Whether the person receiving the alien's care is a member of the alien's household;
- Whether other members of the household also claim to be the primary caregiver;
- Whether the person being cared for lives in the same residence as the alien;
- The age of the person being cared for; and

- The medical condition, including any disabilities, of the person being cared for.

Examples where an officer may attribute positive consideration of primary caregiving include:

- A parent who stays at home to care for a newborn child or child in school; and
- An adult son or daughter staying at home to care for his or her elderly parent.

Generally, a parent who has joint custody should have primary physical custody of the child in order to be considered a primary caregiver. If an alien is caring for an elderly parent, the alien may choose to provide evidence such as a certification from a doctor indicating the parent's medical condition or copies of the parent's medical record, and documentation of legal guardianship over the parent to help inform the officer's inadmissibility determination.

An officer may consider other cases less favorably. For instance, an alien may indicate that he or she is the primary caregiver for his or her elderly in-laws, but the elderly parent is not living in the same residence as the alien and the alien's spouse (their son or daughter). Instead, the alien is financially providing for the elderly parent's room and board at a nursing home. In such a case, the alien's responsibilities are financial and not something that would occupy a significant amount of their time or preclude the alien from being employed. In addition, there may be cases where two members of the same household claim to be the primary caregiver. If there is no documentation that establishes that the alien is the primary caregiver, then the officer should give less weight to the alien's claims in the totality of the circumstances analysis.

**F. Alien is an Active-duty Servicemember or the Spouse or Child(ren) of an Active-duty Service member**

Aliens must generally be LPRs to join the United States military and so active-duty U.S. servicemembers are unlikely to apply for adjustment of status.[285] However, if they do apply for adjustment of status, they are not exempt from the public charge ground of inadmissibility based on their service.[286]

---

[285] See the USA.gov Join the Military webpage. However, under the Military Accessions Vital to National Interest (MAVNI) program, certain aliens who were asylees, refugees, temporary protected status beneficiaries, deferred action beneficiaries, or nonimmigrants in certain categories could enlist. The then-U.S. Department of Defense ceased recruiting service members through the MAVNI program in 2016. While not relevant to the adjudication of adjustment of status applications by USCIS officers, LPRs who are active-duty service members may be subject to the public charge ground of inadmissibility when returning to the United States. See Chapter 3, Applicability, Section A, Applicants for Admission, Subsection 3, Certain Lawful Permanent Residents Returning to the United States [8 USCIS-PM G.3(A)(3)].

[286] See INA 212(a)(4)(A).

As a consequence of the unique compensation and tax structure afforded by Congress for service members, it is common for active-duty servicemembers, as well as their spouses and children, to receive certain means-tested public benefits. If an active-duty servicemember, their spouse, or their child(ren) has received any means-tested public benefits, the officer may consider any evidence the alien provides regarding circumstances surrounding the duration, amount, and recency of receipt, and how the alien's receipt may have been impacted by such military service. The officer may also consider any evidence the alien submits relating to skills he or she obtained through his or her military service.

When considering the receipt of any means-tested public benefits by an active-duty U.S. servicemember, their spouse, or their child(ren), officers may also consider, in the totality of the circumstances, the sacrifices of members of the armed forces, which are vital to the public's safety and security. Officers may also consider that many of the aliens who enlist in the military are early in their careers, and therefore, consistent with statutory pay authorities, earn relatively low salaries that are supplemented by certain allowances and tax advantages. These salaries may increase over time and in turn decrease the likelihood that these aliens may require means-tested public benefits in the future.

**G. Alien is a Victim of Crime, Domestic Violence, or Other Adverse Circumstances**

An alien who has experienced crime, domestic violence, or other adverse circumstances may have received means-tested public benefits as a direct or indirect result of those circumstances.[287] An officer may consider information or evidence that such an alien chooses to provide relating to the alien's temporary circumstances that may be relevant to a public charge inadmissibility determination. The reasons why an alien received means-tested public benefits in the past, including these adverse circumstances, are relevant to an officer's determination as to whether the alien is likely to become a public charge in the future.

**Chapter 9. Waivers of Inadmissibility Based on Public Charge Ground**

The availability of a discretionary waiver of the public charge ground of inadmissibility depends on the immigration benefit the alien is seeking.

**A. Immigrant Waivers**

In general, the public charge ground of inadmissibility cannot be waived for aliens seeking lawful permanent resident (LPR) status. However, the following aliens seeking LPR status may overcome the public charge ground of inadmissibility if they apply for and USCIS grants a waiver of the public charge ground of inadmissibility:

---

[287] Some of these victims may be exempt from the public charge ground of inadmissibility, depending on their circumstances. For a list of those exempted from the public charge ground of inadmissibility, see Chapter 3, Applicability [8 USCIS-PM G.3].

- Aliens applying for adjustment of status on account of their witness or informant status.[288]

- Certain aged, blind, or disabled aliens applying for adjustment of status under the legalization program.[289]

**B. Nonimmigrant Waivers**

The following nonimmigrants seeking admission may overcome the public charge ground of inadmissibility if the alien applies for and is granted a discretionary waiver of the public charge ground of inadmissibility.

*Nonimmigrants seeking admission to the United States*

An alien applying for a nonimmigrant visa or seeking temporary admission as a nonimmigrant may seek a temporary waiver of inadmissibility.[290] This application for a temporary waiver of inadmissibility is adjudicated by U.S. Customs and Border Protection (CBP) as part of either an alien's application for admission at a port of entry or an alien's application for a nonimmigrant visa at a U.S. consulate or embassy.[291] If granted, the waiver generally only applies to the nonimmigrant classification for which it was granted.

*Applicants for admission as nonimmigrant witnesses or informants (S nonimmigrants)*[292]

A Law Enforcement Agency (LEA) makes a request on behalf of an alien when the LEA seeks to classify the alien as a nonimmigrant witness or informant. The LEA submits the request on the Inter-Agency Alien Witness and Informant Record (Form I-854A) and includes any request for a waiver of a ground of inadmissibility. The waiver is discretionary, and USCIS may grant the waiver if USCIS considers it to be in the national interest to do so.

**Chapter 10. Adjudicating Public Charge Inadmissibility for Adjustment of Status Applications**

---

[288] See INA 245(j). See 8 CFR 245.11. According to 8 CFR 245.11(c), grounds of inadmissibility that were waived at the time of obtaining S nonimmigrant status are considered waived for purposes of the adjustment.

[289] See INA 245A and INA 245A(d)(2)(B). Aged, blind, or disabled applicants, as defined in Section 1614(a)(1) of the Social Security Act, as codified in 42 U.S.C. 1382c(a)(1), for adjustment of status under INA 245A may apply for a waiver of the public charge ground of inadmissibility. The waiver is filed on the Application for Waiver of Grounds of Inadmissibility Under Sections 245A or 210 of the Immigration and Nationality Act (Form I-690) according to the form's instructions.

[290] See INA 212(d)(3)(A).

[291] For more information on applying for a waiver as a nonimmigrant under INA 212(d)(3), visit CBP.gov.

[292] See INA 101(a)(15)(S). See 8 CFR 212.23(c)(1). See INA 212(d)(1). See 8 CFR 214.2(t)(5)(i). See 8 CFR 212.4(j)(1). The waiver is granted by USCIS.

An alien seeking adjustment of status always bears the burden of proof to establish admissibility, including, where applicable, that the alien is not inadmissible under the public charge ground.[293] The burden never shifts to USCIS during the adjudication process.[294] After considering all relevant factors, circumstances, and evidence in the totality of the circumstances, the officer determines whether the alien has met his or her burden of proof in establishing that he or she is not likely at any time to become a public charge.[295]

### A. Evidence in the Record

In making a public charge inadmissibility determination, a USCIS officer considers all evidence relevant to the statutory minimum factors. The officer may consider a sufficient Affidavit of Support Under Section 213A of the INA (Form I-864) (when required)[296] and any other factor in the alien's case that is relevant to determining whether the alien is likely at any time to become a public charge.[297] Among other factors that an officer should consider, any applications, approvals or certifications to receive, or receipt of means-tested public benefits after September 18, 2026,[298] by the alien will be highly relevant.[299]

Evidence that appears or could appear in the record includes:

- The alien's employment history (as stated on the Application to Register Permanent Residence or Adjust Status (Form I-485);[300]

- Information relating to the statutory minimum factors and receipt of means-tested public benefits collected on Form I-485;

- Information related to an alien's health as reported on Report of Immigration Medical Examination and Vaccination Record (Form I-693) or DOS immigration medical examination report, if required;

- A sufficient Form I-864, if required;

---

[293] See INA 291. See *Matter of Bett*, 26 I&N Dec. 437 (BIA 2014).
[294] See *Matter of Arthur*, 16 I&N Dec. 558 (BIA 1978).
[295] See INA 212(a)(4).
[296] See Chapter 6, Affidavit of Support Under Section 213A of the INA [8 USCIS-PM G.6].
[297] See *Matter of Vindman*, 16 I&N Dec. 131, 132 (BIA 1977) ("The elements constituting likelihood of an alien becoming a public charge are varied. They are not defined by statute, but rather are determined administratively upon consideration of *all the factors bearing on the alien's ability or potential ability to be self-supporting*.") (emphasis added).
[298] See Chapter 2, Key Concepts, Section B, Means-Tested Public Benefits [8 USCIS-PM G.2(B)].
[299] See Chapter 7, Consideration of Any Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits [8 USCIS-PM G.7].
[300] See 87 FR 55472, 55497 (Sept. 9, 2022) (final rule).

- Information concerning the alien's applications for, approvals or certifications to receive, and receipt of means-tested public benefits provided by benefit-granting agencies;[301] and

- Any other relevant information.[302]

**B. Totality of the Circumstances Scenarios**

Below are hypothetical scenarios that are intended to help illustrate an officer's review of an alien's factors, circumstances, and evidence, in the totality of the circumstances. These hypothetical scenarios are not meant to be exhaustive or all-inclusive with respect to the scenarios that may give rise to a public charge inadmissibility finding. They are intended to illustrate the adjudicative process and do not dictate the outcome of any particular case.

Although a USCIS officer may encounter similar fact patterns as those presented in the scenarios below, an officer may reasonably reach a different conclusion than what is described below when making a totality of the individual's circumstances determination in an individual case. Public charge inadmissibility determinations are made in the totality of circumstances for each individual case, on a case-by-case basis.

Additionally, for purposes of the following hypothetical scenarios, it is assumed that:

- The applicant is applying for adjustment of status before USCIS and is otherwise eligible for the benefit;

- The applicant submitted the required forms and all other required supporting evidence; and

- The facts asserted are supported by evidence in the record.

*Scenario 1*

The alien is a single, 25-year-old recent college graduate living with her parent, and she is currently unemployed. Her parent is currently financially supporting the alien, and they are the only two individuals in the alien's household. The household's income and net worth (assets minus liabilities) are relatively low. A sufficient Form I-864 was submitted on behalf of the alien. There is no information in the record to show that the alien is receiving or has received means-tested public benefits or has any Class A or Class B medical conditions.

---

[301] See Chapter 7, Consideration of Any Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits [8 USCIS-PM G.7].
[302] See Chapter 8, Other Relevant Factors [8 USCIS-PM G.8].

The officer evaluates each of the factors and concludes that the factors in their totality do not indicate that the alien is likely at any time to become a public charge. The officer finds that the alien's record of current unemployment does not outweigh the other factors and considerations (for example the applicant's education, age, health). As a result, the officer determines that the alien has met her burden of demonstrating she is not inadmissible under section 212(a)(4)(A) of the Immigration and Nationality Act (INA).

*Scenario 2*[303]

The alien, who has a high school-level education, is a single 35-year-old with no evidence of any Class A or Class B medical conditions. The alien has one 10-year-old child who lives with the alien. The alien is currently employed with moderate household income and relatively low household net worth. A sufficient Form I-864 was submitted on behalf of the alien. There is evidence in the record that the alien received a small amount of means-tested public benefits for a period of 1 year, about 10 years before applying for adjustment of status.

The officer evaluates each of the factors in the totality of the circumstances, including the recency, amount, and duration of the alien's past receipt of means-tested public benefits. The officer considers the relatively small value of benefits received by the alien and the reason for that receipt, which was temporary unemployment associated with the birth of her child. The officer determines that the alien, who is of working age, is currently employed, in good health, and received means-tested public benefits for a temporary period 10 years ago, has demonstrated that she is not likely at any time to become a public charge. As a result, the officer finds that the alien has met her burden of demonstrating that she is not inadmissible under INA 212(a)(4)(A).

*Scenario 3*

The alien is a single 55-year-old, living alone, with no evidence of a Class A or Class B medical condition. The alien is an unemployed college graduate who has not been employed for over a decade. The alien has a low income based solely on the receipt of certain means-tested public benefits and low household net worth. A sufficient Form I-864 was submitted on behalf of the alien, who has been receiving public cash assistance for over 5 years.

The officer evaluates each of the factors in their totality and determines that the combination of factors shows that the alien is likely at any time to become a public charge. The officer bases their determination on the fact that the alien is currently receiving public cash assistance, has received this benefit for an extended period of time, has not worked in over ten years, and has demonstrated no prospect of obtaining employment or generating another source of income.

---

[303] For purposes of this scenario, USCIS is assuming that the alien filed the application and received means-tested public benefits after September 18, 2026, and after the 2022 Final Rule and regulations have been rescinded.

As a result, even though the alien has a college degree, is of working age, is in good health, and has a sufficient Form I-864, the officer finds that the alien has not met his burden of proof and determines that the alien is inadmissible under INA 212(a)(4).

*Scenario 4*

The alien is a 70-year-old who is divorced, no longer in the workforce, and living with her U.S. citizen adult son. The alien's immigration medical examination indicates that the alien has a Class B medical condition that requires extensive medical care and prevents the alien from reentering the workforce. The alien has limited retirement savings, assets, and resources and has no health insurance. The alien has not received any means-tested public benefits. A sufficient Form I-864 was submitted on behalf of the alien by her son. The alien's adult son also has 3 other members of the household for whom he is financially responsible in addition to the alien.

The officer evaluates these factors in their totality and determines that the alien is likely at any time to become a public charge. Even though the alien has a sufficient Form I-864 and the officer is satisfied that the alien's adult son is able to provide adequate food and housing, there is no evidence in the record that the alien has access to sufficient financial resources to cover the medical expenses connected to her Class B medical condition considering the size of the household, the needs of other household members, and the fact that the alien can no longer work. The officer concludes that the alien is likely to become dependent on the government for medical care and finds that the alien is inadmissible under INA 212(a)(4).

*Scenario 5*

A 30-year-old alien is married to a U.S. citizen. They live together with their two U.S. citizen children. The alien has no medical conditions, has a high-school level education, and is currently employed part-time at a job which requires no certifications or higher education. The petitioner submitted a Form I-864 with the alien's application for adjustment of status. While the petitioner satisfied the income requirements at the time she submitted the Form I-864, by the time an officer reviews the adjustment of status application, the petitioner's employer closed their business and the petitioner is unemployed. The petitioner received unemployment insurance benefits until those expired and then applied for and has begun to receive TANF.

While the petitioner was employed, the household income was slightly above federal poverty guidelines, but now the total household income is below federal poverty guidelines. The alien and petitioner rent their apartment, and they have minimal savings. They receive some financial support from the petitioner's parents in the form of clothing, babysitting, and small cash contributions for the children. Since the petitioner lost their job, the petitioner and children also receive SNAP benefits and Medicaid. There is no evidence that the alien has health insurance. Because the petitioner can no longer maintain the income required of a Form I-864 sponsor, the

officer issued an RFE for a sufficient Form I-864 from a joint sponsor. One of the petitioner's former colleagues came forward as joint sponsor, and the new Form I-864 is sufficient.

The officer evaluates all relevant evidence and information in the totality of the circumstances and determines that the alien is likely at any time to become a public charge. Considering the statutory factors, the officer acknowledges that the alien is of working age and is in good health. The officer considers the family status of the alien in combination with the assets, resources, and financial status of the alien and finds that evidence in the record suggests that the household is in dire financial straits. The alien's spouse is not employed and the alien is employed at a level that does not provide sufficient income to support the household. As a result, all three U.S. citizens in the household, whom the alien is required to support, are currently receiving a variety of means-tested public benefits.

Given the alien's current employment, low level of education, and lack of skills, the officer finds it unlikely that the alien will be able to obtain full-time employment with an income sufficient to support himself and his family. While there is a sufficient affidavit of support from the petitioner's former colleague, the former colleague does not live in the same city as the alien's family, has only a loose connection to the alien through the petitioning spouse, and has an annual income only slightly higher than the minimum required by INA 213A to serve as a sponsor. The officer determines that the alien is likely to depend on public resources to meet his needs after he becomes an LPR and is eligible for those benefits. As a result, the officer concludes that the alien is likely at any time to become a public charge and finds the alien is inadmissible under INA 212(a)(4).

*Scenario 6*

A 28-year-old married alien with a bachelor's degree, living with her spouse and two young children, applies for adjustment of status. The alien is employed full-time with a stable income, and the household's net worth is moderate. The alien has never received means-tested public benefits and has no medical conditions. The alien's petitioning spouse submitted a sufficient Form I-864, showing a household income more than twice the federal poverty guidelines for a family of four.

The officer evaluates all relevant evidence and information in the totality of the circumstances. The officer finds that the alien's stable employment, college education, good health, moderate level of assets, support from a gainfully employed spouse, and lack of public benefit make it highly unlikely that the alien will become a public charge. As a result, the officer finds that the alien has met her burden of demonstrating that she is not inadmissible under INA 212(a)(4).

*Scenario 7*

The alien is a 65-year-old widowed individual, living alone. The alien was inspected and admitted to the United States as an H-1B nonimmigrant worker and worked as a college

professor for several years. During their employment, the alien met and married a U.S. citizen. The alien's spouse, who was also employed in academia, passed away unexpectedly. The spouse had a substantial life insurance policy, which allowed the applicant to pay off the mortgage on their home and put some money into savings. Following the spouse's death, the alien has been receiving a small pension from their previous employment, Social Security retirement benefits based on their own employment in the United States, and survivor Social Security benefits based on their deceased spouse's work record. The alien has limited retirement savings but owns their home outright and has no Class A or Class B medical conditions. The alien has never received means-tested public benefits. The sister of the deceased spouse of the alien submitted a substitute Form I-864, which was sufficient under INA 213A.

The officer considered the applicant's age, the applicant's stable retirement income, home ownership, lack of medical issues, sufficient Form I-864, and absence of history of receipt of public benefits. The officer also considered the alien's high level of education and skills as well as their employment history, finding it likely that the alien could find employment, if needed. Considering all of this information in the totality, the officer determines that the alien is unlikely to become a public charge and has met her burden of demonstrating that she is not inadmissible under INA 212(a)(4).

*Scenario 8*

A 45-year-old married alien with three children applied for adjustment of status. The alien has a vocational certificate and works part-time. The spouse is employed full-time and the household income is slightly above the federal poverty guidelines. The family rents their home and has minimal savings. The alien received Medicaid for emergency medical care in 2025 but has not received other means-tested public benefits. The immigration medical examination revealed no Class A or Class B medical conditions. A sufficient Form I-864 was submitted.

The officer evaluates all relevant evidence and information in the totality of the circumstances, including the alien's age, good health, skills, current employment, and household income. The officer also considers the sufficient Form I-864 submitted by a close relative, the alien's spouse. While past benefit use is almost always highly relevant to a public charge inadmissibility determination, the officer recognizes that the alien received the benefit prior to September 18, 2026, and it was not cash assistance for income maintenance or long-term institutionalization at government expense. As a result, the officer does not consider the limited receipt of Medicaid for emergency medical care in the public charge inadmissibility determination.

After considering all of the evidence in the record, the officer finds that the alien is not likely at any time to become a public charge. As a result, the officer finds that the alien has met the alien's burden of demonstrating that the alien is not inadmissible under INA 212(a)(4).

*Scenario 9*

On June 1, 2026, a 32-year-old alien was admitted to the United States as a K-1 nonimmigrant with her accompanying 12-year-old alien son from a previous marriage. The alien completed high school in her home country. Prior to issuing the K-1 nonimmigrant visa, the Department of State required that the K-1 petitioner submit a Form I-134, Declaration of Financial Support, on behalf of the alien and accompanying child. DOS found the Form I-134 sufficient. Evidence in the record shows the alien married her U.S. citizen petitioner the day after she arrived in the United States, and the record reflects that the couple married in good faith. On October 1, 2026, the K-1 petitioner filed a Form I-864 in conjunction with the alien's Form I-485, and the Form I-864 was found to be sufficient. At the interview on December 1, 2027, the alien presents a divorce decree, and the evidence shows that the alien and the petitioner have been divorced for 4 months. The petitioner has not withdrawn his Form I-864, but the alien is no longer in contact with him.

Although the divorce decree orders the petitioner to pay alimony to the alien, the alien provides evidence that he has failed to do so. The alien is currently employed full-time at a job that requires no certification or higher education, and she lives in a rented apartment with her son. Her income is at the federal poverty guidelines, and she has minimal savings. The alien's son attends a school that is not part of the Community Eligibility Provision (CEP) for school lunches, but the alien has applied for her son to receive free school lunches, which he now receives. Her son also received emergency Medicaid for an emergency room visit on July 4, 2026. There is no evidence in the record that the alien or her son has health insurance. The alien has no Class A or Class B medical conditions.

The Form I-134 and Form I-864 were sufficient, however, there is no evidence in the record suggesting that the petitioner is inclined to provide the statutorily required amount of support (or any support) to the alien. Although the Form I-864 is legally binding, and the alien could sue to enforce it after adjustment, the divorce and subsequent failure to provide alimony suggest that the petitioner would likely pursue a lengthy and costly court case in his defense. The officer concludes that the petitioner is not likely to provide statutorily or court-ordered support to the alien after adjustment of status. The officer evaluates all relevant evidence and information in the totality of the circumstances, including the alien's age, good health, skills, current employment, and income, assets, and financial status. The officer recognizes that the alien has secured full-time employment, at the federal poverty guidelines, within a short time after receiving employment authorization and is able to pay her rent and provide for herself and her child with minimal government support.

During the interview, the alien shared that she recently received a raise at work and has been recommended for management training. The officer also considers the sufficient Form I-864 but gives it little weight in the totality of the circumstances analysis because the petitioner is unlikely to provide the alien support without being ordered to in litigation. While the alien has not received means-tested public benefits, her son (whom she is legally obligated to support) is currently receiving free school lunches based on the alien's income falling below the eligibility threshold for that benefit. The officer considers the alien's income falling below that threshold

in the totality of the circumstances. The officer also considers the nature of the free school lunch program and the limited impact of the receipt on the household finances. Since the alien's son received emergency Medicaid before September 18, 2026, the officer did not consider such receipt in the context of the alien's assets, resources, and financial status. After considering all of this evidence and information in the totality of the circumstances, the officer concludes that the alien is not likely at any time to become a public charge. As a result, the officer finds that the alien has met her burden of demonstrating that she is not inadmissible under INA 212(a)(4).

*Scenario 10*

A 70-year-old alien has applied for adjustment of status under INA 245(a) as a parent of a U.S. citizen. The alien lives together with his U.S. citizen petitioner, his son-in-law, and the alien's three biological grandchildren. The alien has a university diploma from his country of origin, where he retired from his career over a decade ago. Although the alien was of moderate income in his country of origin, he has limited savings and no income in the United States. The household income is slightly above the federal poverty guidelines. The petitioner submitted a Form I-864, and the petitioner's spouse is employed and has submitted Form I-864A. The petitioner does not work, but she provides caretaking for the children and the alien. The alien currently receives Medicaid under 42 U.S.C. 1396b(v)(5)(B), and is being treated for diabetes, high blood pressure, and dementia.

The officer evaluates all of the relevant evidence and information in the totality of the circumstances. After considering the alien's age, poor health, family status in combination with household resources, the alien's education and skills, the alien's extremely poor prospects for future employment, the alien's current receipt of Medicaid, and the affidavit of support, the officer determines that the alien is likely at any time to become a public charge and finds the alien is inadmissible under INA 212(a)(4).

*Scenario 11*

In 1996, an alien was inspected and admitted to the United States using a B-1/B-2 border crossing card. He has not departed the United States since admission. At 50 years of age, he has applied to adjust status based on a petition filed by his U.S. citizen daughter. The petitioner has also filed a sufficient Form I-864. The alien has a college degree and is employed full-time at a middle-income job. Between 1999-2010, the alien periodically received emergency Medicaid. The alien has not received any other means-tested public benefit. The alien is in good health, lives with his alien spouse, who is still working, and owns his home.

The officer evaluates all of the relevant evidence in the totality of the circumstances. Specifically, the officer considers the applicant's age, good health, family status in combination with his assets, resources, and financial status, current employment, and significant education and skills. The officer also considers the sufficient Form I-864 provided by the alien's daughter. The officer does not consider the alien's receipt of emergency Medicaid more than 16 years ago,

well before September 18, 2026. The officer concludes that the alien is not likely to become a public charge and does not find the alien inadmissible under INA 212(a)(4).

*Scenario 12*

In 2006, at age 6, the alien was inspected and admitted into the United States as a B-1 visitor. She has not departed the United States since admission. In 2021, she married a U.S. citizen, and in 2030 she filed a Form I-485 to apply for adjustment of status in conjunction with her spouse's Form I-130 petition. They have one U.S. citizen child, born in 2023. During and following her pregnancy, she applied for and received WIC benefits. She completed a certification as a nursing assistant and was employed in that field until 2028, when she left her job and began to provide full-time care for the petitioner's aging parent, who suffers from Parkinson's disease. The alien has no Class A or Class B medical conditions.

The petitioner's income is slightly below the level required to serve as a sponsor under INA 213A, but the petitioner's brother, who owns a successful small business, has submitted a sufficient Form I-864 for joint sponsorship. The petitioner, alien, and their child live together with the petitioner's aging parent in the aging parent's house, where they do not pay rent. The joint sponsor brother lives next door with his family and the broader family is very close. The aging parent receives SNAP and Medicaid benefits in addition to Medicare and Social Security retirement benefits.

The officer evaluates all of the relevant evidence and information in the totality of the circumstances. While the alien is unemployed, the alien makes significant contributions to the household by caring for her father-in-law. These contributions make it possible for him to live with his family and relieve the potential financial burden of institutionalization. While the household income is lower than the 125% of the Federal Poverty Guidelines level, the fact that the family does not have to pay rent or a mortgage, combined with the legally binding Form I-864 from a very close relative, offsets this low income. The officer considers that the alien has not received any means-tested public benefits, nor has anyone in the household she is obligated to support. The alien is young, educated, and has a past history of employment and a willingness to engage in difficult work, even if that work is unpaid at the moment. The alien's receipt of WIC was temporary, associated with her pregnancy, many years ago, low in value, and occurred prior to September 18, 2026, and was therefore not a consideration in the officer's analysis. The officer also considers the alien's good health. Considering all of this in the totality of the circumstances, the officer finds that she is not likely to become a public charge and is not inadmissible under INA 212(a)(4).

*Scenario 13*

A 45-year-old alien is the parent of a U.S. citizen and a high school graduate. The alien had periodically been admitted to the United States as an H-2B nonimmigrant and departed without overstaying her period of admission. Twenty years before applying for adjustment of status in

2047, the alien gave birth to her child in the United States and received both emergency Medicaid and WIC in connection with her pregnancy, birth, and postpartum care. This was the only time she received public benefits. The alien is married to the father of her child, and all three reside together. He works as a cook in a restaurant. The alien has worked seasonally in the seafood industry but after receiving employment authorization in connection with her adjustment of status application now works as a cleaning supervisor in a commercial building. The alien's son works part-time at a school cafeteria. The alien's salary is greater than her son's and covers most of the household's monthly living expenses. They live in an apartment with relatively low rent.

While the petitioning son lacks sufficient income and assets on his own to meet the requirements to serve as a sponsor under INA 213A, he includes the income of his alien mother on Form I-864, along with evidence that her current employment is lawful and that the alien's employer intends to continue employing her in the same position after she adjusts status. The immigration medical examination revealed the alien has one minor Class B condition, high cholesterol.

The officer evaluates all of the relevant evidence and information in the totality of the circumstances. The officer considers the alien's age and the identified Class B condition. Given the alien's employment history and current employment, and the notes from the Civil Surgeon on the Form I-693, the Class B condition has little weight in the totality of the circumstances. The officer then considers the alien's family status and her assets, resources, and financial status. She is gainfully employed and is the top wage earner in a family of three working adults. While the alien lacks formal education beyond high school, she has demonstrated that it has not prevented her from being employed. The officer considers the alien's past receipt of Medicaid and WIC, which occurred after September 18, 2026. The officer considers the reason for the receipt (her pregnancy), the recency of the receipt (20 years ago), and the value of the benefits received (not high). The officer determines that this receipt is unlikely to recur.

Considering all of this in the totality of the circumstances, the officer finds that she is not likely to become a public charge and is not inadmissible under INA 212(a)(4).

*Scenario 14*

In 2023, the alien, age 25, was inspected and admitted to the United States as an H-1B nonimmigrant, to work as a processing systems engineer for a large petrochemical company. Later in 2023, they married a U.S. citizen. In 2025, the alien enrolled in an evenings and weekends MBA program at their local university. That same year, their USC spouse filed a Form I-130 on the alien's behalf, and the alien filed a Form I-485 application to request adjustment of status. The alien also applied for, and received, employment authorization based on having a pending adjustment of status application. The petitioner is a nurse and is studying to be a physician's assistant, and the alien and petitioner co-own a small condo. The couple have no children, and the alien's Form I-693 reveals no Class A or Class B conditions.

In 2026, about 3 months before their joint interview on the Form I-130/I-485 package, the alien was laid off from their position. Following the lay-off, the alien successfully changed status to an F-1 student. The alien is currently receiving unemployment insurance payments, and the alien's father is paying half of the alien's graduate school tuition. At the interview, the alien presents evidence that they have attended multiple recruitment events through their MBA program's career center, and that they have made it to the second round of interviews for several positions.

The officer evaluates all of the relevant evidence and information in the totality of the circumstances. The officer considers the alien's age, educational attainment, and past employment history. Although the alien is currently unemployed, they show clear evidence that they are financially supported and are actively seeking employment that would result in self-sufficiency. The unemployment insurance benefits the alien is receiving are an earned, not means-tested, benefit, so the officer does not factor these into their assessment of the alien's likelihood to become a public charge. The officer considers the sufficient Form I-864 submitted by the alien's spouse and the likelihood that the spouse will fulfill the support obligations. The officer also considers the ongoing family support, as demonstrated by the father's assistance with the tuition payments. The officer finds that the alien is not likely to become a public charge at any time, and concludes that the alien is not inadmissible under INA 212(a)(4).

### C. Summary: Step-by-Step Determination of Public Charge Inadmissibility

The officer should examine all facts and circumstances of the applicant's case when evaluating inadmissibility for public charge.[304] The officer should follow the steps in the table below to determine inadmissibility.

**Step-By-Step Determination of Public Charge Inadmissibility**

| Step | If Yes, then … | If No, then … | For More Information |
|---|---|---|---|
| **Step 1: Is the alien subject to the public charge ground of inadmissibility?** | Go to Step 2. | Not inadmissible based on the public charge ground.[305] | See Chapter 3, Applicability [8 USCIS-PM G.3]. |
| **Step 2: Is the alien required to submit** | Go to Step 3. | Go to Step 4. | Chapter 6, Affidavit of Support Under Section |

[304] See INA 212(a)(4).

[305] Self-petitioners under the Violence Against Women Act (VAWA) must request an exemption from the Form I-864 requirement when filing their Application to Register Permanent Residence or Adjust Status (Form I-485) but are not subject to the public charge inadmissibility ground. See INA 212(a)(4)(E)(i). Self-petitioning VAWA applicants (and their derivatives) are therefore not inadmissible under the public charge ground and officers do not make a public charge inadmissibility determination once they determine the applicant qualifies for the exemption.

**Step-By-Step Determination of Public Charge Inadmissibility**

| Step | If Yes, then ... | If No, then ... | For More Information |
|---|---|---|---|
| **an Affidavit of Support Under Section 213A (Form I-864 or Form I-864EZ)?** | | | 213A of the INA [8 USCIS-PM G.6]. |
| **Step 3: Was the Form I-864 (or Form I-864EZ) submitted and determined sufficient by the officer?** | Go to Step 4. | Inadmissible based on the public charge ground. The officer may issue a NOID or deny the application in accordance with USCIS policy. | |
| **Step 4: Was the application postmarked (or, if applicable, submitted electronically) on or after September 18, 2026?** | Go to Step 5. | Follow the 2022 Rule and Guidance if the application is postmarked or submitted electronically on or after December 23, 2022, but before September 18, 2026.<br><br>Follow the 1999 Interim Field Guidance for applications postmarked or electronically submitted prior to December 23, 2022. | Chapter 1, Purpose and Background, Section C, Implementation and Scope [8 USCIS-PM G.1(C)]. |
| **Step 5: After reviewing the** | Go to Step 6. | Not inadmissible based on the public charge ground. | Chapter 5, Statutory Minimum Factors [8 USCIS-PM G.5] through Chapter 7, Consideration of Any |

**Step-By-Step Determination of Public Charge Inadmissibility**

| Step | If Yes, then … | If No, then … | For More Information |
|---|---|---|---|
| **applicable forms[306] and evidence, is the alien likely at any time to become a public charge based on the totality of the circumstances?** | | | Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits [8 USCIS-PM G.7]. |
| **Step 6: Is a waiver of inadmissibility available?** | The officer may issue a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) to the alien to provide the alien an opportunity to request a waiver, unless already requested.<br><br>If the waiver is approved, the alien may be admitted despite the public charge ground of inadmissibility. The officer should continue with the adjudication of the application. | Inadmissible based on the public charge ground. Go to Step 7. | Chapter 10, Adjudicating Public Charge Inadmissibility for Adjustment of Status Applications [8 USCIS-PM G.10].<br><br>Chapter 9, Waivers of Inadmissibility Based on Public Charge Ground [8 USCIS-PM G.9]. |
| **Step 7: Does USCIS offer the alien who is inadmissible only on account of public charge the opportunity to post a public charge bond?** | The officer issues a NOID, notifying the alien that the alien may submit a public charge bond. Proceed to Step 8. | The alien is inadmissible on the public charge ground. The officer may issue a NOID or deny the application in | Chapter 11, Public Charge Bonds [8 USCIS-PM G.11]. |

306 Including Form I-485, Form I-864 or Form I-864EZ, and Report of Immigration Medical Examination and Vaccination Record (Form I-693). Officers may issue a Request for Evidence (RFE) to the applicant to provide the applicant an opportunity to submit additional evidence.

**Step-By-Step Determination of Public Charge Inadmissibility**

| Step | If Yes, then ... | If No, then ... | For More Information |
|---|---|---|---|
| | | accordance with USCIS policy. | |
| **Step 8: Was a proper and suitable bond posted on behalf of the alien?** | The alien may be admitted despite inadmissibility based on the public charge ground. The officer should continue with the adjudication of the application. | The alien is inadmissible on the public charge ground. The officer should deny the application. | Chapter 12, Public Charge Bonds: Posting and Accepting Bonds [8 USCIS-PM G.12]. |

## D. Decision

1. Request for Evidence or Notice of Intent to Deny

If the initial evidence submitted by the alien does not establish eligibility or ineligibility, an officer may issue a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) to request more information or evidence from the alien in accordance with USCIS policy.[307]

If a NOID is issued, the officer must provide an explanation of the consideration of all the factors and why the officer believes that the alien is likely at any time to become a public charge based on the consideration of the totality of the alien's circumstances. If an officer is basing a decision in whole or in part on information of which the alien is unaware or could not reasonably be expected to be aware, the officer must issue a NOID.[308]

2. Not Inadmissible Based on the Public Charge Ground

After reviewing the application for adjustment of status and supporting evidence, if the officer finds that the alien is not likely at any time to become a public charge based on the consideration of the totality of the alien's circumstances, then the officer should determine that the alien is not inadmissible based on the public charge ground. The officer should continue with the adjudication.

[307] See 8 CFR 103.2(b)(8)(i). Generally, USCIS issues written notices in the form of an RFE or NOID to request missing initial or additional evidence. However, USCIS has the discretion to deny a benefit request without issuing an RFE or NOID. See 8 CFR 103.2(b)(8)(iii). For more information, see Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 6, Evidence, Section F, Requests for Evidence and Notices of Intent to Deny [1 USCIS-PM E.6(F)], and Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 9, Rendering a Decision, Section B, Denials, Subsection 1, Denials Based on Lack of Legal Basis [1 USCIS-PM E.9(B)(1)].
[308] See 8 CFR 103.2(b)(16)(i). See 8 CFR 103.2(b)(8)(iv).

### 3. Inadmissible Based on the Public Charge Ground

After reviewing the application for adjustment of status and supporting evidence, if the officer finds that the alien is likely at any time to become a public charge, then the officer should determine that the alien is inadmissible under the public charge ground.

In this case, the officer should determine whether the alien may be eligible to apply for a waiver or whether to offer the alien the opportunity to post a public charge bond.[309] If the alien is ineligible to apply for a waiver and USCIS has decided not to offer the alien an opportunity to post a public charge bond, then the alien is ineligible for adjustment of status. The officer either issues a NOID or denies the benefit request in accordance with USCIS policy.[310]

*Waiver*

If the alien is eligible to apply for a waiver, the officer should inform the alien through the issuance of an RFE or NOID in accordance with USCIS policy.[311] If the alien submits a waiver application and the waiver application is approved, the alien is no longer inadmissible under the public charge ground. The officer should then continue with the adjudication of the adjustment of status application in accordance with the guidance.

*Bond*

An officer, as a matter of discretion, may offer an alien applying for adjustment of status an opportunity to post a public charge bond[312] if the alien is only inadmissible based on the public charge ground and is otherwise eligible for adjustment of status.[313] In this instance, the officer must issue a NOID in accordance with USCIS policy.[314]

If an alien posts the public charge bond as instructed in the NOID and USCIS accepts the bond, the officer should continue with the adjudication of the immigration benefit request in accordance with the guidance.

*Denial*

---

[309] For more information, see Chapter 9, Waivers of Inadmissibility Based on Public Charge Ground [8 USCIS-PM G.9] and Chapter 11, Public Charge Bonds [8 USCIS-PM G.11].
[310] See 8 CFR 103.2(b)(8)(iii). See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 6, Evidence, Section F, Requests for Evidence and Notices of Intent to Deny [1 USCIS-PM E.6(F)].
[311] See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 6, Evidence, Section F, Requests for Evidence and Notices of Intent to Deny [1 USCIS-PM E.6(F)].
[312] In accordance with 8 CFR 213.1.
[313] See 8 CFR 213.1(a).
[314] See 8 CFR 103.2(b)(8)(iii). See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 6, Evidence, Section F, Requests for Evidence and Notices of Intent to Deny [1 USCIS-PM E.6(F)].

USCIS officers must explain the reasons for a finding of inadmissibility under the public charge ground based on the totality of the circumstances in the denial decision issued to the alien.[315] Every written denial decision issued by USCIS based on the totality of the circumstances analysis must reflect consideration of each of the factors in the public charge inadmissibility determination and specifically articulate the reasons for the officer's determination.[316]

## Chapter 11. Public Charge Bonds

If an alien is determined to be inadmissible based on the public charge ground,[317] but is otherwise admissible and eligible for adjustment of status, he or she may be admitted in the discretion of the Secretary of Homeland Security, after posting a suitable and proper bond.[318] Before an alien may post a public charge bond, USCIS must invite the alien to do so.[319] Public charge bonds are intended to hold the United States and all states, territories, counties, towns, municipalities, and districts harmless against aliens becoming public charges.[320]

This statutory language is further clarified by language used by the former Immigration and Naturalization Service and DHS on previous versions of public charge bond forms, which consistently stated from as early as the 1940s through to 2017 that a purpose of the bond was to "pay to the people of the United States, or to any state, territory, county, town, municipality, or district thereof…any or all charges or expenses arising" from the alien's use of public benefits.[321] The BIA has stated that public charge bonds are intended to ensure "that the alien will not in the future become a public charge."[322] A public charge bond is issued with conditions prescribed by DHS,[323] one such condition being that the alien not receive any means-tested public benefits while the bond is in effect.[324]

---

[315] See 8 CFR 103.3(a)(1)(i). For more information about the consideration of the totality of the circumstances, see Chapter 4, Prospective Determination Based on the Totality of the Circumstances [8 USCIS-PM G.4].
[316] For more information about the factors considered in a public charge inadmissibility determination, see Chapter 5, Statutory Minimum Factors [8 USCIS-PM G.5], Chapter 6, Affidavit of Support Under Section 213A of the INA [8 USCIS-PM G.6], and Chapter 7, Consideration of Any Current or Past Application for, Approval or Certification to Receive, and Receipt of Means-Tested Public Benefits [8 USCIS-PM G.7].
[317] See INA 212(a)(4).
[318] See INA 213. See 8 CFR 103.6 and 8 CFR 213.1.
[319] See 8 CFR 213.1(a).
[320] See INA 213. See *Matter of Viado*, 19 I&N Dec. 252 (BIA 1985). This language has remained substantively unchanged since the Immigration Act of 1907. See Section 26 of the Act of February 20, 1907, Pub. L. 59-96, 34 Stat. 898, 907
[321] See former Form I-354, Bond That Alien Shall Not Become a Public Charge. See former Form I-352, Immigration Bond (12/2017 version).
[322] See *Matter of Viado*, 19 I&N Dec. 252, 253 (BIA 1985).
[323] See INA 213.
[324] See 8 CFR 103.6(c)(1)(ii).

If USCIS decides in its discretion that the alien may post a bond, USCIS will issue a Notice of Intent to Deny (NOID) in which it will invite the alien to submit a bond. No public charge bonds will be accepted from aliens applying for adjustment of status without an invitation from USCIS.

In the case of immigrant visa applicants, a bond will be accepted by USCIS only if USCIS receives notification that a consular officer requires the bond. USCIS may accept a public charge bond before the issuance of an immigrant visa upon the receipt of a request directly from a United States consular officer or upon the presentation by an interested person of a notification from the consular officer requiring the bond.[325]

A public charge bond is a type of immigration bond.[326] A bond, including a public charge bond, is a contract between the United States (the obligee) and a natural person or a company (the obligor) who pledges a sum of money to guarantee a set of conditions imposed by the U.S. government concerning the alien (also called the principal).[327]

If the U.S. government invites the alien to post a public charge bond, and the alien posts the bond in the amount specified by USCIS and complies with all other requirements as provided in the form and form instructions, USCIS accepts the public charge bond and adjusts the applicant's status to that of a lawful permanent resident (LPR) despite the alien's inadmissibility.

**A. Background**

Historically, bond provisions started with states requiring certain amounts of money to be posted as assurance that an alien would not become a public charge.[328] Beginning in 1893, immigration inspectors served on boards of special inquiry that reviewed exclusion cases of aliens who were likely to become public charges because they lacked funds or relatives or friends who could provide support.[329] In these cases, the board of special inquiry usually

---

325 See 8 CFR 213.1(b).

326 There are many types of immigration bonds prescribed in the Immigration and Nationality Act (INA). Most immigration bonds are currently administered by U.S. Immigration and Customs Enforcement (ICE), and not USCIS. For example, ICE administers the voluntary departure bonds, delivery bonds, and order of supervision bonds. For more information on other immigration bonds, contact ICE.

327 See *Matter of Allied Fid. Ins. Co*., 19 I&N Dec. 124, 125-26 (BIA 1984) (discussing the contractual nature of delivery bonds submitted under 8 CFR 103.6).

328 See *Mayor, Aldermen and Commonality of City of N.Y. v. Miln*, 36 U.S. 102 (1837) (upholding a New York statute that required vessel captains to provide certain biographical information about every passenger on the ship and further permitting the mayor to require the captain to provide a surety of not more than $300 for each alien passenger to indemnify and hold harmless the government from all expenses incurred to financially support the alien and the alien's children).

329 See Immigration Act of 1892, Pub. L. 51-551, 26 Stat. 1084 (March 3, 1891), which created the Office of the Superintendent of Immigration within the U.S. Department of the Treasury. The Superintendent oversaw a new corps of U.S. immigration inspectors stationed at the country's principal ports of entry. See the USCIS Origins of Federal Immigration Service webpage.

admitted the alien if someone could post bond or one of the immigrant aid societies would accept responsibility for the alien.

Bond provisions were codified in federal immigration laws in 1903.[330] The present language of section 213 of the Immigration and Nationality Act (INA) has been in the law without significant variation since 1907.[331] Under Section 21 of the Immigration Act of 1917, an immigration officer could admit an alien if a suitable bond was posted.[332] Regulations implementing the public charge bond have been in place since at least 1947,[333] and are currently found at 8 CFR 103.6 and 8 CFR 213.1. In 1970, Congress amended INA 213 to permit the posting of cash received by the U.S. Department of the Treasury (Treasury) and to eliminate specific references to communicable diseases of public health significance.[334]

With the passage of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in 1996, Congress amended the section by adding a parenthetical that clarified that a bond may be requested in addition to, and not in lieu of, the Affidavit of Support Under Section 213A of the INA (Form I-864) and the deeming requirement under INA 213A.[335]

The 1999 Interim Field Guidance explained the IIRIRA changes to the public charge bond statute and noted that officers can offer public charge bonds as they had done in the past, but did not detail procedures for public charge bonds.[336]

The 2022 Final Rule added streamlined provisions to clarify acceptance, forms, and amount of USCIS public charge bonds, as well as cancellation of bonds.[337]

---

[330] See Immigration Act of 1903, Pub. L. 57-162, 32 Stat. 1213 (March 3, 1903).
[331] See Section 26 of the Act of February 20, 1907, Pub. L. 59-96, 34 Stat. 898, 907.
[332] See Pub. L. 64-301, 39 Stat. 874, 876 (February 5, 1917).
[333] See 29 FR 10579 (July 30, 1964) and 31 FR 11713 (Sept. 7, 1966). Prior to this, public charge bond regulations were published in 8 CFR 110.20-21 and 8 CFR 169. See, for example, the 1949 and 1947 versions of the CFR, available at loc.gov.
[334] See Immigration and Nationality Act Amendments of 1970, Pub. L. 91-313, 84 Stat. 413 (July 10, 1970). See 116 Cong. Rec. S 9957 (daily ed. June 26, 1970).
[335] See Section 564(f) of Division C of Pub. L. 104-208, 110 Stat. 3009, 3009-684 (September 30, 1996). The Examinations Handbook included guidance on public charge bond processes and policies in Part VI, at VI-88 through VI-98 (October 1, 1988). After legacy Immigration and Naturalization Service (INS) retired the Examinations Handbook, INS's Operating Instructions provided guidance on the topic at Section 103.6 and 213.1 (November 1997). In 1998, INS removed the Operating Instructions and transferred the parts relating to immigration bonds to the Inspector's Field Manual, Chapter 45. Neither INS nor USCIS appear to have issued new guidance on the topic since that time. With the creation of the Adjudicator's Field Manual (AFM), USCIS incorporated existing public charge bond guidance into Chapter 61.1, but given the affidavit of support, the authority has rarely been exercised since the passage of IIRIRA.
[336] See 64 FR 28689 (May 26, 1999).
[337] See 87 FR 55472 (Sept. 9, 2022) (final rule). See 8 CFR 103.6 and 8 CFR 213.1.

The 2026 Final Rule amended the regulations governing the cancellation and breach of public charge bonds to reflect the rescission of certain provisions from the 2022 Final Rule,[338] and made amendments to more fully address when a public charge bond is breached and to explicitly address administrative appeals from a determination that the alien breached a bond.

**B. Type of Bonds**

Public charge bonds may generally be posted as:[339]

- A cash bond – This type of bond is posted as cash equivalent as specified by USCIS;[340] or
- A surety bond – This type of bond is posted through a surety company certified by the Treasury.[341]

Regardless of the type of public charge bond, the bond must be posted with USCIS by submitting a Public Charge Bond (Form I-945) in accordance with its instructions.[342]

*Cash Bonds*

A cash bond is secured by a deposit of the full face value of the bond. It can be posted by a company or a natural person. If an alien is given the opportunity to post a public charge bond, the bond should be paid in accordance with the Form I-945 instructions.

Once USCIS receives the funds, the money is held in a U.S. Treasury account until it is either forfeited due to breach or the bond is canceled. Funds used to secure a bond accrue interest at the rate set by the Treasury on the date the funds are received.[343]

*Surety Bonds*

A surety bond is a bond that is submitted on the alien's behalf by a company, which guarantees the payment of a certain amount of money if the alien fails to comply with the conditions set by the government as part of the bond. In the case of a surety bond, no cash is exchanged as part of the bond contract; only if and when the alien breaches the conditions of the bond will the surety company pay the promised amount of money to the government.

---

[338] See 91 FR 45324 (Jul. 20, 2026) (final rule) (amending 8 CFR 103.6).
[339] See 8 CFR 103.6.
[340] See 8 CFR 213.1.
[341] See 8 CFR 103.6.
[342] See 8 CFR 103.2(a)(1).
[343] See 8 CFR 293.1.

Before a surety company can do business with any government entity, it must be certified by the Treasury.[344] All certified companies are listed in a document entitled Circular 570.[345] USCIS only accepts surety bonds from companies certified by the Treasury to post bonds.[346]

A surety company can execute a bond on its own or it can do so through authorized agents.[347] To establish that an agent is an authorized agent who may act on behalf of the surety company, the agent must provide evidence of the authorization through a power of attorney that must comply with the state laws governing the jurisdiction in which it is executed.

This power of attorney is not the same as the Notice of Entry of Appearance as Attorney or Accredited Representative (Form G-28). Therefore, when submitting a public charge bond on behalf of a certified surety company, the agent must attach either an original power of attorney, or a true copy (as defined under applicable state law), to Form I-945.

If the agent[348] also seeks to act in the capacity of an attorney or accredited representative of the surety company, the agent must also submit Form G-28.[349]

If the surety company posts bonds through an agent, the agent becomes a co-obligor. This means that the agent is jointly and severally liable for the bond amount. If the alien breaches the conditions of the bond, either the surety company or the agent or both can be held liable for and up to the amount of the bond.

*Example*

Immigration Bonds, Inc. provides public charge bond services on behalf of Bank B, a Treasury-certified surety company. When submitting a public charge bond, Immigration Bonds, Inc. must submit Form I-945 and an original or a true copy (as defined under applicable state law) of the power of attorney that complies with the state laws governing the jurisdiction in which the

---

[344] See 31 U.S.C. 9304-9308. As part of the certification process, the Treasury ascertains the company's credit worthiness.
[345] Circular 570 is available at the Treasury's Listing of Certified Companies webpage.
[346] The Treasury certifies companies only after having evaluated a surety company's qualifications to underwrite federal bonds, including whether those sureties meet the specified corporate and financial standards. Under 31 U.S.C. 9305(b)(3), a surety (or the obligor) must be able to carry out its contracts and must comply with statutory requirements, including prompt payment of demands arising from an administratively final determination that the bond has been breached.
[347] However, a surety bond cannot be posted by a person who is not an authorized agent for a certified company. For example, if an alien is offered the opportunity to post a public charge bond, the alien cannot submit a surety bond on his or her own behalf.
[348] An agent or co-obligor may also act through his or her authorized representative, as defined in 8 CFR 1.2 and 8 CFR 292. Such a representative must submit Form G-28 on behalf of the agent or co-obligor.
[349] If the Form G-28 is missing, but should have been submitted, USCIS should request the Form G-28 before proceeding.

power of attorney was executed. The power of attorney demonstrates that Immigration Bonds, Inc. is authorized to submit the bond on behalf of Bank B.

By completing the Form I-945, the agent, Immigration Bonds, Inc., must sign as a co-obligor on the bond. If Immigration Bonds, Inc. also acts as Bank B's attorney or accredited representative, Immigration Bonds, Inc., would also have to submit a properly completed Form G-28. If the public charge bond is accepted, then Immigration Bonds, Inc. and Bank B become co-obligors on the public charge bond.

If the public charge bond is breached because the alien does not comply with the bond conditions, the U.S. government may collect from either Immigration Bonds, Inc. or Bank B or both to obtain the full face value of the public charge bond.

The following table illustrates the differences between the public charge cash and surety bonds.

**Differences Between Cash and Surety Bonds**

| | Cash Bond | Surety Bond |
|---|---|---|
| **Who can post it?** | • Natural person, including the alien; or<br>• Company or other entity | • Certified surety company; or<br>• The certified surety company's authorized agent |
| **The bond is posted by submitting what documents?** | • Form I-945, completed in accordance with the form instructions;<br>• Payment submitted according to the form's instructions; and<br>• Form G-28, if necessary | • Form I-945, completed in accordance with the form instructions;<br>• If submitted by an authorized agent of an acceptable surety company: power of attorney complying with state laws of governing jurisdiction in which the power of attorney was executed; and<br>• Form G-28, if the agent is also acting in the capacity of an attorney or accredited representative |
| **Is a payment submitted with the bond?** | • Yes, payment is submitted in accordance with Form I-945's instructions | • No, no payment accompanies the bond submission |
| **Can the bond have a co-obligor?** | • No | • Yes, if the bond is submitted by an authorized agent of an acceptable surety company, |

**Differences Between Cash and Surety Bonds**

| | Cash Bond | Surety Bond |
|---|---|---|
| | | the authorized agent becomes a co-obligor |

### C. Bond Amount

A public charge bond must be in an amount, of at least $1,000, that is sufficient to hold harmless the United States and all states, territories, counties, towns, municipalities, and districts (hereinafter, "the government") against the bonded alien becoming a public charge.[350] USCIS determines the appropriate bond amount for each applicant on a case-by-case basis. The BIA has held that setting public charge bond amounts and conditions requires the same "determination of the likelihood of future events" as the inadmissibility determination and that the purpose of the bonds is "to assure that the alien will not in the future become a public charge."[351]

### D. Bond Duration

USCIS only accepts public charge bonds of unlimited duration. This means that the bond will not expire, but instead remains in effect until one of the following events occurs:

- USCIS approves a substitute bond that replaces the bond originally posted;[352]
- USCIS cancels the bond;[353] or
- USCIS determines that the bond is breached.[354]

### E. Bond Stages

The decision to allow an alien who is inadmissible only on the public charge ground, and is otherwise eligible for adjustment of status, to submit a public charge bond is within USCIS' discretion. The posting of a public charge bond by an applicant who is found to be inadmissible only on account of the public charge ground authorizes USCIS, upon accepting the bond, to

[350] See INA 213. See 8 CFR 213.1(c).
[351] See *Matter of Viado*, 19 I&N Dec. 252, 253 (BIA 1985).
[352] For more information on bond substitution, see Chapter 13, Public Charge Bonds: Maintaining, Substituting, and Canceling Bonds, Section B, Substituting a Bond [8 USCIS-PM G.13(B)].
[353] For more information on bond cancellation, see Chapter 13, Public Charge Bonds: Maintaining, Substituting, and Canceling Bonds, Section D, Canceling a Bond [8 USCIS-PM G.13(D)].
[354] For more information on bond breach, see Chapter 13, Public Charge Bonds: Maintaining, Substituting, and Canceling Bonds, Section C, Breach of Bond [8 USCIS-PM G.13(C)].

adjust the status of the applicant to that of an LPR. Before posting a public charge bond, USCIS must invite the alien to do so.[355] No public charge bonds will be accepted from adjustment of status applicants without an invitation from USCIS.

The public charge bond is posted on such conditions as USCIS prescribes.[356] This includes a condition stating that the bond is breached if the bonded alien receives any means-tested public benefit while the bond is in effect.[357] If the applicant does not maintain all conditions of the public charge bond, the bond is breached, and the U.S. government will demand payment on the bond.

If the alien does not breach the bond and does comply with all conditions on the bond, and the bond is otherwise eligible for cancellation, then USCIS will cancel the bond upon the request from either the obligor or agent or co-obligor (the one who posted the bond), or the alien.[358]

The following table summarizes the various stages of a public charge bond.

**Public Charge Bond Stages**

| Stage | For More Information |
|---|---|
| Posting and acceptance of a public charge bond | Chapter 12, Public Charge Bonds: Posting and Accepting Bonds [8 USCIS-PM G.12] |
| Maintenance of a public charge bond, including substitution | Chapter 13, Public Charge Bonds: Maintaining, Substituting, and Canceling Bonds, Section A, Maintaining Bonds [8 USCIS-PM G.13(A)]<br><br>Chapter 13, Public Charge Bonds: Maintaining, Substituting, and Canceling Bonds, Section B, Substituting a Bond [8 USCIS-PM G.13(B)] |
| Breach of the public charge bond | Chapter 13, Public Charge Bonds: Maintaining, Substituting, and Canceling Bonds, Section C, Breach of Bond [8 USCIS-PM G.13(C)] |
| Cancellation of the public charge bond | Chapter 13, Public Charge Bonds: Maintaining, Substituting, and Canceling |

[355] See 8 CFR 213.1(a).
[356] See INA 213.
[357] See 8 CFR 103.6(c)(1)(ii).
[358] See INA 213.

**Public Charge Bond Stages**

| Stage | For More Information |
|---|---|
| | Bonds, Section D, Canceling a Bond [8 USCIS-PM G.13(D)] |

**Chapter 12. Public Charge Bonds: Posting and Accepting Bonds**

**A. Permission to Post Bond**

A public charge bond may only be submitted by the alien applying for adjustment of status or on the alien's behalf after USCIS notifies the alien and the alien's representative (if any) that a public charge bond may be submitted. USCIS does not accept requests to submit a public charge bond or unsolicited public charge bonds that are submitted with an Application to Register Permanent Residence or Adjust Status (Form I-485) or while the application is pending.

Because public charge bonds are only made available in USCIS' discretion[359] to aliens inadmissible only under the public charge ground and who are otherwise eligible for adjustment of status,[360] the officer should adjudicate all aspects of the adjustment of status application before USCIS will consider whether the alien should be offered the opportunity to post a public charge bond.

**B. USCIS Discretion to Offer a Bond**

Providing the alien with the opportunity to post a public charge bond is wholly within the discretion of the Secretary of Homeland Security.[361] USCIS, therefore, determines whether to provide an adjustment of status applicant with the opportunity to post a public charge bond on a case-by-case basis and based on the facts of each individual case.[362] Not every otherwise eligible alien inadmissible under the public charge ground will receive this opportunity, depending on the facts of the case. Generally, aliens inadmissible under the public charge ground should not be allowed to post a bond and be approved for adjustment of status given Congress' statement of national policy that aliens within the United States should not depend on public resources to meet their needs.[363]

An officer should consider all relevant factors and information, including the officer's determination of an appropriate bond amount were they to invite the alien to submit one. If an officer determines that an appropriate bond amount would exceed $100,000 (based on the

[359] See INA 213.
[360] See INA 213. See 8 CFR 213.1.
[361] Or in the case of an immigrant visa applicant, the Secretary of State. See INA 213.
[362] See INA 213. See 8 CFR 213.1.
[363] See 8 U.S.C. 1601(2).

estimated value of the public benefits likely to be received by the alien while the bond is in effect), this would be a negative factor in the discretionary determination. The projected receipt of means-tested benefits in such a high amount is indicative of a very high level of likely dependence, a risk that the value of public benefits received by the alien during the bond period would significantly exceed the value of the bond, and potentially (depending on the circumstances) a high likelihood that the alien would continue receiving a high level of government support after the end of the bond period.

USCIS views bonds as an effective way to provide a safeguard to hold the government harmless against the alien receiving means-tested public benefits, and to discourage such receipt by aliens, during the period when the bond is in effect.

USCIS does not offer the opportunity to post a public charge bond if the adjustment application would be denied on any other basis, including discretionary grounds. Moreover, no opportunity to submit a bond should be offered to any alien that is currently receiving any means-tested public benefits.[364]

1. Public Charge Bond Amounts

The purpose of the public charge bond is to hold the government harmless if an alien becomes a public charge after adjusting to lawful permanent resident (LPR) status while the bond is in effect.

A public charge bond must be at least $1,000 and provided in such an amount that it will hold harmless the government against the alien becoming a public charge.[365] By "hold harmless," USCIS means that the bond amount should be set based on the value of the public benefits likely to be received by the alien.[366] By setting a bond amount at or above the value of the public benefits likely to be received by the alien while the bond is in effect, the bond also helps achieve the deterrent effect identified by the BIA, that the alien "not in the future become a public charge."[367]

USCIS determines the appropriate bond amount for each alien on a case-by-case basis. USCIS considers the same factors listed in section 212(a)(4)(A) of the Immigration and Nationality Act (INA), as well as the record as a whole in the totality of the circumstances, when making a determination of the bond amount. The stronger the likelihood that the alien will become a public charge and the greater the anticipated value of the benefits likely to be received by the alien (in the opinion of USCIS when considering these factors), the higher the bond amount.

---

[364] Such an alien would be in immediate breach of the bond conditions.
[365] See INA 213. See 8 CFR 213.1.
[366] See 8 CFR 213.1(c). See INA 213.
[367] See *Matter of Viado*, 19 I&N Dec. 252, 253 (BIA 1985). Logically, if the cost to the alien of breaching the bond is equal to or greater than the value of the means-tested public benefits the alien would receive, there would be a strong disincentive for the alien to breach the bond.

To assist officers in determining appropriate bond amounts, USCIS developed three categories of aliens to estimate the amount of certain means-tested public benefits an alien applying for adjustment of status could receive over a 5-year period[368] after adjustment:

- Single/Married Adult with Children;
- Single/Married Adult without Children; and
- Child.[369]

2. Determining Public Charge Bond Amount for Bonds Accepted On or After September 18, 2026

The below table presents the estimated[370] amount of benefits for each category—Single/Married Adult with Children, Single/Married Adult without Children, and Child—through year 5 after adjustment, calculated as the median[371] of the average amounts that these aliens could receive from the following means-tested public benefits analyzed for the purposes of this table over a 5-year period after adjustment.[372] Other means-tested public benefits may also be considered under the 2026 Public Charge Final Rule:

[368] This approach assumes that the new LPRs are eligible to receive such benefits during the 5-year period. USCIS estimates the amount of benefits received for up to 5 years because the median timeframe for an alien, including aliens who may not be subject to the public charge ground of inadmissibility, with an approved Form I-485 who later files for naturalization using Application for Naturalization (Form N-400) is 5 years.

[369] USCIS limited the categories to these three because most public benefits programs offer similar benefit levels to single or married aliens, older aliens, or aliens with disabilities. The primary distinction in the amount of public benefits received is whether an adult alien has children. See the U.S. Department of Health and Human Services report, "How Many People Participate In the Social Safety Net?"

[370] To estimate the amounts presented in this section, the average annual enrollment and average annual payments for each public benefits program were calculated using a five-year average. For each category, the estimate is based on the median value of these averages across the relevant programs, rather than the sum of all programs. The median is used because it provides a more accurate representation of what an individual or household may experience and reduces the impact of unusually high or low estimates from specific programs.

[371] It is uncommon for an alien adjusting status to use more than 3 benefits simultaneously, making the median a reasonable measure. While multiple benefit use is common among low-income families with children, approximately 41 percent of families receive 1 to 2 benefits, 16 percent receive 3 benefits, and 20 percent receive 4 or more. Most families receiving 1 to 3 benefits typically access food assistance and public health insurance, such as Medicaid and SNAP, with limited use of other public benefits. For more information see, Urban Institute, "Characteristics of Families Receiving Multiple Public Benefits."

[372] Independent, peer-reviewed studies commonly categorize these programs together as core public benefit programs. They are major government programs that are highly utilized and often included in analyses of public benefit programs. While there are additional Federal, State, and local benefits that aliens may be eligible to receive which could result in a higher total benefit amount than what is presented, USCIS cannot quantify the number of individuals receiving benefits across all means-tested public benefits programs and considers the limitation to these specific Federal benefits to be reasonable.

- Medicaid;[373]
- Children's Health Insurance Program (CHIP);
- Special Supplemental Nutrition Program for Women, Infants, and Children (WIC);
- Supplemental Nutrition Assistance Program (SNAP);
- Temporary Assistance for Needy Families (TANF);
- Supplemental Security Income (SSI); and
- Federal Rental Assistance.[374]

Officers may consider this table when setting an appropriate public charge bond amount in their discretion for adjustment of status applications filed or electronically submitted on or after September 18, 2026. Officers should also consider the number of years the alien is likely to receive public benefits, based on the totality of the circumstances, to determine the appropriate bond amount.

**Estimated Amounts of Certain Means-tested Public Benefits Received Per Person For Benefits Considered Under the 2026 Public Charge Final Rule**

| Categories | Total Annual Benefit per Person Year 1 | Total Annual Benefit per Person Year 2 | Total Annual Benefit per Person Year 3 | Total Annual Benefit per Person Year 4 | Total Annual Benefit per Person Year 5 |
|---|---|---|---|---|---|
| **Single/Married Adult with Children[375]** | $8,400 | $16,800 | $25,200 | $33,600 | $42,000 |

[373] The data reflected for Medicaid depicts enrollment activity for all populations receiving Medicaid benefits in all states. This may include individuals receiving Emergency Medicaid. However, Emergency Medicaid only covers treatment for emergency medical conditions and does not provide comprehensive Medicaid benefits. These emergency benefits can be accessed by aliens who meet eligibility requirements, regardless of immigration status.
[374] Federal Rental Assistance includes HUD Section 8 Project-based Rental Assistance, HUD Section 8 Housing Choice Vouchers, HUD Public Housing, HUD Section 202/811, and USDA Section 521.
[375] Inclusive of Medicaid, CHIP, SNAP, TANF, SSI, and Federal Rental Assistance. WIC was not included in this estimate since its enrollment is targeted towards pregnant women, breastfeeding women, postpartum women, infants up to 1 year old, and children up to 5 years old. While an individual cannot be simultaneously enrolled in TANF and SSI, they may alternate between the two programs as their eligibility changes. For example, an individual may exhaust their TANF eligibility but, due to an ongoing medical condition that prevents them from working, may become eligible to shift to SSI.

**Estimated Amounts of Certain Means-tested Public Benefits Received Per Person For Benefits Considered Under the 2026 Public Charge Final Rule**

| Categories | Total Annual Benefit per Person Year 1 | Total Annual Benefit per Person Year 2 | Total Annual Benefit per Person Year 3 | Total Annual Benefit per Person Year 4 | Total Annual Benefit per Person Year 5 |
|---|---|---|---|---|---|
| **Single/Married Adult without Children**[376] | $10,686 | $21,372 | $32,058 | $42,744 | $53,430 |
| **Child**[377] | $5,640 | $11,280 | $16,920 | $22,560 | $28,200 |

This table is intended solely as a helpful resource for officers as they determine an appropriate bond amount. There may be instances when the median amount for the benefits listed in the table above is not as useful to officers in setting an appropriate bond amount because it would be lower than the value of benefits likely to be received by the alien while the bond is in effect.

For example, while the average recipient of means-tested public benefits may be enrolled in one or two benefits programs, TANF recipients have the highest level of means-tested public benefit receipt, with families receiving an average of at least three or more benefits,[378] such as SNAP, housing assistance, and Medicaid.[379] If an alien reported on his Form I-485 that he received

[376] Inclusive of Medicaid, SNAP, SSI, and Federal Rental Assistance. CHIP, TANF, and WIC are not included in this estimate. CHIP is strictly designed for children under 19 and sometimes pregnant individuals. TANF is generally for families with children to help support children and their caregivers. WIC was not included in this estimate since its enrollment is targeted towards pregnant women, breastfeeding women, postpartum women, infants up to 1 year old, and children up to 5 years old.

[377] Inclusive of Medicaid, CHIP, SNAP, TANF, WIC, and SSI. For these programs a child can participate even if his or her parent and/or guardian do not qualify for the program. The parent and/or guardian would apply on the child's behalf; however, only the child is eligible for receipt of the benefit. Most children are eligible for these programs; however, CHIP covers children up to age 19, TANF extends up to age 19 if the child is still in high school, WIC is limited to children up to age 5, and SSI extends up to age 22 if the child is regularly attending school and meets disability criteria. SNAP is included because an ineligible parent may apply on behalf of an eligible child. Medicaid and CHIP are both included in this estimate because Medicaid generally covers children from lower-income families, while CHIP covers children from families with incomes too high for Medicaid, but too low to afford private coverage. While a child cannot be simultaneously enrolled in Medicaid and CHIP, he or she can alternate between the two programs, for example, if his or her parent and/or legal guardian's income levels change.

[378] About 95 percent of TANF recipient households received assistance from 3 or more programs. See American Institute for Economic Research, "The Work vs Welfare Tradeoff Revisited: Explaining Welfare Benefits at the State level." See Urban Institute, "Characteristics of Families Receiving Multiple Public Benefits." See Department of Commerce, Census Bureau, "Temporary Assistance for Needy Families (TANF): 2022."

[379] See American Institute for Economic Research, "The Work vs Welfare Tradeoff Revisited: Explaining Welfare Benefits at the State level."

TANF, the median amount in the table above may be lower than the appropriate bond amount as the alien could be expected to receive a wider variety and therefore higher overall value of benefits. This contrasts with SNAP recipients, where over 80 percent receive only one or two means-tested public benefits.[380]

The median may also be too low a starting point for setting an appropriate public charge bond amount if a recipient receives Medicaid and/or SSI benefits, as the estimated annual benefit for Medicaid ($15,420) [381] and SSI ($12,024)[382] exceeds the median. Additionally, SNAP participants often received health insurance through Medicaid/CHIP [383] and 82 percent of SSI recipient households were also covered by Medicaid/CHIP and 64 percent received SNAP.[384]

Conversely, the median may be too high if a recipient receives only WIC, as the estimated annual benefit for WIC ($576) is well below the median. However, approximately 80.4 percent of recipients approved for WIC benefits also receive SNAP, Medicaid, and/or TANF.[385]

Officers may consider this table and the evidence in the totality of the alien's circumstances, including the likelihood of an alien receiving multiple means-tested public benefits and institutionalization at government expense when determining a public charge bond amount.[386] This table does not include the costs of institutionalization at government expense. If an alien were to be institutionalized at government expense, the value of that benefit annually is estimated at $109,860 (under Medicaid).[387] As noted above, if an alien is projected to receive such a high value of public benefits, it is a negative factor in the determination as to whether the inadmissible alien should be offered the opportunity to submit a bond. Officers may, in their discretion and based on the totality of the alien's circumstances, set a public charge bond amount lower or higher than the estimates reflected in the table above.

---

[380] Urban Institute, "Characteristics of Families Receiving Multiple Public Benefits."

[381] USCIS Analysis of Medicaid - Data on Medicaid Per Capita Expenditures, "Medicaid Per Capita Expenditures, CY 2023, Median Total."

[382] USCIS Analysis of U.S. Social Security Administration, Office of Research, Statistics, & Policy Analysis. Annual Report of the Supplemental Security Income Program, 2024 and SSI Recipients by State and County.

[383] Medicaid and SNAP target low-income individuals, and many individuals receive benefits through both programs. In 2022, approximately eighty percent of SNAP recipients had health insurance through Medicaid or CHIP. See Department of Commerce, Census Bureau, "Supplemental Nutrition Assistance Program (SNAP): 2022."

[384] See Department of Commerce, Census Bureau, "Supplemental Security Income (SSI): 2022."

[385] USDA, "WIC Participant and Program Characteristics 2022 Final Report."

[386] In considering an alien's likelihood of being institutionalized at government expense, an officer must not make health diagnoses and should generally defer to the medical examination results provided by a civil surgeon or a panel physician. See Chapter 5, Statutory Minimum Factors, Section B, Health [8 USCIS-PM G.5(B)].

[387] The estimated median per diem Medicaid cost for nursing home residents in 2019 was $240 per day. Adjusted to June 2025 dollars, this amount is estimated to be $301 per day (rounded). Calculation: $301 (estimated costs per day) x 365 (number of days per year) = $109,860 (rounded). USCIS analysis of U.S. Department of Health and Human Services, Office of Behavioral Health, Disability, and Aging Policy, "Assessing Medicaid Payment Rates and Costs of Caring for the Medicaid Population Residing in Nursing Homes," June 2024.

## C. Inviting an Alien to Submit a Public Charge Bond

If USCIS determines that giving the adjustment of status applicant the opportunity to submit a public charge bond is warranted, as a matter of discretion,[388] USCIS will provide the opportunity to submit Public Charge Bond (Form I-945) by issuing a Notice of Intent to Deny (NOID). The NOID should discuss, at a minimum, all of the following items:

- That the alien has been found inadmissible on the public charge ground and the reason(s) why;
- That USCIS decided to favorably exercise its discretion to allow the alien to submit a public charge bond, which would permit, if accepted, the alien to adjust status to that of an LPR;
- The public charge bond amount;
- That the bond must be posted by submitting Form I-945 completed in accordance with the form's instructions;
- The due date (postmark date), that is, by when Form I-945 must be submitted to USCIS;
- The consequences for failure to respond to the notice and for the failure to submit Form I-945, in accordance with the form's instructions. In particular, the NOID should specify that the public charge bond will be rejected or deemed insufficient, and that the adjustment of status will be denied, if the bond is not properly submitted in accordance with the instructions; and
- Any additional information required to properly post the bond.

## D. Assessing the Sufficiency of a Submitted Public Charge Bond

Once the public charge bond is submitted, USCIS should determine whether the bond was properly completed as outlined in the form's instructions and the NOID, and that the appropriate bond amount has been paid. The bond is not effective until USCIS accepts the bond.

---

[388] To perform a discretionary analysis, USCIS weighs all positive factors present in a particular case against any negative factors in the totality of the circumstances. Some examples of discretionary considerations include: close family ties in the United States, community standing, length of lawful residence in the United States, evidence of respect for law and order, and violations of immigration law. For more information on the use of discretion in adjudications, see Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

A public charge bond is a contract between the U.S. government (USCIS) and the obligor. A contract is generally not effective until both parties accept the contract. USCIS accepts a bond when the designated USCIS authority signs the public charge bond on behalf of the U.S. government.[389]

In general, before a public charge bond can be endorsed with the signature of the authorized designated authority, USCIS must ensure that the public charge bond meets the regulatory requirements,[390] is submitted in accordance with instructions outlined in the form's instructions and the NOID, and that the appropriate bond amount has been paid. Otherwise, the bond may be rejected upon submission or ultimately deemed insufficient.

Additionally, the conditions of the public charge bond are outlined in Form I-945 and in the NOID issued by USCIS. The obligor submitting the Form I-945 may not alter these terms in any way. USCIS does not accept a public charge bond as sufficient and acceptable if:

- The obligor or alien submits the Form I-945 with an attachment or rider that contains additional conditions or otherwise alters the terms of the public charge bond;[391]
- The obligor physically alters the terms contained on Form I-945;[392] or
- The obligor submits the bond on a contract other than Form I-945.[393]

1. Accepting the Bond

If USCIS determines that the public charge bond meets the regulatory requirements, the requirements outlined in the form's instructions, and in the NOID, USCIS may forward the public charge bond documentation to the designated USCIS authority for signature and acceptance of the public charge bond. Once the bond is signed and accepted, USCIS must issue a receipt.

2. Issuing a Receipt for Accepted Bonds

Once the bond is signed by the designated USCIS authority and accepted, the obligor, the authorized agent (in the case of a surety bond), any representative, and the alien and the alien's

[389] Officers tasked with evaluating the public charge bond should consult with their supervisory chain to determine to whom to forward a public charge bond so that it can be signed by the designated USCIS authority.
[390] See 8 CFR 213.1.
[391] This is the case even if the obligor generally agrees with the Form I-945 terms but suggests that the contract cover additional conditions. USCIS cannot accept a bond under conditions other than those outlined in Form I-945 and the NOID.
[392] For example, the obligor may not strike any of the text on Form I-945 or the obligor may not add any text in writing to the Form I-945. In particular, the obligor may not use the overflow section in Form I-945 to add terms or alter the obligation imposed with Form I-945.
[393] This is the case even if the document submitted by the obligor contains the same text as Form I-945 and the terms as outlined in the NOID but are on a document other than the Form I-945.

representative, if any, are notified that the bond has been accepted. USCIS should also provide a receipt to the obligor and a copy of the receipt to the applicant and his or her representative (if any).

Because USCIS accepted the public charge bond, the officer adjudicating the adjustment of status application should proceed with the final adjudication of the adjustment of status application. If the alien is otherwise eligible for adjustment of status at the time the public charge bond is accepted by USCIS, then the adjustment of status application may be approved.[394] If the officer determines, after the acceptance of the bond, that the adjustment of status application should be denied, USCIS will return the bond, notify the obligor and all parties involved, and retain a copy of the communication in the file. If the public charge bond has been secured by a cash deposit or a cash equivalent, USCIS must refund the cash deposit and any interest accrued to the obligor along with the communication.

3. Bond Not Accepted

If the public charge bond does not meet the regulatory requirements, the requirements outlined in the form's instructions, or in the NOID, USCIS cannot accept the public charge bond and denies the adjustment of status application. The denial decision will include a discussion of how the bond did not meet the regulatory requirements.

## Chapter 13. Public Charge Bonds: Maintaining, Substituting, and Canceling Bonds

### A. Maintaining Bonds

Once an alien has adjusted his or her status to that of a lawful permanent resident (LPR), USCIS must ensure that the bond continues to be enforceable during the bond's validity. Additionally, an obligor, agent or co-obligor, or the alien may experience a change of address, or the obligor or the alien may wish to substitute the bond.

USCIS will send a copy of any communication with the obligor, the obligor's representative, if any, the agent or co-obligor, and the agent or co-obligor's representative, if any, to the alien, and the alien's representative, if any.[395] For that reason, any communication relating to the review of the bond should ordinarily be in writing.

If the officer has to communicate with any of the parties involved in the bond orally, USCIS generally transcribes the communication, and sends a copy of the transcribed communication to all parties involved. USCIS also retains a copy of the communication in the alien's file.

---

[394] For more information about adjustment of status, please see Volume 7, Adjustment of Status [7 USCIS-PM].
[395] See Public Charge Bond (Form I-945).

## B. Substituting a Bond

An alien or an obligor may have an interest in having the bond substituted at any time. For example, an alien may have found a different obligor who provides the alien better financial terms and conditions for purposes of a public charge bond submission. Another example would be if the obligor would like to be released from the public charge bond obligation and therefore, asks the alien to seek a new obligor.

*Acceptance of the Substitute Bond*

A public charge bond on file with USCIS may be substituted. A substitute bond may either be submitted by the original obligor or a new obligor on behalf of the alien. A substitute bond is submitted on Public Charge Bond (Form I-945) and completed in accordance with the form's instructions.[396]

When USCIS is reviewing the sufficiency of the substitute bond, USCIS ensures that the following requirements are met before presenting the public charge bond to the designated USCIS authority for signature and acceptance of the bond:

- The bond must meet all of the requirements applicable to the initial bond; and

- The bond must cover all liabilities that the initial obligor incurred, including any breach of the bond conditions, before USCIS accepts the substitute bond. The reason for this requirement is that USCIS may not learn of a breach until after the expiration or cancellation of the bond previously submitted to USCIS. Form I-945 includes this requirement as a term of the condition. When USCIS is verifying the sufficiency of the substitute public charge bond, USCIS must ensure that no text on the Form I-945 has been altered before USCIS accepts the form by having it signed by the designated USCIS authority.

In addition, USCIS follows the steps outlined in this part,[397] addressing the acceptance of a public charge bond when reviewing the substitute public charge bond for sufficiency.

If USCIS determines that the substitute bond is sufficient, the officer should forward the public charge bond for acceptance by the designated USCIS authority for signature. The substitute bond is effective on the day it is signed by the designated USCIS authority. USCIS should proceed with issuing the receipt as outlined in this part.[398]

---

[396] See 8 CFR 103.2(a)(1).
[397] See Chapter 12, Public Charge Bonds: Posting and Accepting Bonds [8 USCIS-PM G.12].
[398] See Chapter 12, Public Charge Bonds: Posting and Accepting Bonds, Section D, Assessing the Sufficiency of a Submitted Public Charge Bond, Subsection 2, Issuing a Receipt for Accepted Bonds [8 USCIS-PM G.12(D)(2)].

As part of the acceptance of the new public charge bond, USCIS cancels the bond being substituted, releases any prior obligors from liability, and accepts the substitute bond. A copy of the communication must be sent to all parties involved. If the bond that is returned to the obligor was a cash bond, USCIS must return the original bond amount and any interest accrued to the obligor of the bond being substituted.

If the substitute bond submitted is insufficient, USCIS generally notifies the obligor of the substitute bond so that the obligor may correct the deficiency or deficiencies within the timeframe stipulated in USCIS' notice. This notice should not only be sent to the new obligor, but all parties involved, including the obligor and agent or co-obligor, if any, on file (the bond to be substituted), the agent or co-obligor of the substitute bond, the alien, and any representative of any of the parties involved. If the deficiency is not corrected within the timeframe specified, the bond currently on file remains in effect.

### C. Breach of Bond

A condition of the bond is that the alien not receive means-tested public benefits.[399] A bond may be breached for non-compliance of any condition imposed on the public charge bond.[400] While use of a single means-tested public benefit in any amount is sufficient for a bond breach, it is not synonymous with becoming a public charge. Bond breach conditions are specified on the bond form and in the regulations.[401]

1. <u>Investigation</u>

USCIS may learn of a potential bond breach from various sources, including Federal and State benefit-granting agencies. USCIS may also learn of a potential bond breach from information provided by the alien as a part of the bond cancellation request. Aliens may also provide information suggesting that they breached a public charge bond on other forms submitted to USCIS. Regardless of the source of the information, USCIS investigates any credible allegation of a public charge bond breach.

*Handling Information Prohibited from Disclosure to the Obligor*

When investigating the information received about public benefits receipt, USCIS is required to send all communications relating to the bond to all parties involved, including the obligor, the agent or co-obligor, and all parties' representatives, if any. Before sending any communication regarding the bond breach, USCIS consults the Office of the Chief Counsel (OCC) to determine

---

[399] See Chapter 2, Key Concepts, Section C, Receipt (of Public Benefits) [8 USCIS-PM G.2(C)]. See 8 CFR 103.6(c)(1)(ii). For bonds accepted prior to September 18, 2026, the regulations in place and the conditions of the bond at that time continue to govern.
[400] See INA 213.
[401] See 8 CFR 103.6(c)(1)(ii).

whether any information USCIS has would be protected by law from the disclosure to the obligor.

If the information may not be disclosed by law, USCIS may not address it in the communication or use it for purposes of the public charge breach determination. Information that is not prohibited from disclosure should be included in the communication to all parties.

2. Adjudication

A bond breach exists because the alien did not comply with the conditions of the bond; however, USCIS must declare the bond breached by notifying the obligor. Before the bond can be declared breached, USCIS must determine whether the information supports a finding that any conditions imposed by the bond were breached.

If USCIS finds that there is insufficient information to determine whether a breach occurred, USCIS should request additional information from the alien or the obligor. However, if the evidence USCIS possesses supports a finding of a breach, then USCIS should inform the obligor and an agent or co-obligor of USCIS' intention to declare the bond breached by issuing a Notice of Intent to Declare the Public Charge Bond Breached. The notice must, at a minimum, comply with the following guidelines:

- Be sufficiently specific to give the obligor or the agent or co-obligor the opportunity to respond and submit rebuttal evidence;

- Include all information in the record that supports the breach determination and is by law permitted to be disclosed to the obligor or agent or co-obligor. Any information that is prohibited, by law, from being disclosed should be redacted and may not be used to support the bond breach determination. USCIS should consult OCC before sending the notice to avoid inadvertent disclosure; and

- Include a date by when the obligor must respond and submit rebuttal evidence.

USCIS must also send a copy of any notification to the obligor or co-obligor regarding the breach to the alien and the alien's representative, if any.

3. Determination

After receiving the obligor's response to the Notice of Intent to Declare the Public Charge Bond Breached, USCIS determines whether the obligor's response and any evidence submitted to rebut the initial breach determination is sufficient to overcome USCIS' initial determination that the bond was breached.

If the obligor or agent or co-obligor has not provided sufficient evidence to rebut USCIS' determination that the public charge bond was breached or if the obligor did not respond by the date required in the Notice of Intent to Declare the Public Charge Bond Breached, USCIS declares the bond breached, and informs the obligor and agent or co-obligor, if any, of the right to appeal the bond breach determination. USCIS must provide a copy of the determination to all parties involved in the bond.

If the information provided in the response reveals that the alien has not breached the public charge bond conditions, the public charge bond remains in place. USCIS must provide a copy of the determination to all parties involved in the bond.

4. Appeal of Breach Determination

An obligor[402] may appeal a breach determination to USCIS' Administrative Appeals Office (AAO) by filing a Notice of Appeal or Motion (Form I-290B) together with the appropriate fee and required evidence.[403] If the obligor fails to appeal the bond breach determination within the requisite appeal period, or if the appeal is filed untimely, the bond breach determination becomes administratively final unless a motion is granted to reopen or reconsider the proceedings, if permitted under the regulations.

If the obligor appeals the bond breach determination in a timely fashion, USCIS reviews the decision before the appeal is forwarded to the AAO.[404] If an appeal is warranted, USCIS may treat the appeal as a motion and then take favorable action, which would resolve the appeal. USCIS may reopen a proceeding or reconsider a decision on their own motion.[405]

If the officer is not inclined to take a favorable action, the appeal should be forwarded to the AAO for a decision on the obligor's appeal.

5. Collecting Bond Amount

An administratively final determination that a bond has been breached creates a claim in favor of the United States. The claim may not be released or discharged by an immigration officer.

*Cash Bonds*

In a cash bond, the actual face value of the bond is deposited with USCIS to be held in case of a bond breach. Upon an administratively final decision that the bond has been breached, the money that was deposited for purposes of the bond becomes the means to satisfy the claim that

---

402 The obligor includes the term agent or co-obligor.
403 See 8 CFR 103.3.
404 See 8 CFR 103.3(a)(2).
405 See 8 CFR 103.5(a)(5)(i).

the bond breach created in favor of the U.S. government. At that time, the entire bond amount is forfeited by the obligor. However, USCIS must return the interest accrued on the deposited amount.[406] After all business is concluded, the obligor is released from the public charge bond.

*Surety Bonds*

In a surety bond, no cash is exchanged as part of the bond contract when the bond is posted.[407] Only if the bond is breached will the surety company be required to pay the promised amount of money to the U.S. government. A surety company (or the obligor) must carry out its contracts and comply with statutory requirements, including prompt payment of demands arising from an administratively final determination that the bond had been breached.[408] USCIS applies the government-wide nonprocurement suspension and debarment procedures found in 2 CFR Part 180 to public charge surety bonds.[409]

**D. Canceling a Bond**

In general, a public charge bond has to remain in place until the bond can be canceled and USCIS determines that the bond has not been breached.[410]

1. Request to Cancel

In general, until either the obligor or the alien has filed a request to cancel the bond and USCIS has favorably adjudicated it, the bond remains in effect.[411]

The request to cancel the public charge bond must be submitted on a Request for Cancellation of Public Charge Bond (Form I-356). The request must be completed and submitted in accordance with the form's instructions and accompanied by the appropriate fee, if applicable.[412]

Because the form may be submitted either by the obligor or the alien, Form I-356 has several parts that must be completed either by the obligor (the person who has posted the bond) or by the obligor's authorized agent (co-obligor, for surety companies only) who posted the bond on

---

[406] See 8 CFR 293.1.
[407] See Chapter 11, Public Charge Bonds, Section B, Type of Bonds [8 USCIS-PM G.11(B)].
[408] See 31 U.S.C. 9305(b)(3).
[409] See 2 CFR Part 3000, in which DHS adopts the Office of Management and Budget Guidance found in subparts A through I of 2 CFR Part 180.
[410] Cancellation of a bond submitted prior to the effective date of the 2026 Final Rule would be based on the version of 8 CFR 103.6 (2023) established by the 2022 Final Rule and the terms and conditions from the version of Form I-945 accepted by USCIS.
[411] See 8 CFR 103.6(c)(1).
[412] See 8 CFR 103.5.

behalf of the alien, or by the alien. If the alien is deceased, the executor of the alien's estate may complete the alien's part on behalf of the alien.

Therefore, it is possible that a cancellation request is submitted without the obligor or any agent or co-obligor, or the alien (or the alien's executor) knowing about it. In the form instructions, USCIS encourages completion of the entire form by all parties before it is submitted. However, it is possible for a request to be submitted when only partially completed, particularly when one party has requested cancellation of the bond without informing or including the other parties in the cancellation request.

*Missing Information from the Alien*

If the obligor (or the agent or co-obligor) submits the cancellation request but the request does not contain the information from the alien required to cancel the bond, the officer should do the following:

- Copy the request for cancellation of the public charge bond form for all parties involved;
- Send the original request received from the obligor to the alien for completion of his or her parts of the bond cancellation request form, including signature parts;
- Specify the date when the alien's response is due (for purposes of calculating the response due date, the officer should follow USCIS guidance on the issuance of a Request for Evidence); and
- Send a copy of the communication to the obligor and the agent or co-obligor and any representative, even though the request originated from the obligor or agent or co-obligor.

If the alien fails to respond to the communication within the timeframe stipulated, the officer should deny the request to cancel the public charge bond. This denial is without prejudice to the filing of another cancellation request.

*Missing Information from Obligor*

If the request to cancel the bond is submitted by the alien without involvement of the obligor, USCIS officers should evaluate the information contained in the request to cancel the bond and proceed with the cancellation adjudication. If the alien's information reveals that the bond may have been breached, the officer is required to notify the obligor through a Notice of Intent to Declare the Public Charge Bond Breached and share the information provided by the alien, to the extent permissible by law. This provides sufficient notice to the obligor of the alien's request to cancel the bond, and the opportunity to rebut any derogatory information regarding a possible bond breach.

2. Adjudicating the Request

An alien or obligor may request that USCIS cancel the public charge bond if the alien:

- Died (as evidenced by a certified copy of a death certificate, provided the alien did not breach the bond before death);
- Permanently departed the United States (provided the alien did not breach the bond before departure);
- Naturalized or otherwise obtained U.S. citizenship (provided the alien did not breach the bond before naturalization); or
- Reached his or her 5-year anniversary since admission or becoming an LPR (provided the alien did not breach the bond).

The obligor and the alien must always demonstrate that the bond has not been breached before the cancellation of the public charge bond by USCIS.[413]

Form I-356 lists the pertinent information that the alien has to provide to establish that the bond be canceled.

If there is insufficient information to determine whether a breach occurred, or whether the cancellation requirements are met, USCIS may request additional information from the alien or the obligor.

3. Special Considerations Related to Permanent Departure

USCIS must approve the request to cancel the public charge bond if the alien has not breached the public charge bond and permanently departed the United States.[414]

An alien is considered to have permanently departed if the alien has:

- Lost or abandoned LPR status, whether involuntarily by operation of law or voluntarily; and
- Is physically outside the United States.

An alien must establish that both elements have been met before USCIS cancels the bond.

---

[413] See Instructions for Request for Cancellation of Public Charge Bond (Form I-356). See 8 CFR 103.6(c)(1)(ii).
[414] See INA 213.

For these purposes, an alien is deemed to have involuntarily lost LPR status by operation of law only if the alien lost his or her status:

- In removal proceedings with the entry of a final order of removal; or
- Through rescission of adjustment of status.

If an alien loses his or her LPR status through operation of law, the alien would be required to provide evidence of the loss of status by submitting evidence of the official determination of loss of LPR status before USCIS can cancel the bond.

Generally, determining whether an alien has abandoned his or her LPR status voluntarily is fact specific and courts consider factors such as the length of an alien's absence from the United States, family and employment ties, property holdings, residence, and the alien's intent or actions.[415] Any alien may intentionally relinquish LPR status through his or her voluntary actions, such as by submitting a declaration of intent to abandon LPR status. Neither the INA nor DHS regulations direct how aliens may formally inform the U.S. government of their abandonment of their LPR status.

To simplify the process, USCIS created the Record of Abandonment of Lawful Permanent Resident Status (Form I-407) as a means by which an alien may formally record that he or she has abandoned LPR status. The purpose of the form is to create a record and to ensure that the alien acts voluntarily and willingly, and is informed of the right to a hearing before an immigration judge and has knowingly, willingly, and affirmatively waived that right.

An alien may demonstrate voluntary relinquishment of the LPR status for purposes of bond cancellation by showing proof that he or she submitted Form I-407 to the U.S. government from outside the United States.

4. <u>Decision</u>

---

[415] See *Matter of Huang*, 19 I&N Dec. 749, 755-57 (BIA 1988) (considering the alien's absence from the United States because of her husband's work and study abroad, as well as her own employment abroad, to find that her absence was not temporary in nature and that she had abandoned her LPR status). See *Matter of Kane*, 15 I&N Dec. 258, 265 (BIA 1975) (alien who spent 11 months per year living in her native country operating a lodging house abandoned her LPR status; her desire to retain her status, without more, was not sufficient). See *Matter of Quijencio*, 15 I&N Dec. 95, 97-98 (BIA 1974) (alien's LPR status considered abandoned after 12-year absence). See *Matter of Castro*, 14 I&N Dec. 492, 494 (BIA 1973) (alien who severed his ties to the United States for 6 years, moved abroad, acquired land, built a house and obtained steady employment, but made brief business trips to the United States was not a returning resident and had abandoned his status). See *Matter of Montero*, 14 I&N Dec. 399, 400-01 (BIA 1973) (alien who returned to her native country to join her husband, children, home, employment, and financial resources without fixed intent to return within a fixed period had abandoned her LPR status). See *Khoshfahm v. Holder*, 655 F.3d 1147, 1154 (9th Cir. 2011) (alien child who was out of the country for 6 years and prevented from returning due to the father's heart condition and the events of September 11 did not abandon his LPR status).

If USCIS determines that the obligor or the alien met the burden of proof to establish that the bond has not been breached since the alien became an LPR and that the conditions for the cancellation of the bond are met, USCIS may cancel the public charge bond. The decision to cancel the bond must be sent to all parties involved. When the public charge bond is canceled, the obligor is released from liability.

USCIS must notify the obligor and all parties involved of the cancellation of the bond and retain a copy of the communication in the file. If the public charge bond has been secured by a cash deposit or a cash equivalent, USCIS must refund the cash deposit and any interest earned to the obligor along with the communication.[416]

If USCIS determines that the alien does not meet the requirements for cancellation, other than a bond breach, then USCIS issues a Notice of Intent to Deny (NOID) to the obligor and any agent or co-obligor and any representative, in order to extend the opportunity to rebut USCIS' determination. The notice must include the information provided by the alien in Form I-356, unless protected by law, and any other documentation.

The officer will send a notice of the communication to the alien and the alien's representative. If the obligor's timely response to the NOID reveals that the alien does not meet the cancellation requirements then the officer should not cancel the public charge bond.

If the obligor's response cannot overcome USCIS' determination and the adverse information upon which it is based, then USCIS issues the decision, informing the obligor and the agent or co-obligor and any representative and the alien and the alien's executor, if any, and the alien's representative, if any, that the bond cannot be canceled and that it remains in effect. The obligor may file an appeal to challenge this determination.[417]

An obligor may only file a motion[418] after an unfavorable decision on an appeal.

If USCIS determines that the alien has breached the public charge bond, USCIS initiates bond breach proceedings.[419] As part of the notification to the obligor of USCIS' intent to declare the bond breached, the officer should explain why the bond cannot be canceled.

---

[416] See INA 293. See 8 CFR 293.1.
[417] See generally 8 CFR part 103.
[418] See 8 CFR 103.5.
[419] See Section C, Breach of Bond [8 USCIS-PM G.13(C)].